FILED by _____ D.C.

ELECTRONIC

**Oct 13 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

EUGENIO GARCIA,

      **Plaintiff,**

vs.                              **CASE NO. 04-22640 CIV-JORDAN**

**PORT ROYALE TRADING CO., INC.,**
**LOUISE LYNCH, and OASIS**
**OUTSOURCING, INC.,**

      **Defendants.**

_____/

## DEFENDANT PORT ROYALE TRADING COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW[1]

      Defendants, Port Royale Trading Co., Inc., by and through its undersigned attorneys, and pursuant to Rule 7.5 of the Local Rules for the United States District Court for the Southern District of Florida, hereby submits its Memorandum of Law in support of its Motion for Summary Judgment.

      1.      The Plaintiff, Eugenio Garcia, filed his Complaint against Defendants on or about October 20, 2004, alleging violations of the Fair Labor Standards Act ("FLSA"). Specifically, he alleges he was not compensated properly for overtime.

      2.      Plaintiff names Oasis Outsourcing, Inc., Port Royale Trading Co., Inc. ("Port Royale") and Louise Lynch ("Lynch") as Defendants in this action. In his Complaint, he asserts that all named Defendants were his employers. *See* Complaint, ¶9. And, as his employers, they are liable for any alleged violations of the FLSA. *See* Complaint, ¶12. Plaintiff asserts that Port Royale, Lynch and Oasis are jointly and severably liable for any FLSA violations. *See* Complaint, ¶¶ 9 & 12.

---

[1] Defendant filed a Statement of Facts contemporaneously with this motion. This Statement of Facts is incorporated by reference herein.

**27/SK**

**PLAINTIFF CANNOT SHOW THAT HE PERFORMED WORK FOR DEFENDANTS[2] FOR WHICH HE WAS NOT PROPERLY COMPENSATED, THEREFORE HIS CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED.**

3.      Plaintiff was paid for all straight time and overtime pursuant to the Fluctuating Workweek method of compensation, which is provided for in the regulations implementing the FLSA.  Because this method is an alternative legal method of computing compensation, and not an exception to the traditional method of payment, Plaintiff bears the burden of showing that he was not properly compensated under the Fluctuating Workweek method of payment.

4.      Plaintiff cannot meet his burden, as the evidence shows not only that he was paid a set weekly salary of $350, constituting straight time for all hours worked, and an additional half-time for any hours he worked over forty (*i.e.*, overtime hours), but also he understood that he would receive his salary regardless of the number of hours he worked each week.  Based on the foregoing, Plaintiff's claims against Defendants fail and should be dismissed.

**EVEN IF PLAINTIFF WAS ABLE TO MEET HIS BURDEN OF PROOF ON HIS FLSA CLAIM, HE WOULD NOT BE ABLE TO PROVE A WILLFUL VIOLATION. DEFENDANTS CAN SHOW AN HONEST INTENTION TO ASCERTAIN WHAT THE FLSA REQUIRES, SO LIQUIDATED DAMAGES ARE NOT APPROPRIATE.**

5.      Defendants took affirmative steps to ensure that they were acting in compliance with the FLSA and had an honest belief that they were conforming to the requirements of the Act.

WHEREFORE, Port Royale respectfully requests that this Court enter judgment dismissing Plaintiff's claims against it and awarding Defendant its reasonable attorneys' fees and costs.

---

[2] Because Oasis and Lynch have both filed Motions for Summary Judgment incorporating this Memorandum of Law, thus, throughout the Memorandum the argument will be directed to all three Defendants.

-2-

# I.

## MEMORANDUM OF LAW

"Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Rojas v. Florida* 285 F.3d 1339, 1340 (11th Cir. 2002)(*citing Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998)). However, "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is genuine issue of material fact.  In the instant case, Plaintiff cannot establish a genuine issue of material fact; and thus, her claims against Defendant should be dismissed.

## A.   PLAINTIFF CANNOT SHOW THAT HE PERFORMED WORK FOR DEFENDANTS[3] FOR WHICH HE WAS NOT PROPERLY COMPENSATED THEREFORE HIS CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED

A plaintiff suing under the Fair Labor Standards Act ("FLSA") generally carries the burden of proving all the elements of his or her claim.  *See Davis v. Friendly Express, Inc.*, 2003 WL 21488682*3, fn.4 (11th Cir. Feb. 6, 2003); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).  Plaintiff carries the initial burden of proving that he performed work for which he was improperly compensated and produce sufficient evidence to show the amount and the extent of that

---

[3] Because Oasis and Lynch have both filed Motions for Summary Judgment incorporating this Memorandum of Law, thus, throughout the Memorandum the argument will be directed to all three Defendants.

-3-

work.  *See Matson v. 7455, Inc.*, 2000 WL 1132110 , *6 (D. Or. Jan. 14, 2000).[4]  Here, Plaintiff is asserting that Defendants failed to pay him overtime as required by the FLSA.  *See* Complaint ¶¶ 5-12.  The traditional method of compensation set forth by the FLSA generally requires that non-exempt employees be paid an overtime premium of time and one half for all hours worked in excess of forty hours in a workweek.  *See* 29 U.S.C. 207(a).  The regulations implementing the FLSA provide for an <u>alternative</u> method to calculate the compensation of non-exempt salaried employees whose hours fluctuate.  *See* 29 C.F.R. 778.114; *Samson v. Apollo Resources, Inc.*, 242 F.2d at 631. This method is referred to as the fluctuating workweek method of payment ("FWW") and it allows employers to pay nonexempt employees a fixed salary for a fluctuating workweek[5] and to compensate them for their overtime hours on a "half-time" basis.  *See* 29 C.F.R. § 778.114. [Farrington Report ¶ 6].  This is an alternative method of calculating compensation, not an exception to how compensation should be calculated.  *See Griffin v. Wake* County, 142 F.3d 712, 717 (4th Cir. 1998); *Davis, supra*.

Under the fluctuating workweek method of compensation, an employee is paid a fixed salary for whatever number of hours the job demands in a given week.  *See* 29 C.F.R. § 778.114.  This salary compensates the employee for straight-time for <u>all</u> hours worked, including any over 40. Thus, the employer only pays an additional "half-time," equal to one half the <u>regular rate</u>, for all

---

[4] Plaintiff cannot make such a showing.  This is evidenced by the fact that, despite Defendants' numerous attempts to obtain this information, Plaintiff has never provided Defendants with its Rule 26 disclosures, wherein Plaintiff is required to provide a "computation of every category of damges claimed . . ."  Rule 26(a)(1)(c).  *See* Exhibit 1, Defendants' repeated requests for Plaintiff's mandatory disclosures.

[5] The FWW is applicable to both predictable and unpredictable fluctuations in an employees' schedule.  *See Griffin*, 142 F.3d at 715.  Here, it is undisputed that Plaintiff's schedule fluctuated. [Garcia: 51(23-25)] [McAllister Aff: Exs. 4-6].

hours over 40 (this because the straight time of the time and one-half overtime wage has already been paid as part of the salary).  Generally, under a fluctuating workweek, the regular rate is determined by dividing the employee's salary by all the hours worked, including overtime hours.  *See Field Operations Handbook*, Sec. 32b04b.[6]  However, employers are permitted to avoid weekly computations, by computing the extra half-time by dividing the employee's salary by 40 hours.  *See Field Operations Handbook*, 32b04b.[7]

The regulations permit the use of the FWW when: (1) the employee understands that his salary covers all hours he works; (2) the salary is paid to the employee irrespective of whether or not the employee works forty hours; (3) the salary is sufficient to provide a pay-rate not less than the applicable minimum wage for every hour worked; and (4) in addition to the salary, the employee is paid at least half-time for all hours worked in excess of forty hours a week.  *See Davis*, *supra*.  In the Eleventh Circuit, when an employer asserts that it compensated a plaintiff based on the FWW, it is the plaintiff's burden to proof non-compliance with the FWW.  *See Id* at *3.  "[A]n FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he was not properly compensated."  *See Myers v. Copper Cellar Corporation*, 192 F.3d 546 (6th Cir. 1999).  In the instant case, Plaintiff cannot proffer evidence to create a material issue of fact on Defendants' compliance with the FWW method.

_____

[6] A copy of this provision is attached hereto, but is also Exhibit 12 to Plaintiff's deposition.  The Department of Labor's Field Operations Handbook carries substantial weight and is to be given great deference by courts.  *See Samson v. Apollo Resources, Inc*, 242 F.3d 629, 638 (5th Cir. 2001).

[7] The result of computing half-time by dividing the salary by 40, is that, in weeks where Plaintiff worked a greater number of hours, he receives more money than he is otherwise entitled to under the FWW. [Farrington Report: 6].

1.    **THE PLAINTIFF UNDERSTOOD THAT HE WAS TO BE PAID A SALARY REGARDLESS OF THE NUMBER OF HOURS WORKED**

Plaintiff must be able to show, with more than a self-serving conclusory allegation, that he did not understand that he would be paid a fixed salary (aside from overtime premiums) for all hours worked.  *See Davis*, 2003 WL 21488682, *2.  It is well established that the "clear and mutual understanding requirement, is limited to the specific elements stated in the regulation and thus does not require that an employee understand the manner in which his or her overtime pay is calculated."  *See Id.* (Internal citations omitted).  The understanding requirement does not extend to how overtime premiums are calculated, *see Valerio v. Putnam*, 173 F.3d 35, 39 (1st Cir. 1999), and does not include a mutual consent requirement.  *See Griffin*, 142 F.3d at 715-716 ("Plaintiffs appear to suggest that there was no clear mutual understanding of the plan because they were not asked to consent to the plan, but rather were told about it. . .this argument confuses understanding with agreement and the regulation speaks only in terms of the former").  In evaluating whether a mutual understanding existed, the Plaintiff's understanding can be inferred from the steps taken by the employer to inform the employee about the method of payment, its policies and procedures as well as the Plaintiff's payroll records.  *See Id.* at 716-717; *Anderson v. County of Kershaw*, 1999 WL 55182 (4th Cir. Feb. 8, 1999).

Here, Plaintiff had been working as an hourly employee for several years, earning $7.00 an hour for each hour he worked. [Garcia: Exs. 2, 6 & 10] [McAllister Aff: ¶8].  In November 2001, he executed a Fixed Salary for Fluctuating Hours Agreement wherein he agreed to work for a fixed salary, regardless of the number of hours he worked each week, and acknowledged understanding that the salary was to cover "whatever hours actually worked in a given week." [Garcia: Ex. 8].  And,

in December, he began receiving a set base salary regardless of the hours he worked.  [Garcia: 44(19)-45(3), Ex. 10].  Oasis' payroll records show that Plaintiff was paid his $350 salary beginning on 12/07/01 pay date until Plaintiff terminated his employment. [Garcia: Ex. 10] [McAllister Aff:¶9].  Plaintiff admitted that he understood how he was being paid.  He testified that, after executing the agreement he received his salary regardless of the hours worked:

> Q:    You are still paid - - you are still paid the same amount even though you worked under 40 hours that week?
> A:    Yes, I understand that.  I understand that.  I understand that.  I understand all of that.
> Q:    And that's different from before . . . when you were paid only the - - when you were only paid for the actual hours you worked?
> A:    Uh-huh.  Yes.  Yes. . .

[Garcia: 44(19)-45(3)].  He also testified that he understood he was receiving only half time for his overtime hours.

> Q:    Well, if you take a look at your pay check it will say regular pay $350.  And then it says half time.  Half time.
> A:    That's what I can't swallow.

[Garcia: 40(2-5)].

Despite the foregoing admissions on the part of the Plaintiff, during his deposition he also testified that he did not understand. [Garcia: 40(5-6)].  Such "after-the-fact" self serving conclusory allegations, do not constitute credible evidence.  *See Griffin, supra* at 717.  Defendants made every reasonable effort to explain to the Plaintiff how he was to be paid.  Not only did Nichols and his assistant, Terrisita, explain it to the Plaintiff [Lynch: 11(2-7)] [Garcia: 62(23)-63(9)], but Plaintiff executed an agreement stating he understood that he was going to be paid a fixed salary for

-7-

fluctuating hours.[8]  Such an agreement is not required by the statute, but it is evidence of a mutual understanding.  *See Anderson, supra* at *2.  In addition, although Plaintiff's hours did fluctuate, each payroll period following his execution of the Agreement Plaintiff was provided a paycheck that indicated that he was receiving a salary of $350, and half-time for all hours over 40. [McAllister Aff: ¶¶10-11].

Based on the foregoing, regardless of whether or not he was able to initially understand what was being told to him, or what was written in the Agreement, it is clear that he was quickly and repeatedly provided with a "regular lesson - - in the form of [his] paychecks - - about how the fluctuating workweek plan operates." *Griffin*, 142 F.3d at 716-717.  Plaintiff understood this lesson. [Garcia: 40(2-5), 44(19)-45(3)].  And, thus cannot satisfy his burden of proof.

### 2.    THE SALARY WAS PAID TO PLAINTIFF IRRESPECTIVE OF WHETHER OR NOT HE WORKED FORTY HOURS

It is undisputed that Plaintiff received his salary irrespective of whether or not he worked forty hours. [Garcia: 44(19)-45(3)] [Nichols: 13(16)] [McAllister Aff: ¶9].  Accordingly, Plaintiff cannot meet his burden of proof.

---

[8] Plaintiff's counsel may attempt to cloud the issues before the court by pointing out mistakes in the text of the Agreement (which Plaintiff claims he was not able to read).  However, these mistakes relate to how overtime is to be paid, not to what the salary is designed to cover and therefore have no impact on this part of the analysis. [Farrington Report: 6].  Moreover, as set forth in *Griffin*, 142 F.3d at 717, an occasional misstatement about the details of administering the FWW does not undermine the validity of the FWW. *See Id.* ("A challenge to the County's pay system cannot proceed on the basis of an occasional misstatement or alleged confusion about the technical details of administering the fluctuating workweek plan. If it could, nearly every employer who uses the plan would be open to a lawsuit based on little more than 'after the fact verbal contentions' that employees do not understand the plan in all of its particulars").

-8-

### 3.   PLAINTIFF'S SALARY IS SUFFICIENT TO PROVIDE A PAY-RATE NOT LESS THAN THE APPLICABLE MINIMUM WAGE FOR EVERY HOUR WORKED

Plaintiff has the burden of showing that his salary was not sufficient to provide a pay-rate not less than the applicable minimum wage.  Plaintiff cannot make this showing. [Farrington Report: 7].  Accordingly, Plaintiff cannot meet his burden of proof.

### 4.   THE PLAINTIFF WAS PAID AT LEAST HALF-TIME FOR ALL HOURS IN EXCESS OF FORTY HOURS A WEEK

It is undisputed that the Plaintiff received at least half-time for all hours he worked in excess of forty hours a week. [Garcia: 40(2-5)] [McAllister Aff: ¶9].  Accordingly, Plaintiff cannot meet his burden of proof and Plaintiff's claims against Defendants fail.

### B.   EVEN IF PLAINTIFF WAS ABLE TO MEET HIS BURDEN OF PROOF ON HIS FLSA CLAIM, HE WOULD NOT BE ABLE TO PROVE A WILLFUL VIOLATION. AND, DEFENDANTS CAN SHOW AN HONEST INTENTION TO ASCERTAIN WHAT THE FLSA REQUIRES, SO LIQUIDATED DAMAGES ARE NOT APPROPRIATE

In order to show that Defendant acted willfully, Plaintiff must prove that the Defendant knowingly, deliberately or voluntarily disregarded its obligation to pay Plaintiffs properly.  *See McLaughlin v. Richland Shoe*, 486 U.S. 128, 133 (1988), *Davis v. Charoen Pokphand (US), Inc.*, 302 F. Supp.2d. 1314 (M.D. Ala. 2004).  Plaintiff cannot make this showing as Defendants contacted a wage and hour expert, former head of the Wage and Hour Division of the DOL in Baltimore, to discuss compensating some of Port Royale's employees based on the FWW. [McAllister: 19(15)-21(21)].  This expert explained the parameters of the FWW to them and based on his recommendations, Port Royale implemented the FWW.  *See Id*.

Liquidated damages, although the norm, can be avoided where a defendant can provide "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to

-9-

comply with it." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2nd Cir. 1987); *Tumulty v. FedX Ground Package System, Inc*., 2005 WL 1979104 (W.D. Wash. April 16, 2005); *see also Kroll v. Home Depot USA, Inc.*, 2003 WL 23332905 (S.D. Ga. Aug. 20, 2003). "A district court has the discretion [] to decline to award double damages . . . if the employer shows that it acted in subjected good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. Good faith is an honest intention to ascertain what the FLSA requires and to act in accordance with it." *See Tumulty*, supra at * 5 (internal citations omitted). One way that an employer can satisfy its burden of showing good faith is to provide evidence that it had objective authority that what it was doing complied with the FLSA. *See Id.* As set forth in the paragraph above, Defendants are able to meet this burden, as they can show that they took affirmative steps to investigate the legality of implementing the FWW and based on qualified expert advise, did so. Based on the foregoing, the statute of limitations for Plaintiff's claim should be limited to two years and liquidated damages should be denied.

## II.

## <u>CONCLUSION</u>

Plaintiff was properly paid, both for straight time and for overtime, pursuant to the Fluctuating Work Week method of compensation, provided for in 29 C.F.R. § 778.114. Accordingly, Plaintiff's claims against Defendants should be dismissed and Defendants awarded their reasonable attorneys' fees and costs.

Respectfully submitted this 13th day of October, 2005.

-10-

s/ Jennifer Fowler-Hermes
John M. Hament
Florida Bar No. 937770
Jennifer Fowler-Hermes
Florida Bar No. 0127442
KUNKEL MILLER & HAMENT
Counsel for Defendant
Orange Professional Centre
235 N. Orange Ave., Suite 200
Sarasota, Florida 34236
Telephone: 941-365-6006
Facsimile: 941-365-6209

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2005, I electronically filed the foregoing with the Clerk of the Court by using the Southern District of Florida Electronic Filing System. I further certify that I mailed a true and correct copy of the foregoing to: J.H. Zidell, Esq., 300 71st Street, #605, Miami Beach, Florida 33141, Attorney for Plaintiff.

s/ Jennifer Fowler-Hermes

-11-

Westlaw.

Not Reported in F.3d                                                                                                        Page 1

Not Reported in F.3d, 2003 WL 21488682 (11th Cir.(Ga.))

**(Cite as: 2003 WL 21488682 (11th Cir.(Ga.)))**

**H**

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

United States Court of Appeals, Eleventh Circuit.
Kelvin DAVIS, Donna Parsons,
Plaintiffs-Appellants,
v.
FRIENDLY EXPRESS, INC., Defendant-Appellee.
**No. 02-14111.**

Feb. 6, 2003.

Convenience store managers brought suit against employer, alleging violations of the Fair Labor Standards Act (FLSA). The United States District Court for the Southern District of Georgia granted summary judgment for employer, and managers appealed. The Court of Appeals, No. 01-00182-CV-2, held that: (1) employer's application of fluctuating workweek method of calculating compensation to managers complied with requirements of FLSA, and (2) managers had burden of proving that employer did not comply with FLSA requirements for utilization of the fluctuating workweek method of compensation.

Affirmed.

West Headnotes

**[1] Labor and Employment ☞2307**
231Hk2307 Most Cited Cases
(Formerly 232Ak1271 Labor Relations)
Employer's application of fluctuating workweek method of calculating compensation to its convenience store managers satisfied FLSA requirements; the parties, as evinced by explanation provided on managers' weekly paystubs and by memorandum explaining details of method, had

clear mutual understanding that manager's would be paid fixed salary, regardless of hours worked, and managers' base salary was reasonably calculated to provide average hourly rate not less than applicable minimum wage, even though it had failed to provide minimum wage on some occasions. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.; 29 C.F.R. 778.114(a).

**[2] Labor and Employment ☞2385(1)**
231Hk2385(1) Most Cited Cases
(Formerly 232Ak1511.1 Labor Relations)
Employee bears burden of proving that employer did not comply with requirements, under the FLSA, for utilizing the fluctuating workweek method of compensation. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.; 29 C.F.R. 778.114(a).
Appeal from the United States District Court for the Southern District of Georgia.

Before EDMONDSON, Chief Judge, ANDERSON and BLACK, Circuit Judges.

PER CURIAM.

*1 Plaintiffs-Appellants Kelvin Davis and Donna Parsons appeal the grant of summary judgment in favor of Defendant-Appellee Friendly Express Inc. ("Friendly") dismissing their claims that Friendly failed to pay them overtime compensation as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. No reversible error has been shown; we affirm.

[1] Generally, FLSA requires employers to pay an employee one and one-half times the employee's "regular rate" for all hours worked in excess of forty hours. *See* U.S.C.A. § 207(a)(1). The "regular rate" is the hourly rate at which the employer pays the employee for normal, nonovertime hours in a forty-hour workweek. *See Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.3d                                                          Page 2

Not Reported in F.3d, 2003 WL 21488682 (11th Cir.(Ga.))

**(Cite as: 2003 WL 21488682 (11th Cir.(Ga.)))**

419, 65 S.Ct. 1242, 1244-45, 89 L.Ed. 1705 (1945). But, FLSA implementing regulations provide for an alternative way to calculate the compensation of certain salaried employees: the fluctuating workweek method. *See* 29 C.F.R. § 778.114. The fluctuating workweek method of payment allows an employee whose hours fluctuate from week to week to be compensated at a fixed amount per week as straight-time pay irrespective of the number--few or many--of hours worked. Payment for overtime hours under this method is at one-half time regular-rate instead of the standard one and one-half time rate because the straight-time pay already includes compensation for all hours worked. The regular-rate of hourly compensation will vary from week to week depending on the number of actual hours worked in any given workweek; it is calculated by dividing the number of hours worked into the amount of the straight-time salary. The mathematics of this payment structure means "the more the employee works and the more overtime the employee logs, the less he or she is paid for each additional hour of overtime." *Monahan v. County of Chesterfield, Va.,* 95 F.3d 1263, 1280 (4th Cir.1996).

Plaintiffs were employed by Friendly as convenience store managers and were compensated under the fluctuating workweek method. Plaintiffs brought suit seeking to recover unpaid overtime compensation they claim is due under FLSA. It is Plaintiffs's position that the fluctuating workweek method of calculating compensation has no application to them, and they are due overtime compensation under FLSA's general time and one-half calculations.

The regulations, 29 C.F.R. § 778.114, permit the fluctuating workweek method of calculating compensation under FLSA only if (1) the employee clearly understands that the straight-salary covers whatever hours he or she is required to work; (2) the straight-salary is paid irrespective of whether the workweek is one in which a full schedule of hours are worked; (3) the straight-salary is sufficient to provide a pay-rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked is

greatest; and (4) in addition to straight-salary, the employee is paid for all hours in excess of the statutory maximum at a rate not less than one-half the regular rate of pay.

*2 Plaintiffs maintain that no clear and mutual understanding existed about how they were to be paid. The district court concluded, as a matter of law, that the explanation provided on the weekly pay stubs received by Plaintiffs (and, a memorandum issued to all managers on 27 September 2000 that explained the details of the fluctuating workweek payment method) [FN1] satisfied the requirement that a "clear mutual understanding," exist that "the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number...." 29 C.F.R. 778.114(a). The pay stubs showed a base amount of pay and the number of hours worked; the base amount was constant although the number of hours varied from week to week. Overtime pay was paid at a one-half rate on hours in excess of forty hours. As aptly stated by the Fourth Circuit, the Plaintiffs "received a regular lesson--in the form of their paychecks--about how the fluctuating workweek plan operates." *Griffin v. Wake County,* 142 F.3d 712, 716-17 (4th Cir.1998). While Plaintiffs claim confusion existed about how actual calculations were made, that claim casts no shadow on the underlying understanding that the fixed salary constituted compensation (apart from the one-half overtime premium) for all hours worked in a workweek, whatever their number. *See Bailey v. County of Georgetown,* 94 F.3d 152, 156 (4th Cir.1996) ("Neither the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated"); *see also, Samson v. Apollo Resources, Inc.,* 242 F.3d 629, 636-37 (5th Cir.2001) (limiting the required "clear mutual understanding" to the specific elements stated in the regulation).

Plaintiffs also maintain that Friendly may not avail itself of the fluctuating workweek method of calculating compensation because Friendly failed to set the straight-time pay at an amount that would assure that the employee is compensated "at a rate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.3d

Page 3

Not Reported in F.3d, 2003 WL 21488682 (11th Cir.(Ga.))

**(Cite as: 2003 WL 21488682 (11th Cir.(Ga.)))**

not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest." 29 C.F.R. § 778.114(a). [FN2] The record supports Plaintiffs claim that for four weeks during Davis's eight months' employment, and for one week during a 14-month period of Parsons's employment, the straight-time salary was insufficient, by itself, to cover minimum wage. Davis and Parsons received minimum wage supplements in each of these weeks.

Plaintiffs discount the minimum wage supplement [FN3] and argue that no fluctuating workweek calculation is available if even one time the base salary fails to achieve the minimum wage. Opinion letters issued by the Department of Labor take a contrary view: the fluctuating workweek calculation may apply provided the base salary "is reasonably calculated to provide" an average hourly rate not less than the applicable minimum wage. 27 Op. Wage and Hour Admin. 945 (1969) ("Opinion Letter 945"). *See Cash v. Conn Appliances, Inc.,* 2 F.Supp.2d 884, 894 (E.D.Tex.1997). Opinion Letter 945 allowed the fluctuating workweek method to be employed even though base salary had failed to provide minimum wage in as many as five weeks in one year, when that salary had been reasonably calculated to provide minimum wage, a minimum wage adjustment had been used, and unusual circumstances had caused the employee to work an unexpected number of hours. As long as a variance is required only in a "few isolated workweeks," and the need for variance is caused by unforeseen events, Opinion Letter 945 supports application of the fluctuating workweek calculation. If, however, the need for a minimum wage supplement becomes common, the fluctuating workweek calculation may not apply unless the employer and the employee reach a new understanding. *See* 51 Op. Wage & Hour Admin. 1010 (1969) ("Opinion 1010") (renegotiation required where salary guarantee failed to provide minimum wage in 27 weeks).

**\*3** [2] Plaintiffs contend that Friendly bears the burden of showing that Plaintiffs were properly paid and that the fluctuating method of overtime compensation is available to Friendly. We disagree; we find persuasive the reasoning of the Fifth Circuit

in *Samson,* 242 F.3d at 626, where that court concluded that the employee bears the burden of proving non-compliance with the fluctuating workweek method. [FN4] Plaintiffs failed to proffer evidence creating a material issue of fact on Friendly's compliance with the fluctuating workweek method.

The district court committed no reversible error in granting summary judgment in favor of Friendly on Plaintiffs' FLSA claim. [FN5]

AFFIRMED.

> FN1. This memorandum was received by Plaintiff Parsons; Plaintiff Davis was no longer employed by Friendly when that memorandum issued. Pay stubs issued after the explanatory memorandum showed only total earnings withing showing separate amounts for base salary and overtime. Page 2 of the memorandum, signed by Parsons, stated explicitly that she understood that her base salary provided straight-time pay for all hours worked in a week, including hours in excess of forty.

> FN2. 29 C.F.R. 778.114(c) repeats this requirement: "The 'fluctuating workweek' method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act."

> FN3. Friendly utilized a software program to trigger a minimum wage supplement to assure that no employee was paid less than minimum wage even if the hours actually worked exceeded the number of hours contemplated as the greatest number. Plaintiffs argue that the existence of this program proves that the base salary was insufficient. That Friendly took precautions to assure that no minimum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.3d                                                                        Page 4

Not Reported in F.3d, 2003 WL 21488682 (11th Cir.(Ga.))

**(Cite as: 2003 WL 21488682 (11th Cir.(Ga.)))**

wage violation occurred is not probative of the reasonableness of the base salary computations.

FN4. Generally, a FLSA plaintiff carries the burden of proving all elements of a FLSA claim. When, however, an employer relies on an exemption from a FLSA requirement, the employer generally bears the burden of showing that the exemption applies. As the Fifth Circuit concluded, the fluctuating workweek method is an alterative means of complying with the overtime provisions of FLSA; it is no exemption from those provisions.

FN5. We have considered other arguments advanced by Plaintiffs; no meritorious argument is made.

Not Reported in F.3d, 2003 WL 21488682 (11th Cir.(Ga.))

**Briefs and Other Related Documents (Back to top)**

• 2002 WL 32172151 (Appellate Brief) Reply Brief of the Appellants Kelvin Davis and Donna Parsons (Oct. 28, 2002)Original Image of this Document (PDF)

• 2002 WL 32172149 (Appellate Brief) Brief of Defendant/Appellee (Oct. 07, 2002)Original Image of this Document with Appendix (PDF)

• 2002 WL 32172150 (Appellate Brief) Brief of the Appellants Kelvin Davis and Donna Parsons (Sep. 09, 2002)Original Image of this Document (PDF)

• 02-14111 (Docket)

(Jul. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

(Cite as: 2000 WL 1132110 (D.Or.))

Only the Westlaw citation is currently available.

United States District Court, D. Oregon.
Karen MATSON, aka Kerissa, Plaintiff,
v.
7455, INC., an Oregon corporation, dba Jiggles of
Tualatin, and Frances
Schmitz, an individual, Defendants.
No. CV 98-788-HA.

Jan. 14, 2000.
Charles J. Merten, Attorney at Law, Beaverton,
OR, for petitioner.

Andrew M. Cole, Attorney at Law, James C. Tait,
Tait & Associates, Oregon City, OR, for defendants.

OPINION AND ORDER

HAGGERTY

I INTRODUCTION

*1 The plaintiff, Karen Matson, a former exotic
dancer at the "Jiggles" nightclub in Tualatin,
Oregon, alleges seven claims for relief against
Defendant 7455, Inc., the owner of the nightclub,
and Defendant Frances Schmitz, the general
manager of the nightclub. These claims consist of
the following: 1.) failure to pay minimum wage in
violation of the Federal Labor Standards Act
(F.L.S.A.), 29 U.S.C. § 206; 2.) liquidated damages
for willful violation of the Federal Labor Standards
Act; 3.) failure to pay wages in violation of Oregon
Revised Statutes § 652.140; 4) penalty wages
pursuant to Oregon Revised Statutes §§ 652.150
and 653.055; 5) wrongful termination; 6.)
conversion; and 7.) coercion. These claims were
filed in this court pursuant to federal jurisdictional
statutes 28 U .S.C. §§ 1331 and 1367(a).

Pending before the court is the defendants' motion

for summary judgment (doc. # 49) against all of
these claims. For the reasons set forth below, this
court grants the defendants' motion with respect to
the plaintiffs' F.L.S.A. minimum wage claim and
orders that all other claims are now moot.

II FACTUAL BACKGROUND

Plaintiff worked as an exotic dancer at Jiggles from
May, 1993 through September, 1993; from May,
1994, through June, 1995; from April 1996 through
October, 1997; and in 1988. The defendants claim
that throughout this period, the plaintiff worked as
an independent contractor at Jiggles pursuant to a
written agreement between the parties stating the
following:
    Be it herein known that the undersigned is an
    individual contractor and is solely responsible for
    payment of his/her federal, state, and social
    security taxes and state industrial accident
    insurance and does hereby relieve 7455 Inc. DBA
    Jiggles from any or all responsibility for payment
    of said taxes on my behalf.
The plaintiff concedes to signing this agreement.
[FN1] However, she claims that she did not fully
understand the implications of the agreements.
Nevertheless, consistent with the agreement, she
filed tax returns as an independent contractor until
1994. She has not filed her income tax returns since
1994.

        FN1. The plaintiff signed three identical
        agreements on April 13, 1988, September
        16, 1990, and April 22, 1993.

Throughout her time at Jiggles, the plaintiff was
subject to the following system of compensation
that was in place for all dancers at the club: For use
of building, stage, dressing rooms, bar, staff,
facilities and access to defendants' clientele, dancers
payed a "house fee" in the amount of $30.00 per six
hour shift. Dancers payed this fee in cash or in an
equivalent amount by inducing patrons to purchase

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

**(Cite as: 2000 WL 1132110 (D.Or.))**

at least five "ladies drinks" per shift. The defendants fixed the price of table dances at $5.00 for topless dances and $10.00 for nude dances. The dancers collected and kept as compensation for their services these fees, plus any additional tip offered by a customer. These fees and tips were the dancers' sole form of compensation.

In 1993, the plaintiff worked 580 hours at the defendants' club and earned an average of between $4,000 to $6,000 per month for an average hourly wage of between $82.75 and $124.14. In 1997, the plaintiff worked 975 hours and earned an average wage between $6,000 to $8,000 per month for an average hourly wage between $73.85 and $98.46 per hour. [FN2] These average hourly wages were far beyond the required state and federal minimum wage in1993 or 1997. [FN3] The plaintiff has not specified her earnings at Jiggles for 1994, 1995, or 1996; however, the record indicates that in 1994, she worked 1021 hours; in 1995, 326 hours; and in 1996, 582 hours.

> FN2. These numbers are based on the plaintiff's estimations as noted in her deposition testimony.

> FN3. For the years 1991 through 1996, the Oregon minimum wage was $4 .75 per hour, and for 1997-98, the Oregon minimum wage was $5.50 per hour.

*2 During her tenure at Jiggles, the plaintiff was subject to designated "house rules" implemented by the defendants concerning the conduct expected of dancers at the club. These rules included a provision that no dancer was to come closer than six inches from a customer, or to make any intimate contact with a customer. Jiggles imposed this provision on the dancers to avoid criminal liability. [FN4] The defendants enforced this rule with warnings, and after repeated violations, with nominal fees, which were collected from the offending dancers and given to a charity. [FN5]

> FN4. The defendants claim that the purpose of this rule was to avoid prostitution charges for the club. A person

commits the crime of prostitution if a "... person engages in or offers or agrees to engage in sexual contact in return for a fee." ORS 167.007(1)(a). "Sexual contact" means any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 167.002(5). "A person commits the crime of promoting prostitution if, with intent to promote prostitution, the person knowingly ... [o]wns, controls, manages, supervises, or otherwise maintains a place of prostitution or a prostitution enterprise ..." ORS 167.012(1)(a).

> FN5. According to the defendants, these rules were kept behind the bar in the club and are posted in the dancers' dressing room; however, the plaintiff claims that the rules were only posted in the dressing room for a brief period of time while she was working at Jiggles.

The plaintiff attended several meetings with other dancers where the house rules were discussed. In these meetings, the plaintiff expressed her disapproval of these rules and objected to them as being too confining and controlling. The plaintiff believed that if she was an independent contractor, the defendants did not have the right to tell her what she could and could not do. Particularly, she objected to the rule requiring her body to be at least six inches from the customer at all times. Additionally, the plaintiff objected to the defendants' table dance prices because she felt that the defendants had no right to limit the price for a dance.

The plaintiff asserts that she frequently expressed to Jiggles managers and co-workers, her disagreement with work rules and characterization of dancers as independent contractors. However, the plaintiff's deposition testimony indicates that until this lawsuit was filed, she never demanded from the defendants that she be paid a minimum wage in addition to her other compensation from the club.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

**(Cite as: 2000 WL 1132110 (D.Or.))**

Rather, she only talked about this minimum wage amongst her co-workers.

The plaintiff was fined twice for not obeying the defendants' rules. First, in approximately 1995, the plaintiff was fined $10.00 for not calling to notify the defendants that the plaintiff would be late for her shift. Second, on October 30, 1997, the plaintiff was called up by the shift manager, Veronica Duman, and fined $20.00 for violating the "six-inch" house rule. [FN6] Ms. Duman claimed that Matson had violated the rule by touching a customer. The plaintiff asserts that she argued with Ms. Duman over this fine, but she agreed to pay the money because Ms. Duman told her that she could not dance again without paying the $20.00. However, the plaintiff then asked for a written receipt for the $20.00. The plaintiff objected to the narrative in the receipt that the plaintiff had her "boobs in the face" of a customer, and the plaintiff demanded that Ms. Duman rewrite the receipt. When Ms. Duman refused to change the receipt, the plaintiff refused to pay the $20.00 fine. Ms. Duman and Defendant Frances Schmitz then asked her to go home. Subsequently, the plaintiff asked the defendants if she could come back to work, but they refused to invite her back. The plaintiff concedes that she has never heard the defendants make any derogatory statement against her.

> FN6. The plaintiff had been warned on other occasions about physical contact with the customers but was never fined.

**\*3** The plaintiff then filed this lawsuit. The plaintiff's First and Second Claims for Relief allege that in addition to the compensation she has already received from her work at Jiggles, she is entitled to a minimum wage pursuant to Oregon Revised Statutes § 652.140 and 29 U.S.C. § 206 (Fair Labor Standards Act). The plaintiff seeks $2,755 for 1993, $4,859.75 for 1994, $1,548.50 for 1995, $2,764.50 for 1996, and $5,362.50 for 1997, plus pre and post-judgment interest and attorney's fees. In her Third and Fourth Claims for Relief, the plaintiff is seeking penalty wages and liquidated damages for a willful violation of the state and federal wage laws. In her Fifth Claim for Relief, the plaintiff alleges

wrongful termination due to her resistance to unlawful employment practices by defendants. In her Sixth Claim for Relief, the plaintiff alleges that by charging a house fee for the use of the facilities at the defendants' establishment and by imposing fines for failure to obey house rules, the defendants converted $17,983.00 during the period of the plaintiff's employment. In her Seventh Claim for Relief, the plaintiff alleges that she was coerced into paying fines and house fees by threat of termination.

III SUMMARY JUDGMENT STANDARD

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact, and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party shows the absence of any issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809 (1989). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the non-moving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. When a nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California v. Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1470, (9th Cir.1987), *cert. denied,* 484 U.S. 1006 (1988) (cite omitted). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 4

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

**(Cite as: 2000 WL 1132110 (D.Or.))**

a material issue of fact precludes the use of summary judgment." *Id.* at 1468.

IV DISCUSSION

A. FEDERAL LABOR STANDARDS ACT WAGE CLAIM

1. Plaintiff's independent contractor status

**\*4** The plaintiff alleges that she was not paid a minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 206; however, this Act only affords "minimum wage" protection to employees and not independent contractors. In this case, there is no genuine issue of material fact calling into question the plaintiff's status as an independent contractor at Jiggles; therefore, her F.L.S.A. claim fails, and summary judgment is granted with respect to this claim.

"In deciding whether an individual is an employee within the meaning of the F.L.S.A., the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship." *Donovan v. Tehco,* 642 F.2d 141, 143 (5th Cir.1981); Under this "economic reality" test, "the focal inquiry in the characterization process is thus whether the individual is or is not, as a matter of economic fact, in business with [herself]." *Id.* Five criteria have emerged to guide this determination: (1) the permanency of the working relationship, (2) the opportunity for profit and loss, (3) investment in material, (4) the degree of control, and (5) the individual's skill. *Id.*

An application of these factors to the instant case undisputably leads to the conclusion that the plaintiff was an independent contractor "who [was], as a matter of economic fact, in business with [herself]." The written agreement that was signed by the plaintiff three different times during her tenure at Jiggles is the most telling indicator of her status as an independent contractor. This agreement expressly articulated that the plaintiff was "an individual contractor [who was] solely responsible for payment of [her] federal, state, and social security taxes and state industrial accident

insurance" and that she did hereby "relieve 7455 Inc. DBA Jiggles from any or all responsibility for payment of said taxes on [her] behalf." Additionally, the plaintiff was paid exclusively through fees and tips for table dances, income which was largely dependent on the plaintiff's own skill to attract customers and not on any salary or hourly wage set by the defendants. Through this method of compensation, the plaintiff was in control of her opportunity for profit.

Nevertheless, the plaintiff argues that the degree of control that the defendants kept and exercised over the job performance of the dancers compels the conclusion that Matson was an employee. In particular, the plaintiff points to the "six inch" rule as demonstrative of this control. This rule prohibits dancers from coming within six inches of the customer. The plaintiff's argument fails because this rule is not reflective of the defendants' control over her job performance. Instead, it was implemented by the defendants to avoid potential criminal liability for acts of prostitution in their nightclub.

Thus, the plaintiff has failed to establish any material fact disputing her status as an independent contractor. Accordingly, her F.L.S.A. claim cannot survive summary judgment.

2. F.L.S.A. claim analyzed under the assumption that the plaintiff was an employee.

**\*5** Even if the plaintiff was assumed to be an employee by this court, her F.L.S.A. claim still fails under the summary judgment standard as she has not provided any support for her allegation that she was improperly compensated under the Act. The plaintiff simply rests on her pleadings in support of this allegation without establishing any material fact disputing appropriate compensation under the federal law.

The plaintiff claims that the defendants did not pay her a "minimum wage" in violation of the Federal Labor Standards Act, 29 U.S.C. § 206. In support of this argument, the plaintiff specifically cites to 29 U.S.C. § 203(m). This statute allows an employer to take a credit for tips received by a "tipped

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 5

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

**(Cite as: 2000 WL 1132110 (D.Or.))**

employee" to offset the minimum wage due under the federal law; however, this credit is limited. Only a portion of the tips may count toward the "minimum wage" requirement. Section 203(m) describes how tips are to be included in the "minimum wage" calculation.

In determining the wage an employer is required to pay a "tipped employee," [FN7] the amount paid such employee by the employer shall be an amount equal to -

> FN7. A "tipped employee" means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips. The plaintiff clearly falls within this category.

(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [minimum wage on that date was ($4.25) ], and
(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the [minimum wage in effect].
The additional amount on the account of tips may not exceed the value of the tips actually received by an employee.
Moreover, Section 203(m) states that an employer cannot use tips to offset a "minimum wage" requirement unless the employee has been notified of it.

The plaintiff argues that in violation of Section 203(m), the defendants failed to pay any cash wages, and solely left her to be compensated with tips from the customers for whom she danced. However, the plaintiff fails to understand that Section 203(m) does not apply to the mandatory fees she received from the customers. The $5 and $10 mandatory fees paid by the customers for table dances were not tips as defined by 29 C.F.R. § 531.52--a regulation interpreting 29 U.S.C. § 203:
    A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed

for him. It is to be distinguished from payment or a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.
29 C.F.R. § 531.55 gives further insight on the definition of a tip:
    A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t).
**\*6** These definitions make it abundantly clear that the fixed fees collected by the plaintiff in exchange for table dances are not "tips." No limitation in the F.L.S.A. statute exists precluding the use of such fixed fees in the calculation of an employee's minimum wage.

Nevertheless, in addition to these fixed fees, it is true that the plaintiff received actual "tips" from Jiggles' patrons. These tips implicate Section 203(m) and can only be used to offset a portion of the minimum wage requirement; [FN8] however, the plaintiff did not maintain records distinguishing her tips from the fixed fees, and she now claims that she has no method of separating the tips from the mandatory fees. With such a deficient record, the plaintiff cannot specify an amount by which she was allegedly undercompensated, and she has no factual basis upon which to assert an F.L.S.A. claim. Moreover, she has not alleged or provided any evidence of the amount of total compensation which she earned at Jiggles in 1994, 1995, or 1996. She has only provided estimates of total compensation for 1993 and 1997 through deposition testimony-years in which her average hourly wage was far beyond the minimum wage. In 1993, the plaintiff's hourly wage was between $82.75 and $124.14. In 1997, the plaintiff's hourly wage was between $73.85 and $98.46. [FN9]

> FN8. The plaintiff also claims that the defendants did not give the notice required by Section 203(m) of their intention to offset her minimum wage with monies

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 6

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

**(Cite as: 2000 WL 1132110 (D.Or.))**

received by her from customers. First, this requirement of notice only applies to the actual "tips" that she received. This requirement does not apply to the $5 and $10 fixed fees since they do not implicate Section 203(m) as discussed above. Second, as the plaintiff concedes on page 2, paragraph 4,of her own affidavit, she was originally told by the defendants that her compensation was to come solely from the customers in the form of tips and fees. Thus, it does not make logical sense for the plaintiff to simultaneously assert that she was not on notice that her wages consisted solely of fees and tips from customers.

FN9. These estimates were calculated without separation of mandatory fees and tips as there is no record of this separation.

Under such deficient facts, the plaintiff cannot meet her initial burden under the F.L.S.A. An employee carries the initial burden of proving that "[s]he has in fact performed work for which she was improperly compensated and ... [producing] sufficient evidence to show the amount and the extent of that work as a matter of just and reasonable inference." *Donovan v. Simmons Petroleum Corporation,* 725 F.2d 83, 85 (10th Cir.1983), *citing Anderson v. Mt. Clemens Pottery Co,* 328 U.S. 680, 686-87 (1946). Although this is a very minimal burden, the plaintiff has presented absolutely no evidence that she was wrongfully compensated.

Thus, there is no genuine dispute as to any material fact, and the defendant is entitled to summary judgment as a matter of law on the plaintiff's F.L.S.A. claim. Pursuant to this ruling, all other claims for relief are moot. The plaintiff's Liquidated Damages claim for willful violation of the F.L.S.A. is moot as it was dependent on a finding of liability on the plaintiff's F.L.S.A. claim. The plaintiff's state statutory and common law claims for relief are moot as this court no longer has federal subject matter jurisdiction over them pursuant to 28 U.S.C. §§ 1331 and 1367(a).

THEREFORE, IT IS HEREBY ORDERED:

1. The defendant's motion for summary judgment is granted with respect to the plaintiff's Fair Labor Standards Act claim.

2. All other claims for relief alleged by the plaintiff are moot.

3. All of the plaintiff's claims for relief are dismissed.

Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

172 F.3d 862 (Table)                                                                                       Page 1

172 F.3d 862 (Table), 1999 WL 55182 (4th Cir.(S.C.))
**Unpublished Disposition**

**(Cite as: 172 F.3d 862, 1999 WL 55182 (4th Cir.(S.C.)))**

C

**Briefs and Other Related Documents**

NOTICE:      THIS      IS      AN      UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA4 Rule 36 for
rules regarding the citation of unpublished
opinions.)

United States Court of Appeals, Fourth Circuit.
Shelby M. ANDERSON; Devon C. Baird; Frankie
Lee Boan, Jr.; Patrick G. Boone;
Jerry Woodrow Brown; Marvin L. Brown; Robert
L. Brown; Ferris Edward Catoe,
III; Kirk E. Corley; Daniel S. Dabney; David
William Davis; J. Dowey, Jr.;
Cherrie M. Griggs; Glenn Hopple; Randall Craig
Hudson; Virginia H. Hudson;
Thomas Jeff Jackson, Jr.; Steven Knafelc; Glenn
Martin; Frank G. McLeod, Jr.;
Jere T. Miles; James L. Miller; Todd Howell
Mozingo; Marshall M. Minich; Andrew
S. Morris; Warren Moseley; William G. Moseley;
Jesse Lamar Pope; Virgil L.
Reames; Sylvesta Robinson; David Thomley; James
E. Thomley; Eric N. Tisdale;
Charles White; Hampton Wright; Lyndon
Alexander; Donald Farrow; Kelly Johnson;
John C. Tollison; James G. Robinson; H. Ray
Rutledge, Plaintiffs-Appellants,
Stephen D. VINCENT, Plaintiff,
v.
COUNTY of Kershaw; Jerry L. Horton, former
Sheriff of Kershaw County; Steve
McCaskill, as current Sheriff of Kershaw County,
Defendants-Appellees.
**No. 97-2601.**

Argued Oct. 29, 1998.
Decided Feb. 8, 1999.

Appeal from the United States District Court for
the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-95-4019-10-3).

Michael Kurt Kendree, Law Offices of William
Stuart Duncan, P.A., Georgetown, South Carolina,
for Appellants.

Stephen Terry Savitz, Gignilliat, Savitz & Bettis,
Columbia, South Carolina, for Appellees.

William Stuart Duncan, Joe M. Crosby, Law
Offices of William Stuart Duncan, P.A.,
Georgetown, South Carolina, for Appellants. Linda
Pearce Edwards, Gignilliat, Savitz & Bettis,
Columbia, South Carolina, for Appellees.

Before WILKINSON, Chief Judge, WILLIAMS,
Circuit Judge, and THORNBURG, United States
District Judge for the Western District of North
Carolina, sitting by designation.

OPINION

PER CURIAM.

**\*\*1** Forty-two current and former deputy sheriffs
of Kershaw County, South Carolina, brought suit
challenging the legality of their half-timeovertime
premiums paid pursuant to a "fluctuating
workweek" schedule, 29 C.F.R. § 778.114.
Specifically, plaintiffs alleged that they lacked the
required "clear mutual understanding" that their
salary was compensation for all hours worked.
Because we find that such an understanding sprang
from a decade of consistent practice, we affirm the
district court's grant of summary judgment for the
defendants.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

172 F.3d 862 (Table)                                                                 Page 2

172 F.3d 862 (Table), 1999 WL 55182 (4th Cir.(S.C.))
**Unpublished Disposition**

**(Cite as: 172 F.3d 862, 1999 WL 55182 (4th Cir.(S.C.)))**

                                    I.

The deputies were paid by the County pursuant to a compensation plan implemented in 1986 to meet the demands of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, in the wake of the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The County's plan provided for a "fluctuating workweek" salary plan whereby the deputies were paid a fixed salary for all hours worked. The plan also provided for the payment of half-time overtime when the officers worked more than 171 hours in a 28 day period. *See* 29 C.F.R. § 553.230(b)(permitting a 28 day work period for law enforcement officers). The deputies received compensation at one-half their hourly rate for each hour worked in excess of 171. [FN*]

> FN* Under the fluctuating workweek plan, the hourly rate will vary from week to week depending upon the actual number of hours worked. For example, assume that a deputy's salary is $1810 per 28 day period and the deputy receives overtime premiums after 171 hours. If the employee works 181 hours, he will receive half-time premiums for 10 hours of overtime. To calculate the hourly rate, the salary is divided by the number of hours actually worked. Here, $1810 is divided by 181 hours, yielding an hourly rate of $10. The overtime premium is thus one-half of $10, or $5 per hour of overtime. If, however, the deputy works 191 hours, the premium is reduced. The hourly rate is now $1810 divided by 191, or about $9.48. The half-time premium is thus $4.74. The overtime premium is inversely proportional to the number of overtime hours worked. *See generally* 29 C.F.R. § 778.114.

The deputies were consistently paid under the terms of the fluctuating workweek pay plan since its adoption. They were told their salary and received it in full whether they worked more or less than 171 hours. The deputies also knew they received

compensation for overtime. No written explanation of the method of calculating overtime payments, however, was provided to the deputy sheriffs until December 8, 1995. Nonetheless, the deputies were aware of the premiums, and some frequently complained about the amount of the premiums, especially the fact that the premium decreased as overtime increased.

The deputies filed suit on December 22, 1995, against the County, the former Sheriff, Jerry L. Horton, and the current Sheriff, Steve McCaskill. The deputies challenged the legality of the plan under the FLSA. Specifically, they asserted that they did not have the requisite "clear mutual understanding" that they were to receive a fixed weekly salary regardless of the number of hours worked. 29 C.F.R. § 778.114(a). Without such an understanding, the County was required to pay overtime premiums of one and one-half their hourly rate for all overtime hours worked. *See* FLSA, 29 U.S.C. § 207. The deputies sought monetary and injunctive relief. After discovery, the parties filed cross-motions for summary judgment. The district court found no factual basis in the record for the deputies' allegations. Forty-one of the deputy sheriffs appeal.

                                    II.

Under the FLSA, an employer may use a fluctuating workweek pay plan so that it can "place workers on a variable schedule tailored to the nature of their work without incurring prohibitive overtime costs for weeks in which the hours are the longest." *Griffin v. Wake County,* 142 F.3d 712, 714 (4th Cir.1998). The prerequisites to using this compensation method are set forth in 29 C.F.R. § 778.114. Among them, the employer and employee must have "a clear mutual understanding ... that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a). In other words, "the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

172 F.3d 862 (Table)                                                                                    Page 3

172 F.3d 862 (Table), 1999 WL 55182 (4th Cir.(S.C.))
**Unpublished Disposition**

**(Cite as: 172 F.3d 862, 1999 WL 55182 (4th Cir.(S.C.)))**

hours worked." *Flood v. New Hanover County,* 125 F.3d 249, 252 (4th Cir.1997).

**\*\*2** The deputies assert that they believed that their fixed salary compensated them for all regularly scheduled hours and not, as the regulation requires, for all hours worked. They note that they never received a written explanation of their pay plan. They also argue that Kershaw County's evidence-- that the deputy sheriffs consistently received paychecks using the half-time method of overtime compensation--is insufficient. Thus, the deputies argue that section 778.114(a)'s "clear mutual understanding" requirement was not met and the County was not entitled to compensate its employees under the fluctuating workweek plan.

We disagree. In *Griffin v. Wake County,* this court held that an employer could meet the burden of establishing a clear mutual understanding in several ways. Although in that case the employer distributed a written memorandum explaining the pay plan, we noted that the county's consistent administration of the plan provided an additional way to demonstrate the existence of such an understanding.

[W]e [cannot] overlook the fact that[the] County implemented the fluctuating workweek plan nearly eight years ago. In these eight years the [plaintiffs] have not identified a single instance of the County paying [a plaintiff] less than his full salary for a week in which he performed any regular work. Thus, since 1990, the [plaintiffs] have received a regular lesson--in the form of their paychecks--about how the fluctuating workweek plan operates. This circuit noted in *Monahan v. County of Chesterfield* that "an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures." 95 F.3d 1263, 1275 n. 12 (4th Cir.1996). The [plaintiffs] lived with the fluctuating workweek plan for nearly six years before filing this lawsuit in 1996. Thus, "it is clear from [the plaintiffs'] actions that[they] understood the payment plan in spite of after-the-fact verbal contentions otherwise." *Id.* at 1281 n. 21.

*Griffin,* 142 F.3d at 716-17.

The circumstances relied upon by the court in *Griffin* are present here in stronger form. The deputy sheriffs knew their annual salary. For an entire decade before filing suit, the County consistently paid them their full salary for each work period, whether their actual hoursworked fell above or below 171 hours. Additionally, the deputies accepted a check every two weeks for the same non-fluctuating base amount. They also received half-time overtime for all hours worked over 171. Thus, like the employees in *Griffin,* they "have received a regular lesson--in the form of their paychecks--about how the fluctuating workweek plan operates." *Id.*

This lesson appears to have been learned. In their depositions, the deputies frequently admitted knowing the details of their compensation package, including their annual salary and that their overtime premiums decreased with the number of hours worked. Because a decade of invariable practice gave rise to a clear mutual understanding that the deputies would receive their full salary without regard to the hours actually worked, the judgment of the district court is hereby *AFFIRMED.*

172 F.3d 862 (Table), 1999 WL 55182 (4th Cir.(S.C.)), Unpublished Disposition

### Briefs and Other Related Documents (Back to top)

• 1998 WL 34089200 (Appellate Brief) Brief of Appellees (Jun. 22, 1998)Original Image of this Document with Appendix (PDF)

• 1998 WL 34089201 (Appellate Brief) Brief of Appellants (May. 20, 1998)Original Image of this Document (PDF)

• 97-2601 (Docket)
                                                (Nov. 21, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Page 1

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Washington.
Jacob Daniel TUMULTY, et al., Plaintiffs,
v.
FEDEX GROUND PACKAGE SYSTEM, INC., et
al., Defendants.
**No. C04-1425P.**

Aug. 16, 2005.
Phil I. Brennan, Seattle, WA, for Plaintiffs.

Aaron Roblan, Karen P. Kruse, Wayne W. Hansen,
Jackson Lewis, Seattle, WA, Clifford F. Cordes, III,
Cordes Brandt, Olympia, WA, Sandra Bates Gay,
Bellevue, WA, for Defendants.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT, GRANTING IN PART
AND DENYING IN PART DEFENDANT'S
MOTIONS FOR
PARTIAL SUMMARY JUDGMENT

PECHMAN, J.

**\*1** This matter comes before the Court on
Plaintiffs' Motion for Partial Summary Judgment
regarding their overtime claim, Defendant FedEx
Ground Package System, Inc.'s ("FedEx Ground")
Motion for Partial Summary Judgment regarding
remedies, and FedEx Ground's Motion for Partial
Summary Judgment regarding Tumulty's retaliatory
discharge claim. (Dkt.Nos.57, 58, 69). Having
reviewed the pleadings and supporting materials,
the Court GRANTS in part and DENIES in part
Plaintiffs' motion regarding overtime claims,

GRANTS in part and DENIES in part FedEx
Ground's motion regarding remedies, and GRANTS
in part and DENIES in part FedEx Ground's motion
regarding Tumulty's retaliatory discharge claim.
There are genuine issues of fact as to the exact
number of overtime hours Plaintiffs worked which
precludes summary judgment on this claim.
However, as a matter of law, the appropriate
method of calculating any overtime compensation
due is the "fluctuating workweek" method outlined
in 29 C.F.R. § 778.114. Double damages are
warranted under the Fair Labor Standards Act
("FLSA") for any overtime violations. There are
genuine issues of fact as to whether the three-year
statute of limitations under the FLSA for overtime
claims applies in this case. There are also genuine
issues of fact regarding whether FedEx Ground
fired Tumulty in retaliation for comments Tumulty
made about not being paid overtime. However, as a
matter of law, the FLSA does not provide for
punitive damages for retaliation claims.

BACKGROUND
Plaintiffs' Jacob Daniel Tumulty and Taj Karl Uhde
worked as drivers picking up and delivering
packages for FedEx Ground. They worked as
"secondary van drivers" ("SVDs") for independent
contractors ("Contractors") who had contracts with
FedEx Ground to deliver packages along a specific
route. At one point Tumulty also worked as a
temporary driver for Pomerantz Staffing Services.
Plaintiffs worked for various lengths of time
between September 2001 and January 2003.
Tumulty was fired on January 29, 2003. Uhde quit
on January 17, 2003 due to a work related injury.

Plaintiffs sued the individual Contractors and
FedEx Ground alleging claims under the Fair Labor
Standards Act, U.S.C. § 201 *et seq,* and the
Washington Minimum Wage Act ("MWA"), RCW
49.12.005 *et seq.* Specifically, they allege that they
were denied pay for overtime, breaks, and meal
periods. Additionally, Tumulty claims that he was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B005580000...   10/13/2005

Slip Copy                                                                                           Page 2

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

terminated in retaliation for having complained about the lack of overtime pay.

### ANALYSIS

Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Additionally, "at the summary judgment stage the judge's function is not ... to weigh the evidence ... but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

### I. Claim for Overtime Compensation

**\*2** Both the FLSA and the MWA require employers to pay their employees one and a half times the employee's "regular rate" for hours worked in excess of 40 hours a week. 29 U.S.C. § 207(a)(2)(c); RCW 49.46.130(1). Employers must maintain records of the hours their employees work each day and the total in each workweek, as well as the total wages paid each pay period and the basis of pay. 29 C.F.R. § 516.2; WAC 296-126-040 and 050. Under the regulations implementing the FLSA, "all joint employers are responsible, both individually and jointly, for compliance with all of

the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." 29 C.F.R. § 791.2. The MWA was intended to mirror the provisions of the FLSA. *Inniss v. Tandy Corp.,* 141 Wash.2d 517, 523, 7 P.3d 807 (2000). Due to the related nature of the MWA and the FLSA, the Washington Supreme Court treats the FLSA as "persuasive authority" when interpreting the MWA. *Hisle v. Todd Pac. Shipyards Corp.,* 151 Wash.2d 853, 862, n. 6, 93 P.3d 108 (2004). Because this Court ruled on summary judgment that FedEx Ground was Plaintiffs' joint employer, FedEx Ground is subject to the requirements of the FLSA and the MWA vis-a-vis Plaintiffs.

### A. Calculating the Hours of Overtime Plaintiffs Worked

There are genuine issues of fact regarding the number of overtime hours that Plaintiffs actually worked. As an initial matter, the parties dispute whether the Total Duty Hours listed on the Daily Settlement Records are an accurate measure of the total hours Plaintiffs worked each day; Plaintiffs maintain that they are and FedEx Ground maintains that they are not. The Total Duty Hours typically exceeded 40 hours per week during Plaintiffs' employment. FedEx Ground's manager Chip Anderson testified that the Total Duty Hours reflect the hours a driver worked. FedEx Ground's managers checked the Settlement Records for accuracy and corrected them as needed. On the other hand, according FedEx Ground, these Settlement Records are merely a way of recording the amount of time the drivers were away from the terminal, which FedEx Ground is required to record by Department of Transportation regulations.

There are also genuine issues of fact as to whether Plaintiffs worked the entire time listed in the Total Duty Hours or sometimes worked less and devoted some of the time to non-work (personal) matters or taking breaks. There are no records regarding lunch or other breaks taken. Plaintiffs maintain that they rarely took breaks, including lunch breaks. Even when they did take a lunch break, they remained in the truck because they were directed not to leave the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 3

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

truck unattended and they were on-call while on a break. Plaintiffs contend that no deductions should be taken for lunch or other breaks because FedEx Ground failed in its obligation to maintain records of the exact hours worked as required by the FLSA and because Plaintiffs ate lunch in their trucks while they remained on call. *See* 29 C.F.R. § 785.16 (periods when employee is completely relieved of any work duties are not work time, but periods when employee is not completely relieved of work duties are work time); § 785.18 (rest periods between 5 and 20 minutes must be counted as work time); § 785.19 (meal breaks are not work time if the employee is completely relieved of work duties but are work time if the employee is required to perform any duties, whether active or inactive, such as being present at desk or particular work location; rest breaks, which include coffee or snake breaks, are work time); WAC 296-126-092 (same requirements at FLSA regulations); *Weeks v. Chief of Washington State Patrol,* 96 Wash.2d 893, 897-98, 639 P.2d 732 (1982) (lunch hour is considered work time for MWA and FLSA purposes if employee is not free to leave work site).

**\*3** FedEx Ground maintains that Plaintiffs frequently took time out during the day to take care of personal matters and therefore the entire time away from the terminal is not the hours they actually worked. Tumulty testified that approximately seven to ten times he went home during the weekday for approximately an hour because there was no work for him and he needed to wait to return to the terminal. He also testified that he occasionally cashed checks and had to attend appointments with his lawyer or court hearings (regarding a child custody dispute). Contractor Clere testified that Tumulty spent a significant amount of time talking on the cell phone about non-work related matters while delivering packages. Uhde testified that he cashed his paycheck every week in a bank next to a delivery location and purchased a drink, for a total of approximately 15 minutes each time. Once he bought a watch in a store where he was delivering a package. He testified that he may have bought other things in the mall when delivering packages there. During the occasional lunch breaks, he would read the

newspaper in the truck.

Plaintiffs contend that the lack of records should not preclude summary judgment because FedEx Ground's failure to maintain records as required by the FLSA bars FedEx Ground from now seeking refuge in the lack of records as a means to avoid summary judgment. An award to an employee for overtime compensation pursuant to the FLSA may be appropriate even if the award is only an approximation of the overtime hours actually worked. *Alvarez v. IBP, Inc.,* 339 F.3d 894, 914 (9th Cir.2003) (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). Once the employee has carried his burden of showing that he worked overtime hours for which he was not compensated and the only uncertainty is the amount of damages, an employer's failure to keep sufficiently detailed records of the hours worked cannot bar recovery of damages. *Mt. Clemens Pottery,* 328 U.S. at 688. However, even if the employee shows that the amount of hours can be determined based on reasonable inferences, the employer may rebut the employee's reasonable inferences "with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88; *Alvarez,* 339 F.3d at 915. While FedEx Ground's failure to maintain records cannot bar recovery, there are genuine issues of fact viewing the evidence in the light most favorable to FedEx Ground as to a reasonable approximation of the number of overtime hours worked.

A separate issue relates to missing Daily Settlement Records. Apparently there are 27 missing records for Plaintiff Uhde and 137 missing records for Plaintiff Tumulty. Plaintiffs assume for purposes of this motion that they did not work most of the days of the missing records. The only exception is that Plaintiffs assume Tumulty worked 45 hours per week for the month of October, 2001 when he worked for Contractor Clere because the existing records show that he worked on average 49 hour weeks when working for Clere. Again, the reasonableness of this inference must be determined by the fact finder.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

*B. Calculating the Compensation Due for Overtime Hours Worked*

**\*4** The parties dispute what the correct formula for calculating the rate of overtime compensation should be. 29 C.F.R. § 778.114 provides for an exception to the normal rule under the FLSA that overtime be calculated at one and a half times the regular rate. FedEx Ground maintains that any overtime compensation due should be calculated using this "fluctuating workweek" method. This regulation allows overtime to be calculated at only a half of the regular rate. It states:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a). [FN1]

FN1. Washington regulations utilize identical language. WAC 296- 128-550. Therefore, even though the parties' arguments focus on the FLSA, the Court's ruling applies equally to Plaintiffs' state law overtime claims.

There is no dispute that using this method here would not result in an hourly rate below the statutory minimum wage, nor is there any dispute that the number of hours Plaintiffs worked each week fluctuated. The parties dispute whether the "clear mutual understanding" extends only to being paid a fixed weekly salary regardless of the number of hours worked (FedEx Ground's position) or whether it also includes an understanding that Plaintiffs would be paid overtime and also requires that they have been contemporaneously paid overtime (Plaintiffs' position).

There is no Ninth Circuit case law directly interpreting this aspect of the regulation. While no appellate decision is directly on point, the relevant cases favor FedEx Ground's position. [FN2] The First and Fifth Circuits have both held that employers who inappropriately misclassified an employee as exempt from the FLSA may rely on § 778.114 to determine overtime due because the employees understood that they would be paid a fixed weekly salary regardless of the hours worked. *Valerio v. Putnam Assoc. Inc.,* 173 F.3d 35, 39-40 (1st Cir.1999); *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138 (5th Cir.1988). "The parties must only have reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not." *Valerio,* 173 F.3d at 40. Neither court required that the employee know that he would receive overtime compensation or have actually received it contemporaneously. In fact, in *Valerio,* the employee understood that her employer did not intend to pay her overtime. These cases imply that the employee need not have understood that he would receive overtime compensation and need not have been paid such compensation contemporaneously. *See Oliver v. Mercy Med. Ctr., Inc.,* 695 F.2d 379, 381 (9th Cir.1982) (holding § 778.114 did not apply in determining the rate of compensation for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 5

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

plaintiff-employee's on-call overtime because it would have the effect of presuming that the parties agreed to an hourly rate below the statutory minimum wage and because there was "no evidence that either party intended that [the employee] would not be paid overtime compensation for those hours").

> FN2. Many of the other cases addressing this particular regulation are not on point because they confronted situations where the employer explicitly made clear to the employee at the outset that it would use the fluctuating workweek method to calculate any overtime due. *Griffin v. Wake County,* 142 F.3d 712, 714, 716 (4th Cir.1998); *Roy v. County of Lexington,* 141 F.3d 533, 547-48 (4th Cir.1998); *Condo v. Sysco Corp.,* 1 F.3d 599, 600, 601-02 (7th Cir.1993); *Highlander v. K.F.C. Nat. Mgmt. Co.,* 805 F.2d 644, 645 (6th Cir.1986); *Martin v. David T. Saunders Constr. Co.,* 813 F.Supp. 893, 896, 900-01 (D.Mass.1992); *Inniss v. Tandy Corp.,* 141 Wash.2d 517, 520, 535, 7 P.3d 807 (2000) (holding that the fluctuating workweek method of calculating overtime compensation does not violate Washington's MWA).

*5 The instant case is analogous. FedEx Ground assumed it was not Plaintiffs' joint employer and therefore did not award overtime. Now that the Court had deemed FedEx Ground to be a joint employer in this instance, the undisputed evidence that Plaintiffs clearly understood that they would be paid a fixed weekly salary regardless of the number of hours they worked means that the fluctuating workweek is an appropriate method of calculating any overtime compensation due.

Plaintiffs cite a district court case that reached the opposite conclusion. *Rainey v. Am. Forest & Paper Assoc., Inc.,* 26 F.Supp.2d 82 (D.D.C.1998); *see also Cowan v. Treetop Enter., Inc.,* 163 F.Supp.2d 930 (M.D.Tenn.2001) (citing *Rainey* ). The *Rainey* court held that the plain language of the regulation required contemporaneous payment of the overtime

compensation if the employer was going to use the fluctuating workweek method of calculating overtime compensation. 26 F.Supp.2d at 100-01. This Court does not find this reasoning persuasive and declines to follow it.

Summary judgment in favor of FedEx Ground is granted on this issue. Once the fact finder determines the number of overtime hours worked each week, any overtime compensation due will be calculated by dividing the total hours worked each week by $600 (Plaintiffs' weekly salary) and then multiplying half that "hourly rate" by the number of hours in excess of forty that each Plaintiff worked that week.

*C. Double Damages under the FLSA and the MWA*

Plaintiff seeks summary judgment that double damages are warranted under either the FLSA, or alternatively the MWA. FedEx Ground seeks summary judgment that double damages are not warranted under either statute.

Under the FLSA, an employer who fails to pay overtime as required by § 207 is liable to the employee for the unpaid overtime compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Double damages are the norm, single damages are the exception. *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.,* 83 F.3d 292, 297 (9th Cir.1996). A district court has the discretion, however, to decline to award double damages or to award less than double damages if the employer shows that it acted in subjective good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. § 260. "Good faith is an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Local 246,* 83 F.3d at 298 (quotation and citation omitted). An employer might satisfy this burden if it "had secured some objective authority, or at the very least sought advise on the legality of treating [the two companies deemed joint employers] as separate employers for the purpose of calculating overtime...." *Chao v. A-One Medical Services, Inc.,* 346 F.2d 908, 920 (9th Cir.2003). But if the employer treats the two

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 6

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

companies as separate *for the purpose* of avoiding the FLSA's requirements, the employer fails to meet this burden. *Id.* at 919 n. 7. *See Alvarez,* 339 F.3d at 910 (employer liable for liquidated damages if it failed to take steps necessary to ensure its practices complied with the FLSA; "[m]istaking ex post explanation and justification for the necessary affirmative 'steps' to ensure compliance, [the employer] offers no evidence to show that it actively endeavored to ensure such compliance"). If the employer fails to satisfy this burden, liquidated damages are mandatory. *Local 246,* 83 F.3d at 297.

*6 FedEx Ground's belief that it was not Plaintiffs' joint employer was not objectively reasonable. FedEx Ground has not presented any evidence of any steps it took to ensure its compliance with the FLSA as regards the secondary van drivers such as Plaintiffs. To avoid double damages under the FLSA, *Chao* requires that FedEx Ground show that it "had secured some objective authority, or at the very least sought advise on the legality" of its position. 346 F.2d at 920. FedEx Ground points to numerous legal proceedings as evidence that it had relied on such objective authority. However, this evidence is of marginal value at best. FedEx Ground claims that numerous legal proceedings found that "various Contractors were not employees of FedEx Ground for purposes of various employment law claims." (Kruse Decl., ¶ 8, Ex. G). However, Exhibit G is only a list of legal proceedings; there is no evidence indicating what the legal issues or the outcomes were. FedEx Ground also points to a judgment in *Mailhot v. FedEx Ground Package Sys., Inc.,* from a New Hampshire district court in which the jury found that plaintiff was not an employee of FedEx Ground. (Id., ¶ 9, Exs. H and I). Again, there is no indication what plaintiff's job duties involved. In any event, the legal status of the Contractors is a distinct issue from FedEx Ground's status as a joint employer of the secondary van drivers such as Plaintiffs. Even if the Contractors are independent contractors, this would not preclude FedEx Ground from being a *joint* employer (with the Contractors) of the secondary van drivers. [FN3] FedEx Ground also points to a letter from the IRS indicating that "operations conducted in accordance with [the

operating agreement contracts with the Contractors] are not inconsistent with an independent-contractor relationship with [the Contractors]." (Edmonds Decl., Ex. A). Again, this is of marginal relevance. It does not address the legal standards for a "joint employment" relationship under the FLSA nor does it address the secondary van drivers such as Plaintiffs.

> FN3. Plaintiffs claim that FedEx Ground's history with the National Labor Relations Board ("NLRB") put it on notice of its employer obligations. It is worth noting that this argument suffers from similar problems. Plaintiffs point to an NLRB decision involving FedEx Ground's predecessor company in which the NLRB concluded that drivers were employees not independent contractors under the National Labor Relations Act ("NLRA"). *N.L.R.B. v. Roadway Package Sys., Inc.,* 326 N.L.R.B. 842 (1998). However, it is difficult to glean much from this decision because it is not clear if FedEx Ground's predecessor conducted it operations similarly to FedEx Ground's current operations. Furthermore, according to FedEx Ground, there were further legal proceedings in this case that resulted in a different outcome, and different legal standards are used under the FLSA than under the NLRA.

In short, none of these other legal proceedings has any strong bearing on the question here, namely whether FedEx Ground had objectively reasonable grounds to believe that it was not Plaintiffs' joint employer. By failing to take any steps to ensure the legality of its position that it was not a joint employer, FedEx Ground's actions did not demonstrate that it had objectively reasonable grounds for believing its conduct did not violate the FLSA. The fact that the instant case may be the first to raise the issue of FedEx Ground's status as a joint employer of the secondary van drivers does not necessarily mean that FedEx Ground's interpretation of the legal issue was objectively reasonable. Therefore, it is of no moment that there are multiple

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 7

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

relevant factors used in determining whether an entity is a joint employer and that the Court found that a few of the factors did not indicate that FedEx Ground was a joint employer. Similarly, even if the Court accepted FedEx Ground's argument that it subjectively believed in good faith that it was not Plaintiffs' joint employer and need not pay overtime compensation, as evidenced by its operating agreements with the Contractors and its lack of involvement in paying Plaintiffs their wages, this does not negate the Court's conclusion that FedEx Ground's belief was not objectively reasonable.

\*7 Double damages are warranted under the FLSA. Because the Court grants summary judgment in favor of Plaintiffs on this issue, the Court need not reach Plaintiffs' alternative request for double damages under the MWA.

*D. Statute of Limitations Under FLSA*

Under 29 U.S.C. § 255, if an employer's conduct amounts to a "willful" violation of the FLSA, a three year statute of limitations applies rather than the normal two year statute of limitations under the FLSA. This is a mixed question of law and fact. *Alvarez,* 339 F.3d at 908. A violation is willful if the employer knew its conduct violated the FLSA or recklessly disregarded whether it was violating the FLSA. *Chao,* 346 F.3d at 914. "[A]n employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute although [the court] will not presume that conduct was willful in the absence of evidence." *Id.* at 908-09 (citation omitted).

There is a distinct difference between the double damages determination and the willfulness determination. Double damages are the norm. The employer may assert as a defense to imposition of double damages that it acted in subject good faith and on objectively reasonable grounds. Thus, the employer has the initial burden. In contrast, the three year statute of limitations is not the norm. The employer's conduct is deemed willful under § 255 only if there is evidence that the employer knew its conduct violated the FLSA or recklessly

disregarded whether it was violating the FLSA. Thus, the plaintiff has the initial burden of presenting evidence to prove the employer's willfulness. *See id.* at 919 n. 7 ("[T]wo employers may share employees but make serious efforts to 'completely disassociate' themselves with respect to the employment of the shared individuals.... [T]he efforts at separateness might, at the very least, make willfulness a question more appropriate for a jury than for disposition on summary judgment.").

Here, Plaintiffs have not presented sufficient evidence that FedEx Ground's conduct was willful. While it is undisputed that Plaintiffs complained to FedEx Ground managers about not being paid overtime to which the managers responded that this was a matter between Plaintiffs and the Contractors, this is not sufficient to meet Plaintiffs' burden on this issue. FedEx Ground's efforts to disassociate itself from the Contractors by use of the contracting agreements sufficiently rebuts Plaintiffs' evidence to create an issue of fact that is most appropriate for the fact finder. Therefore, the Court does not grant summary judgment on this issue to either party.

*E. Injunctive Relief Under the FLSA and the MWA*

In their complaint, Plaintiffs sought injunctive relief requiring Defendants to treat all current and future drivers as their employees. (Compl., ¶ 5.3). However, it is undisputed that Plaintiffs are no longer pursuing this case as a class action. Further, it is undisputed that Plaintiffs no longer work as drivers for FedEx Ground. Therefore, Plaintiffs have no standing to seek injunctive relief. Summary judgment in favor of FedEx Ground is granted on this issue.

*II. Tumulty's Retaliatory Discharge Claim*

\*8 Both the FLSA and the MWA prohibit an employer from discharging or in any other way discriminating against an employee for filing a complaint or instituting a proceeding under the FLSA or the MWA respectively. 29 U.S.C. § 215(a)(3); RCW 49.46.100(2). While there is no Ninth Circuit case on point, other circuits have held that the burden shifting scheme in *McDonnell*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 8

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

*Douglas Corp. v. Green,* 411 U.S. 792, 802, 93
S.Ct. 1817, 36 L.Ed.2d 668 (1972), applies to
FLSA retaliation claims. [FN4] *See Conner v.
Schnuck Mkts., Inc.,* 121 F.3d 1390, 1394 (10th
Cir.1997); *Brock v. Casey Truck Sales, Inc.,* 839
F.2d 872, 876 (2d Cir.1988). This requires the
employee to establish a prima facie case that 1) he
engaged in protected activity, 2) he suffered an
adverse employment action, and 3) there was a
causal link between the protected activity and the
employment decision. *Cf. Raad v. Fairbanks N.
Star Borough Sch. Dist.,* 323 F.3d 1185, 1196-97
(9th Cir.2003) (applying these elements to a
retaliation claim under Title VII). The burden then
shifts to the employer to offer a legitimate reason
for the plaintiff's termination. Finally, the burden
shifts back to the employee to prove by a
preponderance of the evidence that the reason
offered was merely a pretext for the retaliatory
motive. It is undisputed that Tumulty suffered an
adverse employment action when he was fired on
January 31, 2003. However, there are genuine issue
of fact as to whether Tumulty engaged in a
protected activity and whether he can show
causation, as well as whether FedEx Ground fired
Tumulty for a legitimate reason or as a pretext for a
retaliatory motive.

> FN4. As noted above, Washington courts
> generally follow the framework utilized for
> FLSA actions for MWA actions.
> Therefore, the foregoing analysis and
> conclusion applies equally to Tumulty's
> MWA retaliatory discharge claim.

*A. Tumulty's Prima Facie Case*

The parties dispute whether Tumulty engaged in
protected activity when he discussed overtime in his
conversation with FedEx Ground manager Chip
Anderson on January 29, 2003 (two days before he
was fired). The Ninth Circuit interprets the FLSA
broadly such that an informal complaint to the
employer may constitute a protected activity.
*Lambert v. Ackerley,* 180 F.3d 997, 1004 (9th
Cir.1999). While "not all amorphous expressions of
discontent related to wages and hours constitute
complaints filed within the meaning of § 215(a)(3),"

the complaint need not be formal or highly detailed
and need not refer to the statute by name. *Id.* at
1007-08. "[S]o long as an employee communicated
that *substance* of his allegations to the employer,"
he is protected by § 215(a)(3). *Id.* at 1008
(emphasis in original).

On July 29, 2003 (Tumulty's last day working as a
driver) Tumulty entered Anderson's office to pick
up a map. Tumulty testified in deposition that
Anderson asked him about why he quit driving for
Clere. Tumulty responded that he was tired of
working overtime without compensation. He further
testified that he told Anderson that he was not going
to work overtime without being paid for it.
Anderson said that this was a matter between him
and his Contractor. Tumulty testified that this
conversation with Anderson began because he
asked Anderson about how much money the
Contractors made. He said that he asked this
because he wanted to understand the economics
involved since Clere had told Tumulty that he could
not afford to pay overtime. Later in the deposition,
he said that he was talking generally about buying
routes and the economics of the Contractors'
arrangements because Anderson was under the
impression that he wanted to buy a route. Also, later
in the deposition, he testified that his comments
were not limited to when he worked for Clere, but
concerned his unhappiness with working overtime
in general. The conversation lasted for
approximately five minutes. Tumulty characterized
it as a friendly conversation. Anderson did not
appear angry as a result of the conversation. [FN5]

> FN5. Tumulty had also complained to
> three other FedEx Ground managers in
> May, 2002 about not being paid overtime
> when he worked for Clere. Two managers
> responded that this was a matter between
> Tumulty and the Contractor. The third
> manager did not respond to Tumulty's
> comments. This was the same time that
> Tumulty worked as a temp at the request of
> one of the FedEx Ground managers, who
> told him that he should not work more than
> 8 hours per day. These events are not
> particularly relevant because they occurred

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                        Page 9

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

between six and seven months before Tumulty was discharged.

**\*9** FedEx Ground maintains that Tumulty's comments to Anderson were not complaints within the meaning of § 215(a)(3) because they related to the time period when Tumulty drove for Roy Clere and were not directed at FedEx Ground. FedEx Ground points to case law for the proposition that complaints about former employers are not protected activity. This argument ignores the fact that FedEx Ground has been deemed Tumulty's joint employer under the FLSA. According to FedEx Ground, because it had no role in setting Tumulty's hours and paying his wages, Tumulty could not have thought his complaint to Anderson was protected under the FLSA. This argument also fails because the employee need not know the intricacies of who is a joint employer and who is not under the FLSA. Lastly, FedEx Ground maintains that Tumulty's comments were general and vague and thus did not raise to the level of a complaint under *Ackerley.* FedEx Ground's arguments are somewhat inconsistent. First, it argues that Tumulty's comments specifically concerned when he worked for Clere and were clearly not directed at FedEx Ground. But it then argues that Tumulty's comments were vague and general expressions of unhappiness with not being paid overtime. Tumulty characterizes the conversation differently. He claims that he unequivocally told Anderson that he would not work overtime anymore. Tumulty's testimony supports both parties' respective interpretations. Therefore, Tumulty's testimony is sufficient to establish a prima facie case that his comments to Anderson amounted to substantive complaint about not being paid overtime.

Causation can be inferred when the termination occurs soon after the employee engages in a protected activity. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002) ("causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity"). Here, the discussion between Tumulty and Anderson occurred on July 29, 2003 and Tumulty was fired the next time he was scheduled to work, which was two days later on

July 31, 2003.

*B. Reason for Termination*

The parties also dispute whether Tumulty was fired for a legitimate reason or as a pretext for a retaliatory motive. To prevail on a retaliatory discharge claim, the employee "must show that [his] protected activities were a 'substantial factor' in the complained of adverse employment action. Protected activities are a 'substantial factor' where the adverse actions would not have been taken 'but for' the protected activities." *Knickerbocker v. City of Stockton,* 81 F.3d 907, 911 (9th Cir.1996) (citation omitted). FedEx Ground maintains that Tumulty was fired because he failed to deliver a significant number of packages on July 29, which was unacceptable for a driver with his experience. Tumulty does not dispute that he was supposed to deliver all the packages in his truck and that he filed to do so, but maintains that this was a pretext to fire him to disguise Anderson's retaliatory motive.

**\*10** In his deposition, Tumulty conceded that he did not deliver "a lot" of the packages, and that this was more than the normal volume of undelivered packages. (Tumulty Dep., 206-07). When he called in on the morning of July 31, 2003, Anderson confronted him about not delivering all the packages. He responded that he was not able to do so because the rental truck he was using did not have shelves and therefore the load was very unorganized, and because the deliveries covered significant distances. Anderson then told Tumulty he was no longer needed. Anderson testified that Tumulty failed to deliver an "extraordinary" number of packages that day and that he failed to notify anyone at the terminal that he would not be able to do so. He testified that the only reason he fired Tumulty was because of this failure to deliver the packages.

According to Tumulty, he had brought back undelivered packages before but had never been fired, although he concedes that a FedEx Ground manager had shown his displeasure on one occasion. He testified that he had never been required to contact anyone at the terminal when he

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 10

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

was not able to deliver all of the packages. He testified that the number of packages he brought back on July 29 was greater than other times, but not by much. Anderson conceded in his deposition that he had never fired a temp driver before for not delivering a significant number of packages. Further, the records indicate that Tumulty drove 120 miles that day compared to what he claims was normally 5-10 miles. Add to this the fact that the records also indicate that he delivered more packages than all but one temp that day together with the fact that this other temp had to make only 15 stops compared to Tumulty's 22 stops that day. All of this together is sufficient to create an inference that his performance was not so unreasonable and that he was fired for other reasons. In other words, this undermines FedEx Ground's claim that Tumulty would not have been fired but for his failure to deliver all the packages in his truck on July 29. While FedEx Ground has met its burden of showing a legitimate reason for firing Tumulty, Tumulty has also met his burden of showing that the reason offered was a pretext for a retaliatory motive. These issues must be decided by the fact finder. Summary judgment is not warranted on Tumulty's retaliatory discharge claim.

*C. Punitive Damages*

Tumulty seeks punitive damages in conjunction with his FLSA retaliation claim. (He concedes that such damages are not available under his state law claims.) Section 216(b) of the FLSA outlines the remedies available for a violation of § 215(a)(3):

   such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216. The parties dispute whether the FLSA allows punitive damages. The Ninth Circuit has not addressed the issue and the two circuits that have are split. *Snapp v. Unlimited Concepts, Inc.,* 208 F.2d 928 (11th Cir.2000) (punitive damages not available); *Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108 (7th Cir.1991) (punitive damages available). [FN6]

FN6. In *Lambert,* the Ninth Circuit did not reach the issue because the defendant had waived it, but the court nonetheless indicated in dicta that the reasoning in *Travis* was persuasive. 180 F.3d at 1011. However, as FedEx Ground points out, the court made this statement before the Eleventh Circuit had issued its opinion in *Snapp.*

**\*11** This Court finds the decision in *Snapp* well reasoned and persuasive. The Eleventh Circuit analyzed in detail the legislative history and overarching purpose of the retaliation provision in the FLSA and concluded that Congress intended that the remedies would compensate the plaintiff, but did not intend to allow punitive damages as shown by the fact that punitive damages are allowed under § 216(a). 208 F.3d at 933-38. The decision in *Snapp* presents a more detailed legislative history and analysis than in *Travis.* The Court agrees with the analysis and the conclusion in *Snapp* and therefore grants summary judgment in favor of FedEx Ground that punitive damages are not allowed for retaliation claims under the FLSA.

CONCLUSION

The Court GRANTS in part and DENIES in part Plaintiffs' motion regarding overtime claims, GRANTS in part and DENIES in part FedEx Ground's motion regarding remedies, and GRANTS in part and DENIES in part FedEx Ground's motion regarding Tumulty's retaliatory discharge claim. There are genuine issues of fact as to the exact number of overtime hours Plaintiffs worked which precludes summary judgment on their overtime claim. However, the appropriate method of calculating any overtime compensation due is the "fluctuating workweek" method outlined in 29 C.F.R. § 778.114. Double damages are warranted under the Fair Labor Standards Act for any overtime violations. There are genuine issues of fact as to whether the three-year statute of limitations under the FLSA for overtime claims applies in this case. There are also genuine issues of fact regarding whether FedEx Ground fired Tumulty in retaliation for comments Tumulty made about not being paid overtime. However, the FLSA does not provide for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 11

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**(Cite as: 2005 WL 1979104 (W.D.Wash.))**

punitive damages for retaliation claims.

The clerk is directed to provide copies of this order to all counsel of record.

Slip Copy, 2005 WL 1979104 (W.D.Wash.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2976969 (Trial Pleading) Defendant Royong Enterprises' Answer to Plaintiffs' 1st Amended Complaint (Aug. 17, 2004)

• 2004 WL 2995569 (Trial Pleading) Fedex Ground's Answer and Affirmative Defenses to First Amended Complaint (Jul. 09, 2004)

• 2004 WL 2976949 (Trial Pleading) Defendant Sparks' Answer to 1st Amended Complaint, Affirmative Defenses and Counter-Claim (Jun. 24, 2004)

• 2:04cv01425 (Docket)
                              (Jun. 18, 2004)

• 2004 WL 2995588 (Trial Pleading) Reply to Sparks' Counterclaim (2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 23332905 (S.D.Ga.), 149 Lab.Cas. P 34,798

**(Cite as: 2003 WL 23332905 (S.D.Ga.))**

C

**Motions, Pleadings and Filings**

United States District Court,
S.D. Georgia.
Brent KROLL and Tamara Drury, Plaintiffs,
v.
HOME DEPOT U.S.A., INC., Defendant.
**No. Civ.A. CV202-113.**

Filed July 3, 2002.
Aug. 20, 2003.
Walter Douglas Adams, Brunswick, GA, for Brent
Kroll, plaintiff.

Walter Douglas Adams, (See above), for Tamara
Drury, plaintiff.

John F. Wymer, III, William P. Miles, Jr., King &
Spalding, Atlanta, GA, John E. Bumgartner,
Whelchel, Brown, Readdick & Bumgartner,
Brunswick, GA, for Home Depot U.S.A., Inc.,
defendant.

*ORDER*

ALAIMO, J.

**\*1** Plaintiffs, Brent Kroll and Tamara Drury,
brought this action against Defendant, Home Depot
U.S.A., Inc. ("Home Depot") alleging violations
under the Federal Labor Standards Act ("FLSA").
Plaintiffs claim that Home Depot failed to
compensate them for overtime work as required by
the FLSA. Before the Court are Home Depot's
motion for summary judgment as to the claims of
Kroll and motion for partial summary judgment as
to certain claims of both Plaintiffs. The motion for
summary judgment as to the claims of Kroll will be
GRANTED. The motion for partial summary
judgment will be DENIED IN PART and

GRANTED IN PART.

*FACTS*

Both Plaintiffs were employed by Home Depot in
its Brunswick, Georgia, store. Kroll was initially
hired by Home Depot in October 1998. In 1999 he
transferred to the Brunswick store and later was
promoted to department supervisor. As department
supervisor, he was required to write out the work
schedules and employee performance reviews for
employees in his department. Kroll occasionally
completed these schedules and evaluations at home.
He alleges that Home Depot has not compensated
him properly for all hours he worked as required by
the FLSA. Sometimes he would submit "Time and
Attendance Change Request" forms to Home Depot,
but other times he would not request compensation
for work done at home. When Kroll did submit
"Time and Attendance Change Request" forms,
however, he was compensated for the time he spent
working at home.

Kroll also alleges that Home Depot did not
compensate him properly for travel time. He was
responsible for training new associates throughout
the district and often traveled to the Savannah,
Georgia, and Pooler, Georgia, Home Depot stores.
While he was paid "straight time" for this travel, he
asserts that the travel time should be paid as
overtime to the extent that he worked over forty
hours in a week. Kroll was discharged from Home
Depot on May 29, 2002, for time theft.

On February 15, 2002, Kroll filed a Chapter Seven
bankruptcy petition. In his schedule of assets and
debts, he did not include any potential claims
against Home Depot. On June 4, 2002, Kroll was
discharged from bankruptcy with a finding of no
assets. Two days after this discharge, on June 6,
2002, Kroll sent a demand letter to Home Depot for
unpaid compensation under the FLSA. On July 3,
2002, Kroll filed this action against Home Depot.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 2

Not Reported in F.Supp.2d, 2003 WL 23332905 (S.D.Ga.), 149 Lab.Cas. P 34,798

**(Cite as: 2003 WL 23332905 (S.D.Ga.))**

On July 18, 2003, he petitioned to re-open his bankruptcy case attempting to discharge some of his student loans. He did not amend his schedule of assets at that time to include his FLSA claims against Home Depot. Subsequent to Home Depot's motion for summary judgment, Kroll amended his bankruptcy schedule of assets to include this claim against Home Depot.

Drury initially was hired by Home Depot in October 1998. In June 2001, she was promoted to the front-end supervisor position. In that position, she was required to travel occasionally for off-site training and meetings. On April 27, 2002, she was discharged by Home Depot for job abandonment. On that day, she refused to do what her assistant manager asked, turned in her keys, and left the store.

*2 Drury alleges six occasions when she was not compensated properly for travel time. Four of those occasions involved mandatory off-site training or meetings, twice in Atlanta, Georgia, once in Hilton Head, South Carolina, and once in Charleston, South Carolina. On another occasion, Drury alleges that she was required to travel to the Savannah, Georgia, store to train an employee. After training the employee at the Savannah store, she returned to complete her work day at the Brunswick store. On each of these five occasions, Home Depot paid Drury for the actual time at training and also compensated her "straight time" for travel. Drury also alleges she was compensated improperly when she traveled to Hickory Bluff, North Carolina, on her day off to interview for an assistant manager position at that Home Depot store. She was not paid for any of this time.

Home Depot asserts that Kroll's claims are barred by the doctrine of judicial estoppel. Home Depot also asserts that both Plaintiffs' claims are within the Portal-to-Portal Act exception to the FLSA. Further, Home Depot asserts that Drury's travel time to her interview at the Hickory Bluff store is not "work" as defined by the FLSA and, therefore, is excluded from the act. Finally, Home Depot asserts that liquidated damages are inappropriate because it exercised good faith at all times to comply with the requirements of the FLSA.

*STANDARD FOR SUMMARY JUDGMENT*

Home Depot is entitled to summary judgment on its motion if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the initial burden is on the movant, who must make a case for the absence from the record of any material issue of fact. *Cohen v. United American Bank of Cent. Fla.,* 83 F.3d 1347, 1349 (11th Cir.1996). Once the movant has met this burden, the burden shifts to the non-movant, who must contradict the movant's showing by demonstrating that the evidence in the record before the Court would be sufficient to support a jury verdict in the non-movant's favor, assuming that all inferences are drawn, and any doubt regarding the credibility of evidence is resolved in the non-movant's favor. *Id.; Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996).

*DISCUSSION*

I. JUDICIAL ESTOPPEL

Under the doctrine of judicial estoppel, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with the position that party took in a previous proceeding. *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001). The purpose of the doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (citations omitted). Courts frequently have applied the doctrine of judicial estoppel to prevent a debtor from claiming or realizing assets not disclosed during bankruptcy proceedings. *See, e.g. DeLeon v. Comcar Industries, Inc.,* 321 F.3d 1289, 1291 (11th Cir. Feb. 18, 2003); *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1283 (11th Cir.2002) ; *Ferry v. Georgia Dep't of Transportation,* CV299-146 (S.D.Ga. Dec. 22, 2000); *Scoggins v. Arrow Trucking Co.,* 92 F.Supp.2d 1372, 1376 (S.D.Ga.2000).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3

Not Reported in F.Supp.2d, 2003 WL 23332905 (S.D.Ga.), 149 Lab.Cas. P 34,798

**(Cite as: 2003 WL 23332905 (S.D.Ga.))**

**\*3** The case at hand is strikingly similar to two cases recently decided in this circuit: *DeLeon,* 321 F.3d at 1290-91; and *Burnes;* 291 F.3d at 1284. In *DeLeon,* the plaintiff failed to list a discrimination suit against his employer as an asset in his bankruptcy petition. 321 F.3d at 1291. The court held that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court. *Id.*

In the case at hand, Kroll clearly knew about the undisclosed claims during his bankruptcy proceedings. Kroll's claims under the FLSA date from December 1999 until his discharge from Home Depot on May 29, 2002. During his employment with Home Depot, he filed for bankruptcy on February 15, 2002. His claims under the FLSA arose prior to his petition for bankruptcy. Yet in his bankruptcy schedule of assets, Kroll failed to list his FLSA claims as an asset. Only two days after his discharge from bankruptcy, Kroll sent a letter to Home Depot demanding unpaid compensation under the FLSA. The timing of this demand letter further indicates that Kroll indeed had knowledge of his undisclosed claims.

Further, Kroll reopened his bankruptcy case on July 18, 2002, alleging that some of his student loans were dischargeable. Although Kroll had filed suit against Home Depot on July 3, 2002, he did not amend his schedule of assets to include the FLSA claims. By attempting to discharge his debts through bankruptcy while simultaneously pursuing his undisclosed FLSA claims, Kroll clearly had a motive to conceal any potential recovery under the FLSA. Under the doctrine of judicial estoppel as set forth by *DeLeon* and *Burnes,* Kroll is barred from pursuing his FLSA claims.

Kroll argues that his amendment to his bankruptcy schedule listing his FLSA claim as an asset should preclude judicial estoppel. However, Kroll did not amend his bankruptcy documents to add the FLSA claim until after Home Depot relied on it in its motion for summary judgment. As the court noted in *Burnes,*

The success of our bankruptcy laws require a debtor's full and honest disclosure. Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.

291 F.3d at 1288. Because Kroll knew about his claim and possessed a motive to conceal it, he is barred from asserting it. Having found that his claims are barred by judicial estoppel, the Court does not address Home Depot's motion for partial summary judgment on Kroll's remaining FLSA claims.

II.    TRAVEL    TIME    TO    MANDATORY OFF-SITE TRAINING AND MEETINGS

Drury alleges that Home Depot did not compensate her properly for travel time on six occasions during her employment. Four of the alleged incidents involved travel to mandatory off-site training and meetings. Drury was paid for the time she attended the meetings and trainings and likewise was paid for the travel time in "straight pay." She asserts that the travel time should be paid as overtime to the extent that she worked over forty hours in a week.

**\*4** Time spent in transit is generally not compensable under the FLSA. Under the Portal-to-Portal Act exception to the FLSA, employers are not required to pay employees for "walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1) (2003). Normal home-to-work and work-to-home travel is not compensable under the Portal-to-Portal Act. However, the employer is required to pay the employee for travel time for "special" or "unusual" assignments to another city. 29 C.F.R. § 785.37 (2003).

What constitutes "special" or "unusual" assignments under 29 C.F.R. § 785.37 has not been addressed by the Eleventh Circuit. Home Depot points to the Ninth Circuit decision in *Imada v. City*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 23332905 (S.D.Ga.), 149 Lab.Cas. P 34,798

**(Cite as: 2003 WL 23332905 (S.D.Ga.))**

*of Hercules,* 138 F.3d 1294 (9th Cir.1998), as persuasive. In *Imada,* the court held that mandatory off-site training attended by city police officers was not an "unusual assignment" such that time spent commuting from their homes to the training would be compensable under the FLSA. *Id.* at 1297. The court reasoned that such training could not be deemed "special" or "unusual" because it was a normal, contemplated, and mandated incident of their employment. *Id.* The court also held that the infrequency of the off-site training (only a few times a year) did not automatically make the travel "special" or "unusual." *Id.*

The Court finds the reasoning in *Imada* persuasive and finds that the off-site training and meetings Drury attended were not "special" or "unusual" as contemplated in 29 C.F.R. § 785.37. Drury's travel for regional training and meetings was normal and contemplated in her employment. Accordingly, Home Depot is entitled to summary judgment as to Drury's claims under the FLSA for such travel to off-site training and meetings.

Drury cites to 29 C.F.R. § 785.27 in claiming that travel time to these trainings is compensable under the FLSA. However, this regulation deals with time at trainings, not actual travel time to such trainings. She has admitted to being paid for time at these trainings, therefore 29 C.F.R. § 785.27 is irrelevant in the case at hand.

III. TRAVEL TIME TO CONDUCT TRAINING IN SAVANNAH

Drury also alleges that on one occasion she traveled to the Savannah, Georgia, store to train an employee there. She was paid for the hours she worked at the Savannah store, as well as her travel time, however, she was paid "straight time" for her travel time. As stated above, time spent in transit is generally not compensable under the FLSA. However, Drury did not travel to Savannah in this instance to attend a mandatory off-site training or meeting, but rather to train an individual at the store. Also, notably, she traveled to the Savannah store, and then returned to the Brunswick store to complete her day. "Time spent by an employee in

travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked ." 29 C.F.R. § 785.38 (2003). *See also Kavanagh v. Grand Union Co., Inc.,* 192 F.3d 269, 270-73 (2d Cir.1999) (distinguishing between time spent traveling from home to the first job of the day and to home from last job of the day and time spent traveling between jobs during the work day); 29 C.F.R. § 790.7(c) (2003) (stating that the Portal-to-Portal Act does not "include travel from the place of performance of one principal activity to the place of performance of another, nor does it include travel during the employee's regular working hours"). On this particular occasion, Drury was traveling from job site to job site (the Brunswick store to the Savannah store) and therefore this travel time must be counted as hours worked. Assuming these travel hours to Savannah occurred during a week in which she worked more than forty hours, she would be entitled to overtime pay. Accordingly, Home Depot's motion for partial summary judgment as to Drury's travel time to conduct a training in Savannah is denied.

IV. TRAVEL TIME TO INTERVIEW

*5 Drury also alleges that she should be compensated for travel time to the Home Depot store in Hickory Bluff, North Carolina. On her day off, Drury traveled to the Hickory Bluff Home Depot to interview for an assistant manager position. She was not compensated for her travel time or her time interviewing.

Courts have construed "work" to mean "all activities 'controlled or required by the employer and pursued necessarily and primarily for the benefit of his employer and his business." ' *Dade County, Fla. v. Alvarez,* 124 F.3d 1380, 1384 (11th Cir.1997) (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1944)). Drury was not required to interview for the position at the Hickory Bluff store. Likewise any promotion she received would be primarily for her own benefit, not that of Home Depot. Therefore, Home Depot is entitled to summary judgment regarding Drury's travel time to her interview.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5

Not Reported in F.Supp.2d, 2003 WL 23332905 (S.D.Ga.), 149 Lab.Cas. P 34,798

**(Cite as: 2003 WL 23332905 (S.D.Ga.))**

V. LIQUIDATED DAMAGES

Drury claims that she is entitled to liquidated
damages under the FLSA because Home Depot has
acted willfully and in bad faith. Upon a finding of
liability under the FLSA, an employer is generally
"liable to the employees or employees affected in
the amount of their ... unpaid overtime
compensation ... and in an additional equal amount
as liquidated damages." 29 U.S.C. § 216(b) (2003).
However, "if the employer shows to the satisfaction
of the court that the act or omission giving rise to
such action was in good faith and that he had
reasonable grounds for believing that his act or
omission was not a violation of the [FLSA]," the
court may, "in its sound discretion, award no
liquidated damages." 29 U.S.C. § 260 (2003).

In a motion for summary judgment, the Court must
draw all reasonable inferences in favor of the
nonmoving party. *Carlin Communication, Inc. v.
Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352, 1356
(11th Cir.1986). Here in her affidavit, Drury alleges
that Home Depot intentionally tried to be ignorant
of the fact that she had worked off-the-clock but,
indeed, had actual knowledge that she had done so.
Accordingly, construing the facts in favor of the
non-movant, a genuine issue of material fact exists
regarding whether Home Depot has acted in good
faith. Therefore, Home Depot's motion for partial
summary judgment as to liquidated damages is
denied.

*CONCLUSION*

The Court has considered carefully the positions of
both parties to this action. For the foregoing
reasons, the Court GRANTS Home Depot's motion
for summary judgment against Kroll. Also, the
Court GRANTS IN PART and DENIES IN PART
Home Depot's motion for partial summary judgment
against Drury.

SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 23332905
(S.D.Ga.), 149 Lab.Cas. P 34,798

**Motions, Pleadings and Filings (Back to top)**

•  2:02CV00113  (Docket)

                                        (Jul. 03, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.