FILED by _____ CCG _____ D.C.

ELECTRONIC

**Oct 13 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

EUGENIO GARCIA,

      **Plaintiff,**

vs.                                         **CASE NO. 04-22640 CIV-JORDAN**

PORT ROYALE TRADING CO., INC.,
LOUISE LYNCH, and OASIS
OUTSOURCING, INC.,

      **Defendants.**

_____/

## DEFENDANT LOUISE LYNCH'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW[1]

Defendant, Louise Lynch ("Lynch"), by and through her undersigned counsel, and pursuant to Rule 56(b), Fed. R. Civ. P. and Rule 7.5, Local Rules for the District Court for the Southern District of Florida ("Local Rules"), hereby moves this Court to enter an Order dismissing Plaintiff's against her on the basis that she is not Plaintiff's employer for purposes of liability under the Fair Labor Standards Act. And, even if Lynch was Plaintiff's employer, Plaintiff cannot establish that she acted in violation of the law. The grounds for this motion are set forth below and discussed in greater detail in the attached Memorandum of Law.

      1.      The Plaintiff, Eugenio Garcia, filed his Complaint against the Defendants on or about October 20, 2004, alleging violations of the Fair Labor Standards Act ("FLSA"). Specifically, he alleges he was not properly compensated for overtime.

      2.      Plaintiff names Oasis Outsourcing, Inc., Port Royale Trading Co., Inc. ("Port Royale") and Louise Lynch ("Lynch") as Defendants in this action. In his Complaint, he asserts that

---

[1] Defendant filed a Statement of Facts contemporaneously with this motion. This Statement of Facts is incorporated by reference herein.

**29/SK**

Defendants Oasis and Port Royale were his employers and that along with Lynch, a corporate officer of Port Royale, are jointly and severably liable for his claims. *See* Complaint, ¶3.

**LYNCH IS NOT PLAINTIFF'S EMPLOYER OR JOINT EMPLOYER, AND IS NOT LIABLE FOR ALLEGED VIOLATIONS OF THE FLSA**

3.     Although the FLSA recognizes the existence of a joint employment relationship for purposes of liability for violations of the Act, Lynch is not an employer or joint employer of the Plaintiff.

4.     Although individuals may be held liable for violations of the FLSA, such liability is not automatic.  Instead, before an individual can be held liable, a court must determine whether or not the individual has substantial control over the aspect of employment alleged to have been violated.  The individual defendant must have supervisory authority over the complaining party <u>and</u> be responsible in whole or in part for the alleged violation.

5.     In the instant case, Lynch did not have any control over the Plaintiff's employment or decisions relating to the method or manner in which he was paid.  Accordingly, she is not his employer and is not liable for violations of the FLSA.

6.     Since Lynch is not an employer for purposes of FLSA liability, all claims against her must be dismissed.

**PLAINTIFF CANNOT SHOW THAT HE PERFORMED WORK FOR LYNCH FOR WHICH HE WAS NOT PROPERLY COMPENSATED.  THEREFORE, HIS CLAIMS AGAINST LYNCH FAIL.**

7.     Plaintiff was compensated pursuant to the fluctuating workweek method of compensation.  He received a weekly salary of $350.00 for all straight time hours and was paid an additional one-half his regular rate for all hours over forty (40) he worked in each workweek.

-2-

8.     Based on the foregoing, Plaintiff cannot show he was improperly compensated and his claim fails.

**EVEN IF PLAINTIFF WAS ABLE TO MEET HIS BURDEN OF PROOF ON HIS FLSA CLAIM, HE WOULD NOT BE ABLE TO PROVE A WILLFUL VIOLATION.  AND, LYNCH CAN SHOW AN HONEST INTENTION TO ASCERTAIN WHAT THE FLSA REQUIRES, SO LIQUIDATED DAMAGES ARE NOT APPROPRIATE.**

9.     Defendant Port Royale took affirmative steps to ensure that it was paying Plaintiff properly.  As a corporate officer of Port Royale, these efforts are imputed to Lynch, who had an honest belief that Port Royale was in compliance with the requirements of the FLSA.

WHEREFORE, Lynch respectfully requests that this Court enter judgment dismissing Plaintiff's claims and awarding Lynch her reasonable attorneys' fees and costs.

## I.

## MEMORANDUM OF LAW

Summary Judgment is appropriate when the moving party is able to establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *See* Rule 56(c), Fed.R.Civ.P.  The movant bears the burden of demonstrating the lack of any issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has made this showing, the burden shifts to the non-moving party to establish that there is a genuine issue for trial. *Howard v. BP Oil Company, Inc.*, 32 F.3d 520, 524 (11th Cir. 1994).  The substantive law identifies those facts which are material to a plaintiff's claims and, "only reasonable doubts as to the existence of genuine facts may be considered." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the instant case, summary judgment is appropriate because Lynch is not Plaintiff's employer for purposes of FLSA liability.  And, even if she were, the Plaintiff cannot establish that she acted in

violation of the FLSA.

The non-moving party cannot rely on his bare assertions, conclusory allegations or conjectures that the Defendants have acted improperly.  *See Johnston v. Henderson*, 144 F.Supp. 2d 1341, 1349 (M.D. Fla. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000).  Therefore, he must present "'concrete evidence in the form of specific facts'" to support each of his claims:  a "scintilla of evidence" or "'some metaphysical doubt as the material facts'" is not sufficient.  *Johnston*, 144 F.Supp. 2d at 1349 (internal citations omitted).  Plaintiff cannot meet this burden, therefore his claims fail.

## A.   LYNCH IS NOT PLAINTIFF'S EMPLOYER OR JOINT EMPLOYER, AND IS NOT LIABLE FOR ALLEGED FLSA VIOLATIONS.

The FLSA provides that for purposes of liability, the term employer includes:

> any person acting directly or indirectly in the interest of an employer in relation to an employee.

29 U.S.C. §203(d).

Under the FLSA a determination of employment status is a question of federal law.  *See Jeannert v. Arons East Coast Towing, Inc.*, 2002 WL 32114470 (S.D. Fla. January 29, 2002) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996); *Beck v. Boce*, 2005 WL 2335335 (S.D. Fla. Sept. 13, 2005).  Although this circuit has recognized that an individual can be an "employer" under the FLSA, such classification is not automatic.  *See Wascura*, 189 F.3d at 686; *Waters v. Baldwin County*, 936 F.Supp. 860, 863-4 (S.D. Ala. 1996).  <u>Before</u> an individual can be held liable for violations of the FLSA, a court must determine whether or not the individual "has substantial control over the aspect of employment alleged to have been violated."  *Johnson v. A.P. Products, LTD.*, 934 F.Supp. 625, 629 (S.D.N.Y. 1996)(citing *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d

-4-

962, 966 (6th Cir. 1991)); *see also Freemon v. Foley, et al.*, 911 F.Supp. 326, 330 (N.D. Ill. 1995)(the individual defendant must have supervisory authority over the complaining party and be responsible in whole or in part for the alleged violation).  In the instant case, Plaintiff asserts that he did not receive proper overtime compensation.

To determine whether Lynch is an employer for purposes of FLSA liability, the Court is to look to the "economic reality" of the relationship between Lynch and the Plaintiff.  *See Johnson*, 934 F.Supp. at 629; *Wascura*, 169 F.3d at 686.; *Goldberg v. Whitaker House Co-op, Inc.,* 366 U.S. 28 (1961); *Aimable v. Long & Scott Farms, Inc.,* 20 F.3d 434, 440 (11th Cir.), *cert. denied*, 115 S.Ct. 351 (1994)); *Harrell v. Diamond A. Entm't, Inc.*, 922 F.Supp. 1343, 1348 (M.D. Fla. 1997); *Hodgson v. Griffin & Brank of McAllen, Inc.*, 471 F.2d 235, 237-38 (5th Cir. 1973); and *Donovan v. New Floridian Hotel*, 676 F.2d 468, 471 (11th Cir. 1982)).

> To determine whether, as a matter of economic reality, an entity is an employer for purposes of [FLSA], courts focus in whether the alleged employer has some degree of control over the terms and conditions of employment[, including] . . . whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

*Johnson*, 934 F.Supp. at 629 (quoting *Rubin v. Tourneau, Inc.*, 797 F.Supp. 247, 252 (S.D.N.Y. 1992)).  Other factors taken into consideration include:  the nature and degree of alleged employer's control over workers; the preparation of payroll and payment of workers' wages; the ownership of the facilities where the work occurs; whether the worker's positions was an integral part of the alleged employer's business; and, the relative investment of equipment and facilities.  See *Antenor*, 88 F.3d at 932.

-5-

Although none of these factors is determinative, the alleged employer's right to control the means and manner of the worker's performance is the most important factor. *See Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 341 (11th Cir. 1982). When evaluating this factor, the focus is not on any title, state law or contractual agreement that defines the employment relationship. Instead, courts focus on the actual relationship between the parties. *See Johnson.* 934 F. Supp. at 629.

In *Johnson*, the court dismissed plaintiff's claim against an individual defendant, as the plaintiff merely alleged that the individual was the human resources manager. She did not allege that the individually named defendant had exercised any control her ability to take leave or her termination. *Id.* at 629. Similarly, in the instant case, the Plaintiff has no evidence that Lynch exercised any control over the employment actions at issue. He has also failed to provide any evidence that she exercised any control over his employment generally or specifically. Accordingly, just as the employer in *Johnson*, Lynch is not Plaintiff's employer. *Id.*

The Plaintiff's claims against Lynch rest solely on the fact that she was in charge of submitting the payroll records to Oasis and in charge of the office (not the warehouse). S*ee* Complaint, ¶3. Neither the allegations in Plaintiff's Complaint nor any of his deposition testimony support Plaintiff's supposition that Lynch should be liable for the alleged violation. Without showing that Lynch played any role in the decisions relating to the Plaintiff's employment, Plaintiff's claims against her must fail. *See Freemon*, 911 F.Supp. at 332 (acting supervisor was not an FLSA employer as there was no evidence to show that she played a role in the plaintiff's discharge). Additional factors (set forth below) also lead to the conclusion that Lynch is not Plaintiff's employer.

-6-

| __FACTOR__ | __ANALYSIS__ |
|---|---|
| Degree of supervision | Lynch did not supervise the Plaintiff [Garcia: 44(11-14)] [Lynch: 8(17-20)]. |
| Right to hire, fire or modify the worker's employment conditions | Lynch did not hire the Plaintiff [Garcia: 21(5-8)]. Lynch did not set Plaintiff's schedule [Lynch: 9(3-4)]. Nichols, not Lynch, had the authority over Plaintiff and all the other truck drivers [Lynch: 8(17-20)]. |
| Power to determine pay rates and methods of payment | Lynch only submits payroll information to Oasis, reports to Oasis the employee's hours. She did not determine the amount or manner in which Plaintiff was paid [Lynch: 14(1-3), 15(4-8)]. |
| Preparation of payroll and payment of wages | Lynch only reported the hours worked by Plaintiff. She did not prepare payroll or issue paychecks. [Lynch: 7(13-23)]. |

Lynch does have an ownership interest in the business and Plaintiff's position as a truck driver could arguably be integral to the business; however, these are only two factors out of many and a determination of an employer/employee relationship is based on the total work arrangement. *See Jeanneret*, *supra* (S.D. Fla. 2002) (citing *Hodgson*, 471 F.2d at 237-38). The actual relationship between Lynch and the Plaintiff and the manner in which they conducted themselves show that Lynch did not play any role in the decisions relating specifically to Plaintiff's employment, she did not play a role in the employment actions at issue and she did not exercise substantial control over the aspects of Plaintiff's employment that Plaintiff alleges were violated. Accordingly, Lynch does not qualify as Plaintiff's employer or joint employer under the FLSA. *See Wascura*, 189 F.3d at 686; *Waters*, 936 F. Supp. at 863-4; *Johnson*, 934 F. Supp. at 629; *Freeman*, 911 F. Supp. at 330; and *Jeanneret*, *supra*.

**B.      PLAINTIFF CANNOT SHOW THAT HE PERFORMED WORK FOR LYNCH FOR WHICH HE WAS NOT PROPERLY COMPENSATED, THEREFORE, HIS CLAIMS AGAINST LYNCH MUST BE DISMISSED.**

Lynch incorporates by reference herein Section I(A) of Defendant Port Royale Trading Company, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment.

**C.     EVEN IF PLAINTIFF WAS ABLE TO MEET HIS BURDEN OF PROOF ON HIS FLSA CLAIM, HE WOULD NOT BE ABLE TO PROVE A WILLFUL VIOLATION. AND, LYNCH CAN SHOW AN HONEST INTENTION TO ASCERTAIN WHAT THE FLSA REQUIRES, SO LIQUIDATED DAMAGES ARE NOT APPROPRIATE.**

Lynch incorporates by reference herein Section I(B) of Defendant Port Royale Trading Company, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment.

## II.

## CONCLUSION

Based on the foregoing, it is clear that Lynch was not Plaintiff's employer or joint employer for purposes of FLSA liability.  And, to the extent Lynch is found to be either an employer or joint employer, she is not liable to Plaintiff as he was properly paid, both straight time and overtime, pursuant to the fluctuating workweek method of compensation.  For all the foregoing reasons, Plaintiff's Complaint should be dismissed and Defendant awarded her attorneys' fees and costs.

Respectfully submitted this 13th day of October, 2005.

> s/ Jennifer Fowler-Hermes
> John M. Hament
> Florida Bar No. 937770
> Jennifer Fowler-Hermes
> Florida Bar No. 0127442
> KUNKEL MILLER & HAMENT
> Counsel for Defendant
> Orange Professional Centre
> 235 N. Orange Ave., Suite 200
> Sarasota, Florida 34236
> Telephone: 941-365-6006
> Facsimile: 941-365-6209

-8-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2005, I electronically filed the foregoing with the Clerk of the Court by using the Southern District of Florida Electronic Filing System.  I further certify that I mailed a true and correct copy of the foregoing to: J.H. Zidell, Esq., 300 71st Street, #605, Miami Beach, Florida 33141, Attorney for Plaintiff.

s/ Jennifer Fowler-Hermes

-9-

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

H

**Motions, Pleadings and Filings**

United States District Court,
S.D. Florida.
David JEANNERET, Plaintiff
v.
ARON'S EAST COAST TOWING, INC and
Sunshine Companies, II, Inc, Defendants.
**No. 01-8001-CIV.**

Jan. 29, 2002.
Gregg I. Shavitz (Gregg I. Shavitz, P.A.), Boca
Raton, Florida, for Plaintiff.

Ross Blanchard Ward, Jr., Clearwater, Florida, for
Defendant.

HURLEY, J.

**\*1** THIS CAUSE comes before the court upon the
defendant's motion for summary judgment and the
plaintiff's cross-motion for summary judgment.
Both the plaintiff, David Jeanneret, and the
defendant, Sunshine Companies, II, have moved for
summary judgment as to the plaintiff's claims for
unpaid overtime wages and unpaid minimum wages
pursuant to the Fair Labor Standards Act, 29 U.S.C.
§ 201 *et seq. Upon review of the motions, relevant
case law, and the record evidence viewed in the
light most favorable to the plaintiff, the defendant's
motion for summary judgment will be granted on
the ground that Sunshine was not the plaintiff's
"employer" under the Act, and the plaintiff's
cross-motion for summary judgment will be denied.*

BACKGROUND
*Plaintiff David Jeanneret is a resident of Palm
Beach County, Florida, and was employed as a tow
truck driver. Defendant Aron's East Coast Towing,
Inc. is a Florida corporation doing business in*

*Palm Beach County and is engaged in the auto
towing business. Defendant Sunshine Companies,
II, Inc., is a Florida corporation that owns and
operates an employee leasing business. Plaintiff
claims that he worked for the defendants from June
19, 2000 through the beginning of July, 2000. He
alleges that the defendant companies acted as
employers with respect to him and the other tow
truck employees, and that therefore the defendants
are "employers" within the meaning of Section 3(d)
of the FLSA.*

*On January 3, 2001, plaintiff filed this action in
this court. In his complaint, Mr. Jeanneret asserted
two claims-Count I, alleging that defendants failed
to compensate him and other employees at the
required overtime rate, in violation of Section 7 of
the FLSA, and Count II-alleging that defendants
failed to pay him and other employees the
applicable minimum wage rate for their work, in
violation of Section 6 of the FLSA. On July 25,
2001, plaintiff moved for a default judgment
against Aron's. On July 31, 2001, this court entered
a default judgment against Aron's, awarding
plaintiff $ 1,048.28 in compensatory and liquidated
damages, and $ 2,340.00 in attorney's fees and
costs.*

JURISDICTION
*This case involves claims brought under the
federal Fair Labor Standards Act, 29 U.S.C. § 201
et seq., and therefore this court has federal
question jurisdiction pursuant to 28 U.S.C. § 1331
and 29 U.S.C. § 216(b).*

DISCUSSION
*A. STANDARD OF REVIEW*

*Summary judgment is appropriate only where
there is no genuine issue of material fact and the
moving party is entitled to judgment as a matter of
law. See Fed.R.Civ.P. 56(c); Celotex Corp. v.
Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

S.Ct. 2548 (1986). The moving party bears the burden of meeting this exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L.Ed.2d 538, 106 S.Ct. 1348 (1986).

**\*2** The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could find in his favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

If the non-moving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the court must enter summary judgment for the moving party. Gonzalez v. Lee County Housing Authority, 161 F.3d 1290, 1294 (11th Cir.1998). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

*B. THE FAIR LABOR STANDARDS ACT AND RELEVANT CASE LAW*

Section 203(d) of the FLSA defines an "employer"

as "any person acting directly or indirectly in the interest of an employer in relation to an employee." It further defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." Id. at § 203(g). The Act imposes a minimum wage for covered employees, id. at § 206, and prohibits employers from employing any worker for a workweek longer than 40 hours unless the employee receives compensation for the excess hours at a rate not less than one and one half times the regular rate of compensation, id. at § 207(a)(1).

A determination of employment status under the FLSA is a question of federal law. See Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir.1996). Whether an employment relationship exits under the FLSA must be judged by the "economic realities" of the individual case and not by traditional common-law principles. See id. The focus of the economic realities test is whether the plaintiff was economically dependent upon the putative employer. The courts look at the surrounding circumstances of the whole activity. See Goldberg v. Whitaker House Co-op, Inc., 366 U.S. 28, 33, 6 L.Ed.2d 100, 81 S.Ct. 933 (1961); Aimable v. Long & Scott Farms, Inc., 20 F .3d 434, 439 (11th Cir.1994). The economic realities test "does not depend on technical or isolated factors," or on "the form of the relationship," but rather "depends ... on the economic reality" and "the circumstances of the whole activity," given "the total work arrangement." Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237-38 (5th Cir.1973).

**\*3** Whether or not the parties in question intended to create an employment relationship is irrelevant to the economic realities test. See Donovan v. New Floridian Hotel, 676 F.2d 468, 471 (11th Cir.1982) . Moreover, the mere labeling of an individual as an employee or an independent contractor is not dispositive. See Rutherford Food Corp. v. McComb, 331 U.S. 722, 729, 91 L.Ed. 1772, 67 S.Ct. 1473 (1947). The courts determine whether the employee depends or depended on the putative employer for his economic livelihood based on the parties' actual working relationship. See Antenor, 88 F.3d at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

*937-38. The Eleventh Circuit has also stated that the FLSA specifically covers joint employment relationships. See id. at 929; 29 C.F.R. § 791.2 (defining "joint employment" under the FLSA).*

*The parties agree that Aron's qualifies as Mr. Jeanneret's employer under the FLSA, and therefore some of the FLSA case law, which relates to whether an individual is an employee or an independent contractor, is largely inapplicable to this case. In determining whether a joint employment relationship exists, the courts consider several relevant factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. [FN1] See Antenor, 88 F.3d at 932 (citing Aimable, 20 F.3d at 440-45); Santelices v. Cable Wiring, 147 F.Supp.2d 1313, 1326 (S.D.Fla.2001) (98-7489-CIV-JORDAN).*

FN1. The Eleventh Circuit in Aimable drew the first five factors from regulations promulgated by the Secretary of Labor to determine whether a joint employment relationship exists. The Court drew six other factors from various legal decisions to which the regulations refer. See Aimable, 20 F.3d at 439. In Antenor, the Court found that three of those six non-regulatory factors-the opportunity for profit and loss, the permanency and exclusivity of employment, and the degree of skill required to perform the job-are relevant only where the question is whether the workers are independent contractors or employees, and not where the question is whether the workers are employed solely by a contractor or jointly by a contractor and another entity. We

therefore will not include these three other factors in our analysis.

*The Eleventh Circuit in Antenor noted that in applying the factors, it would be guided by several principles. First, the question of "joint employment" is not dependent on whether the worker is more economically dependent on one putative employer than on the other, because more than one entity can be an employer. Second, the existence of a joint employment relationship depends on the economic reality of all the circumstances, rather than any one factor. Third, the factors are used because they are indicators of economic dependence. Fourth, the joint employment relationship is not determined by a mathematical formula-the court must view each of the factors qualitatively to assess the evidence of economic dependence. Fifth, the inquiry must focus on the issue of economic dependency, not common-law concepts of employment. Sixth, the FLSA is a remedial statute, and courts must construe it broadly. See Antenor, 88 F.3d at 932-33 . We are also guided by these principles in this case.*

*C. MERITS OF PLAINTIFF'S CASE*

*Defendant Sunshine Companies moves for summary judgment on the two counts of the plaintiff's complaint on the ground that it is not an "employer" under the FLSA, and therefore it is not liable under § 206 or § 207. Sunshine asserts that while companies in its line of work are often referred to as "employee leasing companies," the label is somewhat misleading, as Sunshine claims it does not actually lease employees to its customers or retain control over them. Rather, Sunshine states, it merely performed administrative payroll services for a fee, and the plaintiff was solely dependent upon Aron's. Mr. Jeanneret cross-moves for summary judgment, asserting that Sunshine was in fact an "employer" pursuant to a subscriber service agreement between Sunshine and Aron's.*

***4** Plaintiff has contended, and Sunshine has conceded, that Sunshine is an employee leasing company subject to the provisions of Fla. Stat. § 468.520 et seq., and that Sunshine entered into a written subscriber service agreement with Aron's*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

*pursuant to the statute. That statute relates to Florida law regulating the business of employee leasing companies. Under the statute, "employee leasing" means an arrangement whereby a leasing company assigns its employees to a client and allocates the direction of and control over the leased employees between the leasing company and the client .*

*Section 468.525(4) provides that the employee leasing company reserves a right of direction and control over leased employees assigned to the client's location, assumes responsibility for the payment of wages to the leased employees without regard to payments by the client to the leasing company, assumes full responsibility for the payment of payroll taxes, retains authority to hire, terminate, discipline, or reassign the employees (although the client company may have the right to accept or cancel the assignment of any leased employee), and retains a right of direction and control over management of safety, risk, and hazard control at the work site. Moreover, the employee leasing company must give notice regarding the relationship between the employee leasing company and the client company to each leased employee.*

*The signed agreement between Sunshine and Aron's contains language that would tend to belie Sunshine's assertions that it was not an employer of the plaintiff. The contract states that it constitutes an agreement between Sunshine and the subscriber (in this case, Aron's) for Sunshine to provide certain services to Aron's in exchange for a fee. The agreement contemplates that Sunshine "agrees to lease" its employees to Aron's. Moreover, the contract states, "It is understood that the relationship created by this agreement is a joint employer relationship pursuant to Florida Statute § 468.520." Plaintiff argues that since Sunshine is an employee leasing company governed by this complex state regulatory scheme, which contemplates that the employee leasing company possesses some aspects of an employer, Sunshine is therefore an "employer" of Mr. Jeanneret under the FLSA.*

*However, whether an entity is in fact an employer under the FLSA is a question of federal law. The provisions of a state law regulating the employment relationship are only relevant to the extent that the parties actually followed those requirements. The Supreme Court and the Eleventh Circuit have indicated that in determining whether an employment relationship exists, the court must examine the actual working relationship* between the parties to find whether the worker was economically dependent on the alleged employer. Therefore, we will proceed to examine the actual working relationship between Sunshine and the plaintiff under the multi-factor test outlined in Antenor, and consider the language of the subscriber service agreement if and where it is appropriate.

1. Nature and Control of Workers
**\*5** The first indicator of joint employment status concerns the nature and degree of the alleged employer's control of the employee. The Eleventh Circuit's cases Antenor and Aimable both involved a group of seasonal agricultural workers who sued the landowners and labor contractor to enforce wage requirements under the FLSA and the Migrant and Seasonal Agricultural Worker Protection Act (MSAWPA). The Antenor Court stated that indicia of control include determining the number of workers hired for a job, when work should begin on a particular day, which workers should be assigned to specific tasks, and whether a worker should be disciplined or retained. See Antenor, 88 F.3d at 933.

Sunshine asserts that it never engaged in any direction or control of the leased employees, but rather that Aron's alone exercised control over the tow truck employees. According to Sunshine, Aron's, during all times relevant, solely and exclusively determined the number of workers hired for a job, set the workers' schedules, determined their job responsibilities, managed their day-to-day activities, and otherwise exercised exclusive control over the employees.

Plaintiff points out that the subscriber service agreement states in subsection 5(G) that Sunshine "retains authority to hire, terminate, discipline, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

reassign the leased employees." This language essentially incorporates the requirement of Fla. Stat. § 468.525(4)(d). However, plaintiff has proffered no evidence tending to dispute the assertion that Aron's, and not Sunshine, in practice exercised exclusive control over Mr. Jeanneret and the other tow truck employees' day-to-day work.

Sunshine maintains that while the contract contains this language, if Sunshine "hired" an employee, it simply meant that Sunshine would begin performing payroll services with respect to that worker. If Sunshine "terminated" an employee, it simply meant that Sunshine would stop performing such services-it does not mean that the employee would stop working. In fact, another portion of the contract indicates that Aron's would exercise exclusive control over the employees: "[Aron's] is the employer solely responsible for the day to day job duties of all employees leased to it by [Sunshine], such responsibility being assigned to [Aron's] by virtue of this mutually agreed to contract, and Subscriber hereby expressly absolves [Sunshine] of control or the right to exert any control over any and all day to day job duties of any and all leased employees leased by [Sunshine] to [Aron's]." Agreement P 5(E). Since there is no genuine dispute that Aron's exercised exclusive control over Mr. Jeanneret's employment, consideration of this factor supports a finding that Sunshine was not a joint employer.

2. Degree of supervision of the work

The second prong of the analysis is determining the putative employer's degree of oversight or supervision, direct or indirect, of the work. The Eleventh Circuit stated that "supervision is present whether orders are communicated directly to the laborer or indirectly through the contractor." Aimable, 20 F.3d at 441. This factor is similar to the previous factor. Sunshine argues that none of its agents ever monitored, oversaw, or supervised the work performance of the plaintiff or any of the other employees, but rather that Aron's directly supervised the work.

*6 Again, the plaintiff points to portions of the subscriber service agreement that purport to grant

Sunshine some powers of an employer. However, there is no evidence that Sunshine ever actually supervised Mr. Jeanneret's work. This is not similar to the situation in Antenor, where the Eleventh Circuit found that the growers (the alleged joint employer) supervised the pickers in substantial ways by telling them when picking could begin, distributing boxes, and directly intervened in the pickers' work on a daily basis. Moreover, there is not even a provision in the agreement to which the plaintiff could point whereby Sunshine was granted the power to supervise Mr. Jeanneret's work.

The agreement does contain, however, a provision whereby Sunshine "retains the right of direction and control over management of safety, risk, and hazard control to the worksite or sites affecting its leased employees." Agreement P 5(G). This provision mirrors the requirement of Fla. Stat. § 468.525(4)(e) . Sunshine asserts that Aron's maintained exclusive control of safety, risk, and hazard conditions at its work site, and performed safety inspections of its premises and equipment, and promulgated employment policies and safety policies. Sunshine does admit that it occasionally consulted with Aron's regarding safety conditions, for a fee. Nonetheless, upon consideration of the second factor, there is no evidence that Sunshine in practice supervised Mr. Jeanneret's work.

3. Right to hire, fire, or modify the workers' employment conditions

The third factor relates to whether the alleged employer possessed the right to hire, fire, or modify the worker's employment conditions. Sunshine asserts that at no time did it have any power to hire, fire, discipline, or reassign workers employed with Aron's. Rather, Sunshine claims, Aron's had the exclusive right to recruit, interview, hire, discipline, and transfer the employees, and set their working hours and schedules, their sick pay, vacation pay, bonuses, and severance pay.

Plaintiff points to the subscriber service agreement, which states in subsection 5(G) that Sunshine "retains authority to hire, terminate, discipline, and reassign the leased employees." However, plaintiff has no evidence drawn from the actual working

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                       Page 6

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681
**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

relationship between Sunshine and Aron's tending to indicate that Sunshine in fact had the right to hire or fire, or modify the workers' employment conditions, or ever exercised that right. This is unlike the situation in Antenor, where the court found evidence that the growers had the power to veto the labor contractor's hiring decisions and dictate the hours worked. There is no evidence under the third factor to support the contention that Sunshine was a joint employer.

4. Power to determine pay rates or methods of payment

The next factor is the degree to which the putative employer has the power to determine the pay rates or the methods of payments of the workers. Sunshine asserts that it did not and had no right to determine the pay rates or methods of payment to Aron's employees. Rather, it claims Aron's alone determined the pay rates for its employees. In Antenor, the court stated that pay rate refers not only to the amount of compensation to be paid, but includes benefits such as worker's compensation insurance and social security, as well as how these various payments are allocated. Antenor, 88 F.3d at 936. The court in Antenor found the growers exercised some control over the workers' pay because the growers deducted funds from their payments to the labor contractor to cover social security taxes and to purchase worker's compensation insurance, decided which insurance to buy, and named themselves as the policy holders. See id. The court stated that such evidence tended to show that the growers, and not the labor contractor alone, established wage rates and benefits for the workers. See id.

*7 There is no indication that the defendant in this case exercised similar control or influence over the plaintiff's pay rates. Plaintiff, however, would point to the fact that Sunshine was the entity making the payments to Mr. Jeanneret and the other employees. However, that fact is relevant as a consideration under the fifth factor, which we will examine next. However, the plaintiff has proffered no evidence that Sunshine was the entity that actually set the pay rates. Therefore, the evidence relevant to this factor does not tend to point to a finding of joint

employment.

5. Preparation of payroll and payment of wages
The fifth factor, related to the fourth factor discussed above, looks to whether the putative employer was involved in the preparation of payroll and the payment of wages to the workers. See id. According to the Antenor Court, this factor is probative of joint employment because of the likelihood that when a business undertakes to help an independent contractor (in this case, Aron's) prepare its payroll and pay its wages, it is likely that the contractor lacks economic substance on which the workers can solely depend. See id. The Eleventh Circuit found that the fact that the growers computed and segregated social security taxers and purchased worker's compensation to cover the workers indicates that the farmworkers were economically dependent on the growers. See id.

The parties both acknowledge that Sunshine was in fact the entity that made the direct payment of wages to the plaintiff and paid the applicable taxes and worker's compensation premiums, from its own accounts. Sunshine asserts that it performed the mainly ministerial and administrative tasks of cutting payroll checks to Aron's employees, paying taxes to the appropriate government agencies, and paying worker's compensation premiums to a worker's compensation carrier, but conditioned upon Aron's first providing to Sunshine the funds to cover the payroll checks, taxes, and premiums.

The defendant argues that the whole point of the agreement between itself and Aron's was for Aron's to hire Sunshine to perform its administrative tasks. According to an affidavit filed by Robert Gaines, the chief executive officer of Sunshine at the relevant time, "it was Sunshine's understanding at the time it originally contracted with Aron's that Aron's had the ability to do payroll functions and obtain worker's compensation insurance coverage on their own, but, they simply wished to save time and money by contracting with Sunshine for those functions." Affidavit of Robert Gaines P 7.

Plaintiff notes that the subscriber service agreement, in subsection 5(D), contains a provision

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

Page 7

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

stating "[Sunshine] assumes responsibility for the payment of wages to the leased employees, without regard to payments by the client to the leasing company." Plaintiff argues that this contract obligated Sunshine to make payments to the employees regardless of whether funds were sent by Aron's to Sunshine, therefore counseling a finding that Sunshine was the plaintiff's joint employer.

**\*8** Under this factor, the fact that the defendant prepared the payroll checks and paid taxes and other expenses out of its own accounts is certainly probative evidence of joint employment. Once again, however, plaintiff has failed to present any evidence that the actual working relationship among the relevant parties entailed Sunshine's payment of wages regardless of whether it received funds designated for wage payments. Sunshine has stated that it would not have made wage payments to the Aron's employees regardless of whether Aron's first paid Sunshine. But in practice, Sunshine asserts, the situation never arose where Aron's did not first pay the payroll funds to Sunshine.

Moreover, an examination of subsection 5(D) in its entirety indicates that Sunshine's claim that it merely acted as a payroll service for Aron's is largely consistent with what the subscriber agreement contemplated that Sunshine would do: pay wages through its own payroll, administer the withholding of taxes, pay the worker's compensation insurance premiums, and maintain payroll records. If Sunshine made payments regardless of whether it first received payment from Aron's, that would tend to indicate that Aron's lacked economic substance, and that the employees were economically dependent on Sunshine. But the plaintiff has neither alleged nor proffered any evidence tending to prove that Sunshine made payroll payments regardless of whether it first received corresponding funds. Therefore there is little evidence under this factor tending to prove joint employment.

### 6. Ownership of facilities where work occurred
The sixth factor indicative of an employment relationship, the ownership of the facilities where the relevant work occurred, is probative of joint

employment status for the obvious reason that without the land, the worker might not have work, and because a business that owns or controls the work site will likely be able to prevent labor law violations. See Antenor, 88 F.3d at 937. The defendant argues that since Aron's, and not Sunshine, owned all the facilities where the plaintiff worked, this factor favors a finding of no joint employment relationship. Significantly, plaintiff does not contest this assertion. The fact that Aron's owned the facilities where the plaintiff worked tends to prove that Aron's had its own independent economic status, and that plaintiff was not economically dependent on Sunshine.

### 7. Performance of a line job integral to the defendant's business
The seventh factor considered by the court in Antenor, whether the worker performed a line job integral to the putative employer's business, is probative of joint employment because a worker who performs a routine task that is a normal and integral phase of the defendant's business is likely to be dependent on the defendant's overall enterprise. Sunshine asserts that Mr. Jeanneret, as a tow truck driver, performed a job that was integral to Aron's business (tow truck services) but not to Sunshine's (employee leasing services/payroll services). Plaintiff has adduced no evidence tending to dispute this contention. It appears that the plaintiff's job was not an integral part of the defendant's employee leasing business, and therefore this factor counsels against a finding of joint employment.

### 8. Investment in equipment and facilities
**\*9** The final factor to be considered is the relative degree of investment in equipment and facilities by Aron's and Sunshine. This factor is probative because it is more likely that the worker is economically dependent on the entity that supplies the equipment or facilities. Moreover, the Antenor Court concluded that this factor was relevant to the joint employment inquiry as well as cases where the issue is whether a worker is an employee or an independent contractor. See id. at 937. The Eleventh Circuit stated that the labor contractor in Antenor provided no equipment or vehicles of his own, and the growers owned virtually all the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 8

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

**(Cite as: 2002 WL 32114470 (S.D.Fla.))**

equipment and facilities used by the farmworkers. See id. Sunshine asserts that Aron's owned all the equipment and facilities-such as the tow trucks-used by the plaintiff and his co-workers while working at Aron's. Plaintiff does not dispute this. Therefore, the evidence pertaining to this factor tends to prove that Sunshine was not a joint employer of the plaintiff.

...

Plaintiff has not provided any substantial proof that Sunshine acted as his employer while he worked at Aron's, or that he was in any sense economically dependent on Sunshine the way that the farmworkers in Antenor were dependent on the growers. Plaintiff simply argues that Sunshine and Aron's stipulated in their subscriber service agreement that the relationship created therein was one of "joint employers" and that Sunshine admits that it is governed by Florida's employee leasing company statute, which provides that the leasing company is the employer.

Plaintiff's contention that the Eleventh Circuit's decisions in Antenor and Aimable are inapplicable is wholly absurd. The circuit court acknowledged that more than one entity can be an employer. The economic realities test is simply a tool to determine whether a particular entity is an employer with respect to a worker. Moreover, there appears to be no dispute between the parties that Aron's was an employer-no one is contending that Mr. Jeanneret was an independent contractor. Plaintiff's makes the odd statement that "if the Court were to apply these cases [Antenor and Aim-able] to the present case, clearly Sunshine would be more akin to the labor contractors than to the farm owners since Sunshine hired and paid the employees. Accordingly, these cases further support Plaintiff's contention that Sunshine was Plaintiff's employer." This is an example of disjointed reasoning, not meritorious legal argument.

To reiterate-the determination of whether an entity is an employer is a matter of federal law, notwithstanding any labels conferred by state law. See Antenor, 88 F.3d. at 929. The Eleventh Circuit outlined the economic realities test that specifically

looks to the actual economic relationship among the putative employers and the worker-the way the parties conducted themselves in practice. Plaintiff pores over the fine print of a contract which the parties to the contract in large part ignored. This is similar to the situation in Santelices, where the plaintiff argued that an agreement between one employer and another entity provided that the entity would assist with payroll, thereby demonstrating that the entity was a joint employer. The district court, however, stated that assuming the entity actually retained a right to such control, "these technical contractual concepts alone do not satisfy the 'economic realities' test." Santelices, 147 F.Supp.2d at 1327 (98-7489-CIV-JORDAN).

*10 Plaintiff's assertions may indicate that Sunshine acted in violation of Florida law and its obligations under the contract, but they do not tend to prove that Sunshine was plaintiff's employer under the applicable federal case law. If in fact Sunshine was required to pay the Aron's employees regardless of whether it first obtained payments, then the plaintiff's action would lie only in breach of contract as a third-party beneficiary. The court's review of the evidence with respect to the relevant factors shows that Sunshine does not qualify as an employer under the FLSA.

CONCLUSION
For the forgoing reasons, it is hereby ORDERED and ADJUDGED that the defendant's motion for summary judgment [DE # 20] is GRANTED as to all of the plaintiff's claims. The plaintiff's cross-motion for summary judgment [DE # 28] is DENIED. A final judgment will be issued in a separate order.

DONE and SIGNED in Chambers at West Palm Beach, Florida, this 28th day of January, 2002.

FINAL JUDGMENT--FILED FEB 5 2002
THIS CAUSE comes before the court upon the court's order granting summary judgment in favor of defendant Sunshine Companies, II, Inc. The court, previously on July 31, 2001, entered a default judgment against defendant Aron's East Coast Towing, Inc. Accordingly, it is hereby

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32114470 (S.D.Fla.), 147 Lab.Cas. P 34,681

(Cite as: 2002 WL 32114470 (S.D.Fla.))

Page 9

ORDERED and ADJUDGED as follows:

(1) FINAL JUDGMENT be entered against the plaintiff David Jeanneret, who shall take nothing by this action, and in favor of the defendant Sunshine Companies, II, Inc., who shall go hence without day. The court reserves jurisdiction to award costs.

(2) The Clerk of the Court shall enter the case as CLOSED; and

(3) Any pending motions are DENIED as moot.

DONE and SIGNED in Chambers at West Palm Beach, Florida, this 4th day of February 2002.

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34718084 (Trial Motion, Memorandum and Affidavit) Defendant Sunshine Companies, II, Inc.'s Reply Memorandum of Law Regarding Its Motion for Summary Judgment (Nov. 13, 2001)

• 2001 WL 34718077 (Trial Motion, Memorandum and Affidavit) Plaintiff Jeanneret's Cross-Motion for Summary Judgment and Incorporated Memorandum of Law and Memorandum of Law in Opposition to Motion for Summary Judgment of Defendant Sunshine Companies, II, Inc. (Nov. 02, 2001)

• 2001 WL 34718252 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Sunshine Companies, II, Inc. in Support of Its Motion for Summary Judgment (Oct. 04, 2001)

• 2001 WL 34718244 (Trial Motion, Memorandum and Affidavit) Reply of Defendant Sunshine Companies, II, Inc. to Plaintiff's Motion for Determination that Request for Admissions are Admitted (Jul. 16, 2001)

• 2001 WL 34718231 (Trial Pleading) Answer and Defenses of Defendant Sunshine Companies, II. Inc. (Jan. 23, 2001)

• 9:01CV08001  (Docket)

(Jan. 03, 2001)

• 2001 WL 34718239 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Affirmative Defenses (Jan. 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. Florida,
Miami Division.
Matthew BECK, Jeff Holden, Aimee Polanco, and
Debbie Mozer individuals, on
their own behalf and on behalf of others similarly
situated, Plaintiffs,
v.
BOCE GROUP, L.C., d/b/a Nexxt Café, a Florida
Corporation, Bo Unur, an
individual, Nur Ozuyilmaz, an individual, Sedat
Onur, an individual, Jim Onur,
an individual, and Presidion Solutions, Inc., a
Florida Corporation,
Defendants.
**No. 04-20683-CIV.**

Sept. 15, 2005.

**Background:** Restaurant servers brought action under Fair Labor Standards Act (FLSA) against company which provided payroll services to restaurant. Company filed motion for summary judgment.

**Holding:** The District Court, Cooke, J., held that administrative services provider, which was governed by Florida's employee leasing company statute, was not a joint employer of restaurant servers for purposes of FLSA.
Motion granted.

**[1] Labor and Employment ☞0**

231Hk0 k.
A determination of employment status under Fair Labor Standards Act (FLSA) is a question of

federal law, and in making that determination, courts must evaluate the economic realities of the individual case rather than rely upon traditional common law principles; focus of the economic realities test is whether the plaintiff was dependent upon the putative employer, however, whether the parties intended to create an employment relationship is irrelevant to the analysis. Fair Labor Standards Act of 1938, § 3, 29 U.S.C.A. § 203.

**[2] Labor and Employment ☞0**

231Hk0 k.
Where the work done, in its essence, follows the usual path of an employee, putting on an independent contractor' label does not take the worker from the protection of Fair Labor Standards Act (FLSA); further, a worker can be economically dependent on, and thus jointly employed by, more than one entity at the same time. Fair Labor Standards Act of 1938, § 3, 29 U.S.C.A. § 203.

**[3] Labor and Employment ☞0**

231Hk0 k.
To determine whether a joint employment relationship exists for purposes of Fair Labor Standards Act (FLSA), courts consider: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. Fair Labor Standards Act of 1938, § 3, 29 U.S.C.A. § 203.

**[4] Labor and Employment ☞0**

231Hk0 k.
Although administrative services provider, which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335

Page 2

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

(Cite as: 2005 WL 2335335 (S.D.Fla.))

was governed by Florida's employee leasing company statute, prepared restaurant's payroll checks and paid taxes and other expenses out of its own accounts, it was not a joint employer of restaurant servers for purposes of Fair Labor Standards Act (FLSA); administrative services provider did not actually supervise servers' work, did not possess the power to hire, fire, or modify servers' employment conditions, did not supply the equipment or the facilities necessary to perform the work, and was first paid the payroll funds by restaurant. Fair Labor Standards Act of 1938, § 3, 29 U.S.C.A. § 203; West's F.S.A. § 468.525(4).

Frank Henry, Esq., Neil McGuinness, Esq., Miami.

Patrick G. DeBlasio, III, Esq., Deborah Frimmel, Esq., Jackson Lewis LLP, Miami.

ORDER GRANTING DEFENDANT PRESIDION SOLUTIONS, INC'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' AMENDED COMPLAINT

COOKE, District J.

*1 THIS MATTER is before the Court upon Defendant Presidion Solutions, Inc.'s Motion for Summary Judgment as to Plaintiffs' Amended Complaint (DE 189), filed May 20, 2005. For the reasons set forth below, Defendant Presidion Solutions, Inc.'s Motion for Summary Judgment as to Plaintiffs' Amended Complaint is hereby GRANTED.

I. *Introduction*

On March 23, 2004, the Plaintiffs Matthew Beck, Jeff Holden, Aimee Polanco, and Debbie Mozer on their own behalf and on behalf of others similarly situated (hereinafter "Plaintiffs") filed suit against the Defendants Presidion Boce Group, L.C., Bo Onur, Nur Ozuyilmaz, Sedat Onur, Jim Onur, and Presidion Solutions, Inc. In this suit the Plaintiffs allege that the Defendants failed to comply with the Fair Labor Standards Act's ("FLSA") requirements concerning minimum wage, overtime compensation, and discrimination and retaliation. Defendant Presidion Solutions, Inc. has since filed a Motion for

Summary Judgment as to Plaintiffs' Amended Complaint. This Motion is the subject of the present summary judgment order.

II. *Procedural History*

The Plaintiffs' filed an Amended Complaint on April 5, 2004 (DE 9). On May 20, 2005 Defendant Presidion Solutions, Inc. filed a motion for Summary Judgment as to Plaintiffs' Amended Complaint [FN1] (DE 189). The Plaintiffs subsequently filed a Response on June 14, 2005 (DE 207). Finally, Defendant Presidion Solutions, Inc. filed its Reply (DE 221) on July 8, 2005. Thus, Defendant Presidion Solutions, Inc.'s Motion for Summary Judgment as to Plaintiffs' Amended Complaint has been fully briefed and is ripe for adjudication. The Court having carefully considered the case file and being duly advised, finds summary judgment to be appropriate in this case.

III. *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." According to the U.S. Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' *Id.* at 324. Thus, the nonmoving party " 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." '

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                                    Page 3

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1984) stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

IV. *Factual Background*

**\*2** The Plaintiffs were employed as servers by the Boce Group, L.C. d/b/a the Nexxt Cafe, a popular restaurant in Miami Beach, Florida. Compl. at ¶¶ 6, 15. As part of their job duties the Plaintiffs were required to wait on customers, take food and beverage orders, deliver food to tables, place orders with the kitchen staff, bill customers for food and beverage orders, and collect money from customers. *Id.* On March 23, 2004 the Plaintiffs filed the instant action against the Defendants alleging violations of the FLSA. Specifically, the Plaintiffs allege: (1) the Defendants failed to pay Plaintiffs the statutory minimum wage in accordance with the FLSA; (2) the Defendants failed to pay the Plaintiffs the statutory overtime rate for hours worked in excess of 40 hours in a work week in accordance with the FLSA; and (3) the Defendants discriminated and retaliated against the Plaintiffs after learning of the present lawsuit. Defendant Presidion Solutions, Inc. now seeks summary judgment as to the Plaintiffs' Amended Complaint on the following grounds: 1) Defendant Presidion Solutions, Inc. is not the proper corporate defendant in this action [FN2]; and 2) Defendant Presidion Solutions, Inc. was not the Plaintiffs "employer" for purposes of the FLSA. However, for purposes of this Order, the Court will assume that Defendant Presidion Solutions, Inc. is the proper corporate defendant in this action and that Presidion Solutions, Inc. and SCI are the same entity.

V. *Analysis*

A. *FLSA and governing case law*

[1][2] The FLSA defines the term "employer" as to include "any person acting directly or indirectly in

the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). Under the FLSA, "to employ" means "to suffer or to permit to work." 29 U.S.C. § 203(g). "A determination of employment status under the FLSA is a question of federal law." *Jeanneret v. Aron's East Coast Towing, Inc.,* No. 01-8001, 2002 WL 32114470 at \*2 (S.D.Fla. June 29, 2002) (*citing Antenor v. D & S Farms,* 88 F.3d 925, 933 (11th Cir.1996)). In making this determination Courts must evaluate the economic realities of the individual case rather than rely upon traditional common law principles. *See Antenor,* 88 F.3d at 933. The focus of the economic realities test is whether the plaintiff was dependent upon the putative employer. *Id.* at 932. In utilizing the economic realities test courts must look at the surrounding circumstances of the whole activity. *See, Aimable v. Long & Scott Farms, Inc.,* 20 F.3d 434, 439 (11th Cir.1994). (*citing Rutherford Food Corp. V. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)). *See also, Hodgson v. Griffin and Brand of McAllen, Inc.,* 471 F.2d 235, 237 (5th Cir.1973). However, whether the parties intended to create an employment relationship is irrelevant to this analysis. *See, Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 470-71 (11th Cir.1982). In addition, "[w]here the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]." *Rutherford Food Corp.,* 331 U.S. at 729. Further, for purposes of the FLSA "a worker can be economically dependent on, and thus jointly employed by, more than one entity at the same time." *Antenor,* 88 F.3d at 929.

**\*3** [3] To determine whether a joint employment relationship exists courts consider the following factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                              Page 4

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. *See Antenor,* 88 F.3d at 932 (*citing Aimable,* 20 F.3d at 440- 445). In *Antenor,* the Eleventh Circuit highlighted several principles that would guide its application of the above factors. First, the question in "joint employment" cases is not whether the worker is more economically dependent on one putative employer than another because more than one entity can be a putative employer. Second, no one factor is determinative because the existence of a joint employment relationship depends on the economic reality of all the circumstances. Third, it is dependence that indicates employee status, therefore, the weight of each factor depends on the light it sheds on the workers' economic dependence. Fourth, the absence of evidence on any one or more of the factors does not preclude a finding that a putative employer was a joint employer. Fifth, the inquiry must focus on the issue of economic dependency not common law concepts of employment. Finally, the FLSA is a remedial statute therefore it must be construed broadly. *See Antenor,* 88 F.3d at 932-33.

B. *Merits of Plaintiffs' case* [FN3]

[4] Defendant Presidion Solutions, Inc. has moved for summary judgment as to Plaintiffs' Amended Complaint on the ground that "Plaintiffs cannot establish that Presidion was Plaintiffs' employer as defined by the FLSA" and therefore it is not liable under §§ 206 or 207 of the FLSA. Def. Presidion Solutions, Inc's Mot. for Summ. J. at ¶¶ 1 -6. Consequently, this Court must now apply the economic realities test to determine whether in fact Defendant Presidion Solutions, Inc. was a joint employer for purposes of the FLSA.

1. *Nature and control of workers*

The first indicator of joint employment status is the nature and degree of the alleged employer's control of the employee. In *Antenor,* the Eleventh Circuit

stated "[s]uch control arises when [the alleged employer] determines for example, the number of workers hired for a job, when work should begin on a particular day, which workers should be assigned to specific tasks and whether a worker should be disciplined or retained." *Id.* at 933. Defendant Presidion Solutions Inc. argues that there is no evidence in the record to indicate that Presidion Solutions, Inc. or SCI d/b/a Presidion Solutions II, Inc. maintained any control whatsoever, direct or indirect, over Plaintiffs' work. In their Opposition the Plaintiffs appear to ignore the first factor of the economic realities test as set forth in *Antenor.* As previously stated the Plaintiffs rely upon *Preston v. Settle Down Enterprises, Inc.,* 90 F.Supp.2d 1267, 1247 (N.D.Ga.2000) to set forth the elements of the economic realities test. However, *Preston* does not include the nature and control of workers as a factor in its economic realities test. Consequently, the Plaintiffs did not address this factor when they presented evidence concerning the economic realities test. Nevertheless, in a later argument the Plaintiffs appear to argue that Florida Statute § 468.525(4) and the SSA establish that: (1) the Defendant retained a right of direction and control over management of safety, risk, and hazard control at the worksites affecting its leased employees; and (2) Defendants retained authority to hire, terminate, discipline, and reassign the leased employees. However, the Defendants contend that there is no record evidence establishing that in reality it exercised any control over the Plaintiffs. Further, the Defendant argues that the Plaintiffs have not proffered any evidence to establish that in practice the Defendant exercised control over them. The economic realities test evaluates the actual working relationship. Thus, Plaintiffs must present evidence that shows that in practice the Defendant exercised control over them. Given that Plaintiffs have failed to do so the Court must conclude that consideration of the first factor of the economic realities test supports a finding that Presidion Solutions, Inc. was not a joint employer.

2. *Degree of supervision of the work*

*4 The second prong of the economic realities test analyzes the alleged employer's degree of oversight

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                                      Page 5

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

or supervision, direct or indirect, of the work. "[S]upervision is present whether orders are communicated directly to the laborer or indirectly through the contractor." *Jeanneret v. Aron's East Coast Towing, Inc.,* No. 01-8001 2002 WL 32114470 * 5 (*citing Aimable,* 20 F.3d at 441. Defendant Presidion Solutions, Inc. argues that the Plaintiffs cannot present evidence that any Presidion Solutions, Inc. or SCI employee exercised control over Plaintiffs or any other Nexxt Cafe employee. Further, Defendant argues that the record evidence in this matter establishes that managers employed by the Nexxt Cafe supervised all of the Plaintiffs' work and the Nexxt Cafe had sole managerial control over Plaintiffs during their employment. Importantly, the Plaintiffs have not proffered any evidence to support the contention that the Defendant ever actually supervised their work. Therefore, the Court must find that upon consideration of the second factor, there is no evidence that Presidion Solutions, Inc. actually supervised the Plaintiffs' work.

3. *Right to hire, fire, or modify the workers' employment conditions*

The third factor concerns whether the alleged employer possessed the right to hire, fire, or modify the worker's employment condition. Defendant Presidion Solutions, Inc. contends that it did not possess the power to hire, fire, or modify Plaintiffs' employment conditions. However, Plaintiffs contend that the Defendant did indeed have the ability to hire, fire, and modify Plaintiffs' conditions of employment. To support this contention the Plaintiffs point to the fact that the Defendant assisted the Nexxt Cafe in its hiring decisions by providing it with the necessary forms, personnel handbook policies and procedures (including drug testing authorizations and I-9 documents). In addition, the Plaintiffs contend that David Dibble's deposition testimony establishes that Presidion Solutions, Inc. assisted the Nexxt Cafe in hiring and discipline issues (including reviewing problems that the Nexxt Cafe might have with its employees). Further, the Plaintiffs argue that Presidion Solutions, Inc. wrote the employee handbook which established rules of conduct for the Nexxt Cafe

employees. Finally, the Plaintiffs argue that various provisions of the SSA established that Defendant Presidion Solutions, Inc. possessed the right to hire, fire, and modify the Plaintiffs' employment conditions.

a. *Defendant assisted in hiring by providing the Nexxt Cafe with the necessary forms and personnel handbook policies and procedures that affected the decision to hire*

The Plaintiffs' argument that the Defendant possessed the power to hire and fire because the Defendant provided the Nexxt Cafe with the necessary forms and personnel handbook policies and procedures is unavailing. Again, the economic realities test inquires into whether the alleged employer possessed the power in practice. However, this evidence does not establish that Presidion Solutions, Inc. possessed that power in practice.

b. *David Dibble's deposition testimony*

**\*5** The Plaintiffs' argument that David Dibble's deposition testimony supports their claim that Defendant Presidion Solutions, Inc. assisted the Nexxt Cafe in hiring and discipline issues is unavailing as well. If anything Mr. Dibble's testimony supports the contention that Presidion Solutions, Inc. only served as a consultant with regard to various employment issues. For instance, at one point during his testimony when asked if Presidion provides any guidance on how to terminate employees, Mr. Dibble stated:
"The thing we are most aggressive on is documentation, number one. I cannot determine for a client what is a good fit for their company. This is a choice they have to make. If the client says 'well, I just can't get them to do the right thing,' then what I am going to do is get feedback from the client what steps were taken to educate this employee under what you feel is appropriate behavior. It is like helping people answer their own questions by giving them a flow of good information."
Facts ¶ 19. Thus, it is this Court's conclusion that this testimony does not serve as evidence that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                                    Page 6

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

Defendant Presidion Solutions, Inc. had the power to hire, fire, or discipline Nexxt Cafe employees.

c. *Nexxt Cafe employee handbook*

The Plaintiffs argue that the employee handbook required by Presidion to be distributed to all employees at the Nexxt Cafe shows that the Defendant had the power to hire, fire, or modify the Plaintiffs' employment conditions. However, after reviewing the provisions in this handbook this Court finds that those provisions are too generic and formulaic to serve as evidence that the Defendant exercised the requisite degree of control over the Plaintiffs. [FN4] The policies contained in the handbook are not specifically geared towards the Plaintiffs nor does the handbook contain specific directives for the Plaintiffs. Further, many of the policies are explicitly conditioned such that they could be changed, added to, altered, or dismissed at the behest of the Nexxt Cafe. Thus, this Court cannot construe this handbook as evidence that the Defendant had the power to hire, fire, or modify the Plaintiffs' employment conditions.

d. *Terms of the SSA*

Plaintiffs contend that the Defendant had the power to hire, fire, and modify conditions of the Plaintiffs' employment because under the terms of the SSA the Defendant retained the authority to hire, terminate, discipline, and reassign leased employees; and leased employees were not to work in any other location. Plaintiffs' Exh. Tab 3. However, the Plaintiffs have not pointed to any evidence drawn from the actual working relationship between the Defendant and Plaintiffs which indicates that Presidion Solutions, Inc. in fact possessed the right to hire, fire, or modify Plaintiffs' employment conditions or ever exercised that right.

This situation is unlike *Antenor* where there was evidence that the alleged employers had the right to veto the labor contractor's hiring decisions and to dictate the hours of work. In the present action the Plaintiffs have only pointed to contractual provisions. However, the economic realities test requires this Court to consider and evaluate the

employment relationship in practice. Thus, reliance on contractual provisions without other evidence indicating that the employer possessed the right to hire, fire, or modify the conditions of employment in practice is unavailing. Consequently, this Court must conclude that the evidence relevant to the third factor of the economic realities test does not tend to point to a finding of joint employment.

4. *Power to determine pay rates or methods of payment*

**\*6** The next factor this Court must consider is the degree to which the alleged employer had the power to determine the pay rates or the methods of payments of the workers. "Method of payment refers to the basis upon which a worker is paid, for example, by the hour or by the piece." *Antenor*, 88 F.3d at 936. Presidion Solutions, Inc. asserts that Presidion Solutions, Inc. (including SCI) did not have the power to set pay rates or methods of payment of Nexxt Cafe employees. Further, Defendant Presidion Solutions, Inc. asserts that Nexxt Cafe alone determined the rates and methods of payment of Nexxt Cafe employees. To rebut these assertions the Plaintiffs argue that under the SSA Defendant Presidion Solutions, Inc. was responsible for the payment of wages to the leased employees, without regard to payments by the Subscriber to the leasing company. Further, Plaintiffs argues that Defendant Presidion Solutions, Inc. affected the method of payment in that they offered the possibility of direct deposits or hard checks. In addition, Plaintiffs argue that through the employee handbook Defendant Presidion Solutions, Inc. set the rules on the employees' work hours, timecards, payroll deductions, payroll adjustments, and the day when pay is distributed. Finally, Plaintiffs argue that since Mr. Dibble was aware of the FLSA's requirements for paying tipped employees and since Defendant Presidion Solutions, Inc.'s payroll systems were designed to spot those instances in which an employee was not recieving at the least the minimum wage in actual wages and tips, then it was Mr. Dibble's responsibility to ensure that client companies like the Nexxt Cafe used the right rate and method of payment of wages to employees.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                    Page 7

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

However, after duly considering these arguments it is this Court's conclusions that they are unavailing. The Plaintiff has proffered no evidence that Presidion Solutions, Inc. was the entity that actually set the pay rates; nor did the Plaintiffs proffer evidence that Presidion Solutions actually determined the method of payment. Further, Plaintiffs' reference to generic policies concerning work hours, time cards, direct deposit options, and payroll systems does not suffice to establish or indicate that Presidion Solutions, Inc. actually set the Plaintiffs' pay rates or methods of payment. Therefore, the evidence relevant to this factor does not tend to point to a finding of joint employment.

5. *Preparation of payroll and payment of wages*

The fifth factor this Court must evaluate considers whether the alleged employer was involved in the preparation of payroll and payment of wages to the workers. "This factor is probative of joint employment because of the likelihood that when a business undertakes to help an independent contractor prepare its payroll and pay its wages, it is likely that the contractor lacks economic substance on which the workers can solely depend." *Antenor*, 88 F.3d at 936. The Parties both acknowledge that Defendant Presidion Solutions, Inc. was the entity that prepared the payroll, made the direct payment of wages to the Plaintiffs, paid the applicable taxes, and worker's compensation insurance. However, the Defendant argues that its functions was strictly administrative and that the money for the payment of wages and benefits to the Nexxt Cafe came from the Nexxt Cafe before SCI ever processed the Nexxt Cafe's payroll. Due to the fact that the Plaintiffs' utilized the economic realities test as set forth in *Preston* (which does not include preparation of payroll and payment of wages as a factor in the economic realities test) the Plaintiffs did not directly address this factor in their brief. However, in a later portion of their Opposition Brief the Plaintiffs appear to argue that § V(D)(5) of the SSA under which SCI assumed responsibility for the payment of wages to the leased employees without regard to payments by the Subscriber to the leasing company, created joint employment between the Plaintiffs and the Defendant.

*7 While the fact that the Defendant prepared the payroll checks and paid taxes and other expenses out of its own accounts is probative evidence of joint employment, it is not dispositive. The Plaintiffs have failed to proffer any evidence that the actual working relationship amongst the Parties was such that the Defendant would have made wage payments to the Plaintiffs (or any other Nexxt Cafe employee) regardless of whether the Nexxt Cafe first paid the payroll funds to Defendant Presidion Solutions, Inc. Further, the Plaintiffs have not proffered any evidence that the Defendant did in fact make wage payments to Nexxt Cafe employees without the Nexxt Cafe first paying the payroll funds to the Defendant. In addition, the Defendant's claim that it functioned solely in an administrative role is consistent with the SSA when read in its entirety. Therefore, there is only minimal evidence under this factor tending to prove or show joint employment.

6. *Ownership of facilities where work occurred*

The Sixth factor indicative of joint employment is the putative employer's ownership of the facilities where the work occurred. "This element is probative of joint-employment status for the obvious reason that without the land, the worker might not have work, and because a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to contractors." *Antenor*, 88 F.3d at 936-37. The Defendant asserts that neither it nor SCI owned the facilities where the Nexxt Cafe employees worked and as a result the Nexxt Cafe employees were not dependent on the Defendant. The Plaintiffs do not contest this assertion. Therefore, this Court must conclude that there is no evidence under this factor tending to prove joint employment.

7. *Performance of a line job integral to the defendant's business*

The Seventh factor this Court must consider is whether the worker performed a line job integral to the putative employer's business. This factor is probative of joint employment because a worker

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                    Page 8

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

who performs a routine task that is integral to the putative employer's business is likely to be dependent on the defendant's overall enterprises. Presidion Solutions, Inc. argues that the Plaintiffs, as food servers, performed a task that was integral to the Nexxt Cafe's business but not to Presidion Solution Inc.'s business of providing administrative services. The Plaintiffs have not proffered any evidence to challenge this contention. Further, on the basis of the record it appears that Plaintiffs' jobs were not integral to the Defendant's employee leasing/administrative services business, therefore, this factor counsels against a finding of joint employment.

8. *Investment in equipment and facilities*

The final factor this Court must consider for purposes of the economic realities test is the relative degree of investment in equipment and facilities by Defendant Presidion Solutions, Inc. and the Nexxt Cafe. This factor is probative because it is more likely that a worker is economically dependent on the entity that supplies the equipment or the facilities necessary to perform the work in question. Presidion Solutions, Inc. asserts that the Nexxt Cafe made the entire investment in facilities. Further, the Defendant contends that neither Presidion Solutions, Inc. nor SCI own the building that houses the Nexxt Cafe nor did they invest in or provide any equipment for the operation of the Nexxt Cafe. Plaintiff did not dispute these contentions. Consequently, the evidence relating to this factor tends to prove that Presidion Solutions, Inc. was not a joint employer of the Plaintiffs.

VI. *Conclusion*

*8 The Plaintiffs have not provided any substantial proof that Presidion Solutions, Inc. acted as their employer while they worked at the Nexxt Cafe, or that they were economically dependent on Presidion Solutions, Inc. in a similar fashion to that of the farmworkers in *Antenor*. Instead, Plaintiffs simply argue that Presidion Solutions Inc. is a joint employer because: 1) Presidion Solutions, Inc. performed various human resource functions; 2) various terms of the SSA extended certain rights

and duties to Presidion Solutions, Inc.; and 3) Presidion Solutions, Inc was governed by Florida's employee leasing company statute. However, Plaintiffs' contentions do not support a finding that Presidion Solutions, Inc. was their joint employer under the economic realities test. The economic realities test requires this Court to consider the relationship in practice to determine if an entity in fact functioned as a joint employer. The intent of the Parties is not a dispositive factor in this analysis. Further, joint employment status under the FLSA is a matter of Federal law *not* State law. *See Antenor*, 88 F.3d at 929. Therefore, state statutes imposing joint employment status do not have dispositive bearing on this Court's analysis. Instead, it is the economic realities test that determines joint employment states for purposes of the FLSA.

Plaintiff's assertion that the Eleventh Circuit's decision in *Antenor* is inapposite is convoluted at best. In *Antenor*, the Eleventh Circuit acknowledged that more than one entity can be an employer. The economic realities test is simply the tool by which to determine whether a particular entity is an employer with respect to a worker. Further, the *Antenor* analysis is not limited to farmworker cases. For positive proof of this conclusion the Plaintiffs need look no further than the Eleventh Circuit opinion affirming *Jeanneret*. *See, Jeanneret v. Aron's East Coast*, 54 Fed .Appx. 685 (11th Cir.2002). In *Jeanneret*, the plaintiff alleged that an employee leasing company was his joint employer for purposes of the FLSA because: the leasing company retained certain rights and duties under the SSA, the SSA stated that the defendant was a joint employer, the leasing company performed various payroll functions, and the Florida employee leasing company statute labeled the defendant as a joint employer. However, the Southern District of Florida concluded that the plaintiff failed to proffer substantial evidence proving that in practice the defendant functioned as a joint employer. In reaching this conclusion the court utilized the eight factor economic realities test announced in *Antenor*. In addition, on its facts *Jeanneret* is very similar to the present action, and thus it must serve as persuasive authority for this Court. While the Plaintiffs may be correct in that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335                                                                     Page 9

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

Presidion Solutions, Inc. appears to have provided more than just payroll services--the providing of additional services does not necessarily make Presidion Solutions, Inc. the Plaintiffs' joint employer. Instead, joint employment still must be established under the economic realities test. However, the Plaintiffs have failed to do so. Therefore, it is

**\*9** ORDERED AND ADJUDGED that Defendant Presidion Solutions, Inc.'s Motion for Summary Judgment is hereby GRANTED.

FN1. The Plaintiffs' filed a Second Amended Complaint (DE 229) on July 12, 2005. In the Second Amended Complaint the Plaintiffs asserted a claim for breach of contract against Defendant Presidion Solutions, Inc. In addition, the Plaintiffs re-alleged the same claims for FLSA violations as were alleged in their Amended Complaint. Consequently, this Court will treat Defendant Presidion Solutions, Inc.'s Motion for Summary Judgment as applicable to Plaintiffs' Amended Complaint and Second Amended Complaint.

FN2. The Court does not reach the issue of whether Presidion Solutions, Inc. is the proper corporate defendant in this action because the Court concludes that Presidion Solutions, Inc. was not a joint employer for purposes of FLSA liability.

FN3. In their Opposition Brief the Plaintiffs rely upon *Preston v. Settle Down Enterprises, Inc.,* 90 F.Supp.2d 1267, 1274 (N.D.Ga.2000) to set forth the elements of the economic realities test. *Preston* sets forth a four factor test that is different from that pronounced in *Antenor* and *Aimable.* According to *Preston,* "[t]he economic realities test asks whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined

the rate and method of payment; and (4) maintained employment records." *Id.* at 439. However, given that *Antenor* and *Aimable* are binding authority in this jurisdiction this Court will utilize the economic realities test as pronounced in those cases.

FN4. Below is an example of the generic formulaic nature of the handbook provisions:
Normal Work Hours
A standard work day consists of eight hours, exclusive of the meal period. Breaks for rest, snacks, etc. may or may not be counted as hours worked based upon applicable state and federal legislation. Your worksite employer may change the hourly schedule at its discretion. Your worksite employer will schedule the times and the work to be accomplished according to its specific business needs. If you are going to be absent or late for your scheduled work schedule, you should report that event to your superviser at least one hour prior to the start of your work schedule. Plaintiffs' Exh. Tab 12 at 4.

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2869131 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to to Compel Mediation and Answers to Damage Interrogatories and Incorporated Memorandum of Law (Oct. 20, 2004)

• 2004 WL 2869115 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Objections %ADd.e. 93%BD to Report and Recommendation that an Injunction Issue (Oct. 08, 2004)

• 2004 WL 2869103 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion to Notify Similarly Situated Class Members (Oct. 04, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2335335

Page 10

--- F.Supp.2d ----, 2005 WL 2335335 (S.D.Fla.)

**(Cite as: 2005 WL 2335335 (S.D.Fla.))**

• 2004 WL 2869094 (Trial Motion, Memorandum and Affidavit) Defendants' Response and Memorandum in Opposition to Plaintiffs' Motion to Notify Similarly Situated Class Members (Oct. 01, 2004)

• 2004 WL 2869083 (Trial Motion, Memorandum and Affidavit) Defendant Presidion Solutions, Inc.'s Response and Supporting Memorandum of Law Opposing Plaintiff's Motion to Notify Similarly Situated Class Members of Their Right to Opt Into This Lawsuit (Sep. 23, 2004)

• 2004 WL 2869066 (Trial Motion, Memorandum and Affidavit) Defendant Boce Group's Response to Plaintiff Mozer's Motion to Dismiss the Amended Counterclaim (Sep. 20, 2004)

• 2004 WL 2869052 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Defendant Boce Group's Response to Plaintiff's Motion to Dismiss Amended Counterclaim (Sep. 17, 2004)

• 2004 WL 2869038 (Trial Pleading) Defendants' Answer, Affirmative Defenses and Counterclaim (Jun. 30, 2004)

• 2004 WL 2869024 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiffs' Opposition Memorandum to Defendants' Motion for a More Definite Statement (May. 17, 2004)

• 2004 WL 2869011 (Trial Motion, Memorandum and Affidavit) Defendants Reply to Plaintiffs' Opposition Memorandum to Defendants' Motion to Strike Affidavits (May. 04, 2004)

• 2004 WL 2868990 (Trial Pleading) Defendant Presidion Solutions Inc.'s Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint (Apr. 27, 2004)

• 2004 WL 2869004 (Trial Motion, Memorandum and Affidavit) Defendants'%n*%n Motion for a More Definite Statement and Memorandum of Law in Support Thereof (Apr. 27, 2004)

• 2004 WL 2868971 (Trial Motion, Memorandum

and Affidavit) Defendants' Motion to Strike Plaintiffs' Affidavits and Memorandum of Law in Support Thereof (Apr. 26, 2004)

• 2004 WL 2868980 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiffs' Emergency Motion for Preliminary Injunction and Protective Order and Request for Evidentiary Hearing (Apr. 26, 2004)

• 2004 WL 2868959 (Trial Motion, Memorandum and Affidavit) Defendant Presidion Solutions Inc.'s Response to Plaintiffs' Emergency Motion for Preliminary Injunction and Protective Order and Request for Evidentiary Hearing and Incorporated Memorandum of Law (Apr. 22, 2004)

• 2004 WL 2868946 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Emergency Motion for Preliminary Injunction and Protective Order and Request for Evidentiary Hearing and Incorporated Memorandum of Law (Apr. 14, 2004)

• 2004 WL 2868934 (Trial Pleading) First Amended Complaint (Apr. 05, 2004)

• 2004 WL 2868916 (Trial Pleading) Complaint and Demand for Jury Trial (Mar. 23, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.