IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 04-22640 CIV-JORDAN

2005 NOV 18  PM 4: 00

EUGENIO GARCIA,

       Plaintiff,

v.

PORT ROYALE TRADING CO., INC.,
LOUISE LYNCH, and OASIS
OUTSOURCING, INC.

       Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT, LOUISE LYNCH'S, MOTION FOR SUMMARY JUDGMENT

*COMES* NOW the Plaintiff, by and through undersigned counsel and states the following:

1. Defendant, LOUISE LYNCH, ("LYNCH") filed her Motion for Summary Judgment and Incorporated Memorandum of Law, and Defendants' Statement of Facts in Support of their Motions for Summary Judgment on or about October 13, 2005.

2. Plaintiff, EUGENIO GARCIA, ("EUGENIO") filed his response to Defendant, PORT ROYALE TRADING CO. INC.'S, ("PORT ROYALE") Motion for Summary Judgment and herein incorporates Plaintiff's Response as if fully set forth herein to demonstrate that the Plaintiff performed work for the Defendants for which he was not properly compensated.

3. Plaintiff, EUGENIO, filed his response to Defendant, OASIS OUTSOURCING, INC.'S, Motion for Summary Judgment and incorporates Plaintiff's Response to the facts and issue raised in this Response to demonstrate the relationship between LYNCH and the Plaintiff, and between LYNCH and Co-Defendant, OASIS.

4.  LYNCH has filed with the Court and relied solely upon her own deposition testimony and the deposition testimony of the Plaintiff, EUGENIO, ("EUGENIO") to support the proposition she was not the employer of Plaintiff.

5.  OASIS and LYNCH, on behalf of PORT ROYALE, entered into a Client Service Agreement. (Exhibit A)

6.  OASIS contends that the EUGENIO relied solely on PORT ROYALE and not on OASIS for his economic livelihood, and therefore is not an employer or joint employer under the Fair Labor Standards Act.

7.  EUGENIO therefore certainly relied upon PORT ROYALE, by virtue of Co-Defendant, OASIS' contention, for his economic livelihood, and perhaps on both.

8.  The Fair Labor Standards Act allows the defendants to be held jointly and severally liable for the non-payment of overtime wages.  LYNCH, as the part-owner and corporate officer of PORT ROYALE, should therefore be held jointly and severally liable and responsible for the overtime wages owed the Plaintiff.

## MEMORANDUM

The issue of joint employment liability is addressed in 29 § 825.106, which provides in part, that single employer status may attach to separate employers where an employer exercises some kind of substantial control over the work of the other employer's employee.  Section 825.106(a) sets forth the three situations where separate employers may constitute a joint employer of an employee.  This regulation provides as follows:

Where the employee performs work which simultaneously benefits two or more employers...a joint employment relationship generally will be considered to exist in situations such as:

1)   Where there is an arrangement between employers to share an employee's services or to interchange employees; or

2)   Where on employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,

3)   Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by or is under common control with the other employer.

2

The Eleventh Circuit has identified criteria from Supreme Court and circuit court case law interpreting the definition of "joint employer" under various federal labor statutes. *See Antenor, 88 F.3d at 932; Aimable, 20 F.3d at 440-446; Jeanneret, 2002 U.S. Dist Lexis 12200.* According to *Jeanerette:*

In determining whether a joint employment relationship exists, the courts consider several relevant factors:

1) the nature and degree of the putative employer's control of the workers;
2) the degree of supervision, direct or indirect, of the work;
3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions;
4) the power to determine the workers' pay rates or methods of payment;
5) the preparation of payroll and payment of workers' wages;
6) the ownership of the facilities where the work occurred;
7) whether the workers performed a line job integral to the end product; and
8) the relative investment in equipment and facilities.

*2002 U.S. Dist. LEXIS at 7-8 (citing Antenor, 88 F.3d at 932; Aimable, 20 F.3d at 440-45; Santelicies v. Cable Wiring, 147 F. Supp. 2d 1313, 1326 [1256] (S.D. Fla. 2001.)*

The Court in *Jeanneret* also indicated that this analysis should be guided by the following principles enumerated by the Eleventh Circuit in *Antenor:*

- First, the question of "joint employment" is not dependant on whether the worker is more economically dependant on one putative employer than on the other, because more than one entity can be an employer.

- Second, the existence of a joint employment relationship depends on the economic reality of all the circumstances, rather than any one factor.

- Third, the factors are used because they are indicators of economic dependence.

- Fourth, the joint employment relationship is not determinative by a mathematical formula- the court must view each of the factors qualitatively to assess the evidence of economic dependence.

- Fifth, the inquiry must focus on the issue of economic dependency, not common-law concepts of employment.

- Sixth, the Statutes are remedial, and the courts must construe it broadly.

*2002 U.S. Dist. LEXIS 12200 at 8 (citing Antenor, 88 F.3d at 932-33) citing* **Cruz-Lovo v. Ryder System, Inc. et. al.,** 298 F. Supp. 2d 1248 (11th Cir. 2003)

## PLAINTIFF'S ARGUMENTS

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).  **Dole v. Elliot Travel,** 942 F.2d 962 (6th C.A. 1991)  The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA.  *Falk v. Brennan*, 414 U.S. 190, 195 (1973)  "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F. 2d 875, 877 (5th Cir. 1989) (per curiam)  In deciding whether a party is an employer, "economic reality" controls rather than common law concepts of agency. *Goldberg v. Whitaker Cooperative*, 366 U.S. 28, 33 (1961)  Whether a party is an employer within the meaning of the FLSA is a legal determination.  *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986).

The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)  In *Agnew*, the Court determined that "corporate officers with a significant ownership interests who had operational control of significant aspects of the day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were employers under the FLSA.  *Id. at 1514*  No one factor is dispositive; rather, it is incumbant upon the court to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case." *Sabine*, 695 F.2d at 195.

Additionally, control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Herman*, 172 F.3d at 139 (quoting *Donovan v. Janitorial Serv., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982).

## Analysis

In **Dole v. Elliott Travel and Schubiner,** 942 F.2d 962 (6th C.A. 1991), the Court found that Schubiner was an employer within the meaning of the FLSA, and he was chargeable with personal liability for the failure to comply with the FLSA.  The facts of

**Dole** as they related the individual defendant, Schubiner, center around his involvement in the business operations of the corporation, and his control over the purse strings of the corporation. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) The facts of **Dole** read similar to the facts of the case at bar and read as follows:

> Schubiner is president of Elliot Travel, and he and his wife are co-owners of the corporation. In response to the Secretary's first set of interrogatories, defendant stated that the day-to-day control of the corporation was in the hands of Schubiner. However, in an amended response to the interrogatories, defendants stated that although major corporate decisions were made by Schubiner, the day-to-day control of specific operations was not entirely in his hands. In the amended response, defendants stated that Schubiner determined the amount of employee salaries, but the actual details of computing hours were handled by a payroll bookkeeper. Defendants also stated that a general manager handled many of the day-to-day problems relating to operation of the corporation, and managers of branch offices exercised control over hours worked by employees at the branch office.
>
> In an affidavit filed in support of defendants' response to the motion for summary judgment, Schubiner states that although he made major corporate decisions with respect to Elliot Travel, he did not have day-to-day corporate control of specific operations, and the general operations of the company was not entirely in his hands. Schubiner reiterates in the affidavit that he did not personally handle payroll, and although he generally made arrangements for the amount of salary to be paid an employee, the actual details of calculating the hours, overtime, and commission were handled by the payroll bookkeeper. Schubiner also states in the affidavit that because of excessive time involved in the defense of numerous lawsuits against Elliot Travel and a prior business operated by Schubiner, he was not available to insure that employees of Elliott Travel were being paid in accordance with the FLSA. However, Schubiner adds that he anticipates the "problem relative to excessive litigation will soon be alleviated allowing [him] to devote more time to [Elliot Travel] to rigorously insure that the operations of [the corporation] comply with the Fair Labor Standards Act.

In **Dole**, Schubiner was the chief corporate officer, had a significant ownership interest in the corporation, and had control over significant aspects of the corporation's day-to-day functions, including determining employee salaries. *See Agnew*, 712 F.2d at 1514. The fact that a payroll bookkeeper computed hours, overtime, and commissions and a general manager handled many of the day-to-day problems associated with operation of the corporation does not preclude finding that Schubiner was an employer. To be classified as an employer, it is not required that a party have exclusive control over the day-to-day functions. The party need only have "operational control of *significant aspects* of the corporation's day to day functions." *Id.* (emphasis added) In short, the evidence clearly demonstrates that Schubiner was the "top man" at Elliot Travel, and the

corporation functioned for profit. *Grim Hotel,* 747 F.2d at 972. The Court, base upon the above facts, found there to be no genuine issue of material facts regarding Schubiner's status as an employer, and summary judgment was found appropriate on that question of law.

The facts of the above case are similar to the facts of the case at bar.  In this case, like **Dole**, LYNCH is a corporate officer of the Defendant, PORT ROYALE, and has been one of the owners for eight to ten years. (SOF #22)  There exists a issue of fact regarding actually who run the day-to-day operations of the company.  LYNCH, a defendant in this case, testified in her deposition that Richard Nichols ("NICHOLS") maintains operational control over the business. [LYNCH 6(22-25)   In actuality, NICHOLS has only been an officer of PORT ROYALE since March of 2005, as illustrated the 2005 For Profit Corporation Annual Report. (Exhibit **A**)  NICHOLS, in his deposition testimony, affirms that both he and LYNCH runs the day to day operations of the business. [NICHOLS 20(25)-21(3)]  LYNCH also affirms that she, on behalf of PORT ROYALE, is responsible for making sure that the employees get paid. (SOF #24)  Like Schubiner, LYNCH delegates the responsibility for payment of Plaintiff's wages to OASIS and similarly delegates the responsibility for the day-to-day operations to NICHOLS. [LYNCH 6(22-25)]  The Defendants', like Schubiner, are content to rest on the assertion that the "bookkeeper", OASIS, is solely responsible for payment of wage to the PORT ROYALE employees, and that NICHOLS, the "manager" is solely responsible for the day-to-day operations of PORT ROYALE.  In this fashion, PORT ROYALE, OASIS, and LYNCH attempt to abridge their liability.

Direct evidence of LYNCHS' involvement in the modification of Plaintiff's employment condition, determination of pay rates and methods, and preparation of payroll and method of payment is clearly illustrated by the Client Service Agreement between OASIS and PORT ROYALE. (Exhibit B)  LYNCH signed the Client Service Agreement as the agent of PORT ROYALE and additionally signed Exhibit A to the Client Service Agreement, whereby Louise Lynch is designated "OWNER," and the terms of PORT ROYALE'S payments to OASIS for services are negotiated.  Included in Exhibit A is PORT ROYALE'S election to cover the Plaintiff and PORT ROYALE

6

employees under the OASIS' Employment Practice Liability Insurance Program, OASIS' Workers' Compensation policy, and OASIS' Medical Plans.

Direct evidence also exists regarding LYNCH'S ownership of the facilities where the Plaintiff worked, the fact that EUGENIO performed a line job integral to the end product, i.e. the profit derived from the delivery of seafood, and LYNCH'S relative investment in equipment and facilities. In this respect, it is undeniable that LYNCH and PORT ROYALE are inextricably linked. PORT ROYALE obviously owns the facilities where the Plaintiff worked, and it is not unreasonable that LYNCH, through her ownership capacity with PORT ROYALE, has some ownership interest in the corporation. Additionally, it is clear that EUGENIO performs a line job integral to the end product of the company. EUGENIO was a driver and PORT ROYALE was in the business of purchasing, distributing, and selling seafood to various customers throughout Florida, to whom EUGENIO delivered. These activities directly benefited PORT ROYALE and therefore benefited part owner LYNCH. It is likewise reasonable to assume that LYNCH, through her ownership interest in PORT ROYALE, has ownership investment in the equipment and facilities through which EUGENIO performed his job, to the benefit of LYNCH.

## CONCLUSION

LYNCH is an employer of the Plaintiff because the Plaintiff is economically dependant upon LYNCH for his livelihood and because LYNCH was acting directly and indirectly on behalf of herself and PORT ROYALE vis-à-vis the Plaintiff. LYNCH contracted with OASIS to do the tasks necessary for the payment of wages to EUGENIO, and handled the financial matter as a corporate officer and part owner of PORT ROYALE, on behalf of PORT ROYALE. Additionally, EUGENIO performed job duties, integral to the profit of PORT ROYALE and LYNCH, and certainly benefited from EUGENIO usage of the equipment and facilities exclusively owned by LYNCH and the owners of PORT ROYALE. For these reasons, genuine issues of material fact exist for jury determination regarding LYNCH'S liability for the payment of overtime wages to the Plaintiff under the Fair Labor Standards Act.

Respectfully submitted:

J.H. Zidell, Esq.
J.H. Zidell, P.A.
F.B.N. 0010121
Attorneys for the Plaintiff
300 71st Street, Suite #605
Miami Beach, Florida 33141

_J.H. Zidell, Esquire_

## CERTIFICATE OF SERVICE

John M. Hament, Esquire/Jennifer Fowler-Hermes, Esquire
Kunker, Miller, and Hament, P.A.
235 North Orange Avenue, Suite 200
Sarasota, FL 34236

I hereby certify that a true and correct copy of the foregoing was sent by mail and facsimile to the above named addressee(s) on this _18_ day of November, 2005.

J.H. Zidell, P.A.
F.B.N. 0010121
300 71st Street, Suite #605
Miami Beach, Florida 33141
Ph. (305)-865-6766

_J.H. Zidell, Esquire_



Oasis Co. # _____
Client ID # _____

# CLIENT SERVICE AGREEMENT

This AGREEMENT dated ___7 - 12___ , ____2000____ is made between _Porr Royale Trading Co., inc._ and its subsidiaries, (the individual or firm hereinafter referred to as "CLIENT") and OASIS OUTSOURCING, INC., a Florida corporation (hereinafter referred to as "OASIS").

I.   TERM OF THIS AGREEMENT.

The term of this Agreement shall be from the COMMENCEMENT DATE as shown on Exhibit A attached hereto until terminated by either party giving forty-five (45) days' written notice. After notice, the termination is to occur at the end of the next calendar month or forty-five days from the date of notification, whichever is later. Until the end of the next calendar month following such cancellation, the parties will continue to meet the obligations set forth in this Agreement. In addition, OASIS may at any time immediately terminate this Agreement in the event of a breach by CLIENT of any of the terms of this Agreement or upon the occurrence of any of the events set forth in Section IV(H). below.

II.  PROFESSIONAL EMPLOYMENT SERVICES.

By entering into this Agreement, OASIS has agreed to provide Professional Employment Services as stated under III. DUTIES AND OBLIGATIONS OF OASIS to CLIENT. It is not the intention of this Agreement to insulate CLIENT in any manner from those responsibilities which the law imposes upon it as a business or workplace except as herein expressly assumed by OASIS. Nor is it the purpose of this Agreement for OASIS to provide a pass-through payroll service.

III. DUTIES & OBLIGATIONS OF OASIS.

A.  Services.  OASIS agrees to provide the following services to CLIENT:

   1.  OASIS assumes responsibility for the payment of wages to the Assigned Employees without regard to payments by CLIENT to OASIS.

   2.  OASIS assumes full responsibility for the payment of payroll taxes and collection of taxes from payroll on Assigned Employees.

   3.  OASIS assumes responsibility for the proper administration and payment of workers' compensation premium(s) and the employee benefit programs, except in the event that applicable law requires the CLIENT to maintain said policies or programs or CLIENT elects to maintain said policies or programs.

   4.  OASIS assumes responsibility for completion and maintenance of all payroll and benefit records, with the exception of the records of actual hours worked which shall be maintained and verified by CLIENT.

   5.  OASIS may hire or appoint an on-site administrative coordinator to implement terms and conditions of this Agreement.

B.  Client personnel policies and procedures. OASIS agrees that it will assist CLIENT in developing and maintaining a set of personnel policies and procedures in a manner designed to improve human resources management in CLIENT's business. CLIENT acknowledges and agrees that OASIS is not engaged in the practice of law or in the provision of legal services, and that CLIENT alone is completely and independently responsible for its own legal rights and obligations for the acceptance and rejection of personnel policies and procedures discussed with OASIS.

C.  Direction and Control. OASIS reserves and retains a right of direction and control over Assigned Employees pursuant to this Agreement, including authority to hire, terminate, discipline and reassign the employees covered in this Agreement. CLIENT reserves the right to accept or cancel the assignment of any assigned employee. In addition, CLIENT reserves sufficient direction and control over the Assigned Employees as is necessary to conduct CLIENT's business and without which CLIENT would be unable to conduct business, discharge any fiduciary responsibility that it may have, or comply with any applicable licensure, regulatory, or statutory requirement of CLIENT. CLIENT acknowledges that it is responsible to maintain a safe working environment, provide proper training in compliance with State,

Exhibit 1

Federal, and OSHA standards, and establish and maintain such safety programs, safety policies and safety committees as may be required by law. OASIS shall secure workers compensation coverage in such amounts as is required by applicable law. In addition, OASIS shall provide such for the promulgation and administration for employment and safety policies, and responsibility for the management of workers compensation claims, claims filings, and related procedures as is required by applicable law. However, CLIENT acknowledges that OASIS in either providing or not providing such assistance assumes no liability, and in particular assumes no responsibility for unsafe equipment or workplace (including all types of vehicles) utilized by CLIENT.

D.  Indemnification.  Not withstanding the provisions of item III.(G) below, OASIS hereby unconditionally indemnifies, holds harmless, protects and defends CLIENT, and all subsidiaries, affiliates and parent companies, their shareholders, employees, attorneys, officers, directors, agents and representatives from and against any and all claims, demands, damages, injuries, deaths, actions, costs and expenses (including attorney's fees and expenses at all levels of the proceedings), losses and liabilities of whatever nature (including liability to third parties), and other consequences of any sort, arising out of the negligent or willful failure of any non-assigned employee employed by OASIS at its corporate office to comply with applicable workers compensation, withholding tax, or ERISA laws, rules and regulations, or where any action is taken by CLIENT in compliance with a written corporate OASIS policy, procedure, or direction which is illegal under any applicable local, state or federal law.

E.  Assigned Employees.  OASIS agrees to furnish to CLIENT Assigned Employees to perform job functions identified by workers' compensation code classifications. CLIENT warrants that the list of workers' compensation classifications is accurate and complete; that employees performing these job functions do so at the locations specified in this Agreement (Exhibit A) as client location. CLIENT understands and agrees that prior written approval from OASIS's workers' compensation carrier must be obtained prior to the addition of any workers' compensation classification or location to this Agreement.

F.  Services.  OASIS will provide only the above listed services and no other services shall be provided or implied, including without limitation any strategic, operational or business related decisions with regard to CLIENT's business.  Such decisions shall exclusively be the responsibility of CLIENT; and, OASIS shall bear no responsibility nor liability for any actions or inactions by CLIENT. When implementing such decisions, whether or not the actions are implemented by Assigned Employees, CLIENT shall be acting solely on its own volition and responsibility. If OASIS is assigning any supervisory Assigned Employees to CLIENT, such supervisory Assigned Employees' scope of employment is strictly limited to the duties assigned by the CLIENT.  Supervisory assigned employee actions which are in violation of law or which result in liability will be outside their scope of responsibility as OASIS supervisory Assigned Employees and in such an event supervisory Assigned Employees will be acting solely as the agents of CLIENT.

G.  Notice.  OASIS will provide notice of this agreement, explaining the relationship between OASIS and CLIENT, to all Assigned Employees subject to it in accordance with all applicable Federal and State laws.

IV.   RIGHTS & DUTIES OF CLIENT.

A.  Day to day supervision.  CLIENT will be responsible for the day-to-day supervision and control of Assigned Employees under this agreement. CLIENT will verify skills and references to determine employment eligibility of Assigned Employees. CLIENT agrees to provide all facilities, supplies, equipment, and all other necessary items that may be required by Assigned Employees to perform their assigned employee services.

B.  Payroll information.  CLIENT agrees that it will maintain and provide to OASIS at the end of each pay period records of actual time worked by each assigned employee, verify Assigned Employees' exempt or non-exempt status, and verify that all hours worked by Assigned Employees are accurate and are in accordance with the Fair Labor Standards Act and other laws administered by the U.S. Department of Labor's Wage and Hour Division and any other applicable state and federal law. CLIENT shall verify that such time records are approved, verified and signed by each assigned employee and appropriate supervisor each pay period. These records submitted to OASIS shall become the basis for OASIS to issue all payroll checks. OASIS shall not be responsible for incorrect, improper or fraudulent records of hours worked, or for the improper determination of exempt status. Should CLIENT fail to meet the processing and payment schedule, the delivery of payroll checks by OASIS may be delayed and an out of cycle processing charge may be billed to CLIENT at the option of OASIS. Similarly, any changes to the hours reported to OASIS after the reporting time may be subject to an out of cycle charge at the option of OASIS.

C.  Unpaid benefits. CLIENT will pay for any accrued but unpaid benefits due to Assigned Employees upon termination of employment, including but not limited to, unused vacation leave. CLIENT also agrees to pay all accrued but unpaid benefits due Assigned Employees if this Agreement is terminated for any reason.

D.  Workplace Safety and Workers' Compensation Compliance.

1.  Compliance. CLIENT agrees that it is primarily responsible for complying with all health, safety, and environmental rules, regulations, and statutes and that it will comply at its expense with all safety, health and work environment laws, regulations, ordinances, directives, notices, warnings, and rules imposed by controlling federal, state and local governments, including, but not limited to OSHA and it will immediately report to OASIS, before the end of the current work day or shift, all accidents and injuries involving Assigned Employees. CLIENT agrees to provide OASIS with a complete list of hazardous materials that Assigned Employees may come into contact with, the proper method of handling, and the dangers of each in conformity with the law and Material Safety Data Sheets for each such material. CLIENT also agrees to comply at its expense with any reasonable directives from OASIS, its workers' compensation carrier or any government agency having jurisdiction over the work place, health and safety. CLIENT shall provide all Assigned Employees protective equipment, as required by federal, state or local law, regulation, ordinance, directive or rule or as deemed necessary by OASIS or its workers' compensation carrier. OASIS, its workers' compensation carrier and its liability insurance carriers shall have the right to inspect CLIENT's premises to ensure that Assigned Employees are not exposed to abatable recognized hazards. In no event shall this right, the exercise of this right or the non-exercise of this right affect any of CLIENT's obligations to OASIS, its indemnification to OASIS, Indemnified Parties or the Assigned Employees specified in this Agreement, or to any other person or entity.

2.  Alternate workers compensation policies. In the event that applicable law requires CLIENT or if CLIENT elects to maintain its own policy of workers' compensation insurance, or a lawful alternative to same, CLIENT shall cause OASIS to be named as alternate employer, or an additional insured on said policy or alternative coverage. In addition, in such situations where CLIENT maintains its own workers compensation policy, CLIENT shall at no time directly pay any workers compensation premiums but shall instead, at least fourteen (14) days prior to the premium due date, remit to OASIS by overnight mail, next day delivery service, a cashiers check sufficient to cover the premium due from CLIENT or OASIS. CLIENT may also provide OASIS, at its option, to direct debit the account of CLIENT for the premiums due to the carrier. OASIS shall have no responsibility in such situation where CLIENT retains its own workers compensation policy other than to remit to the carrier such payments as CLIENT forwards to OASIS.

3.  Transitional Duty Assignments/Drug Free Workplace. CLIENT agrees to comply with OASIS's workers compensation transitional duty requirements. CLIENT also agrees to comply with Drug Free Workplace policies, if any, adopted by OASIS.

E.  Insurance.

1.  Automobile, Liability, Property, Malpractice and Errors & Omission Protection. If any assigned employee is required to drive a vehicle of any kind for CLIENT, CLIENT will furnish and keep in full force and effect during the term of this Agreement liability insurance to include coverage for public liability, both bodily injury and property damage, with a minimum combined single limit of One Million Dollars ($1,000,000) and uninsured motorist coverage with a minimum combined single limit of Sixty Thousand Dollars ($60,000), or the minimum limit required by applicable state law, whichever is higher. If an assigned employee performs any duties in a professional capacity, CLIENT agrees to exercise such direction and control over said employee sufficient to comply with all applicable laws, and CLIENT shall furnish malpractice insurance which shall cover any acts, errors or omissions, including, but not limited to, negligence. The employee shall be deemed the employee of CLIENT for the purposes of this insurance. CLIENT agrees to cause its insurance carrier(s) to name OASIS as additional insured on CLIENT's policy and shall provide evidence of such coverage, and shall issue a Certificate(s) of Insurance evidencing same to OASIS allowing not less than thirty (30) days' notice of cancellation or material change. CLIENT agrees to file against such policy exclusively with respect to any claim for malpractice or errors and omissions or any other claim covered thereunder for any assigned employee engaged in the performance of licensed and/or professional duties. CLIENT agrees to indemnify, hold harmless, protect and defend OASIS and Indemnified Parties, or to cause its insurance carrier to indemnify, hold harmless, protect and defend OASIS from and against any and all liabilities of any kind, including costs and attorney's fees arising out of any such claim, as more fully set forth in Section IV(G).

2.  General Liability Insurance Protection. CLIENT agrees to keep in full force and effect at all times during the term of this Agreement, a comprehensive general liability insurance policy in the minimum limit of One Million Dollars ($1,000,000) insuring CLIENT against bodily injury and property damage liability caused by CLIENT's premises, operations, completed operations and/or

products. Said policy shall also include blanket contractual liability and personal injury liability. CLIENT shall provide OASIS with a certificate of insurance naming OASIS as additional insured, and to provide OASIS with thirty (30) days' notice in the event of cancellation of coverage. CLIENT agrees that with respect to any claim or event alleging or resulting in bodily injury or property damage that involves an assigned employee, CLIENT agrees to indemnify OASIS and file for recovery under CLIENT's appropriate liability insurance policy.

3. CLIENT is required for its own protection to secure all necessary forms of liability insurance that CLIENT would feel be reasonably essential to have if OASIS Assigned Employees were the employees of CLIENT.

F. Indemnification. Without regard to the fault or negligence of any party, CLIENT hereby unconditionally indemnifies, holds harmless, protects and defends OASIS its subsidiaries, affiliates, related, and parent companies, their respective shareholders, non-Assigned Employees, attorneys, officers, directors, agents and representatives (all indemnified parties referred to as "Indemnified Parties") from and against any and all claims, demands, damages (including liquidated, punitive, and compensatory), injuries, deaths, actions and causes of actions, costs and expenses (including attorney's fees and expenses at all levels of proceedings), losses and liabilities of whatever nature (including liability to third parties), and all other consequences of any sort, without limit and without regard to the cause or causes thereof or the negligence of OASIS or any Indemnified Party, that may be asserted or brought against OASIS or any Indemnified Party which is in any way related to this Agreement, to equipment or vehicles utilized by Assigned Employees, the products and/or services provided by CLIENT, any claims of negligence, the actions of any assigned employee employed by CLIENT, or of any other individual, including without limitation any violation of any local, state and/or federal law, regulation, ordinance, directive or rule whatsoever, and all employment related matters other than those excluded by item III. (D) above.

G. Special Benefits Administration Agreement.

1. Health Benefits. If this agreement is terminated for any reason, CLIENT shall take all necessary action to replace health care coverage for Assigned Employees covered by this Agreement so as to avoid the implication of a qualifying event as defined by Internal Revenue Code ("IRC") §4980B. If CLIENT fails to provide such health care coverage, OASIS shall be obligated to extend continuation of its health care coverage in accordance with IRC §4980B, and CLIENT shall then remit to OASIS the cost per assigned employee to provide such coverage, and a one time charge of $ 500 per affected assigned employee. CLIENT agrees that this sum is fair compensation to OASIS for its expense in extending the coverage to Assigned Employees which were covered under this Agreement.

2. Cobra Notifications. CLIENT agrees to comply with the provisions of IRC §4980B and to notify OASIS of any event that would constitute a qualifying event under said statute as soon as it becomes aware of said event. If CLIENT fails to notify OASIS of a qualifying event under IRC and §4980B CLIENT shall be liable for any and all costs or penalties incurred by OASIS as the result.

3. Retirement plans. To assure compliance with the Internal Revenue Code, the Employee Retirement Income Security Act and other related federal regulations, CLIENT certifies that it has properly disclosed the following to OASIS on the required Retirement Plan Questionnaire: (1)any retirement plans currently or previously maintained by the CLIENT or any related entities (within the meaning of the Internal Revenue Code sections 414(h), 414 (c)); (2) listed all of the owners, officers and shareholders (to identify those highly compensated and key employees for purposes of discrimination and top heavy testing) ; (3) listed/entered any family relationships for owners, officers and shareholders with Assigned Employees. In the event that CLIENT has failed to properly identify and/or properly complete the Retirement Plan Questionnaire, CLIENT agrees to unconditionally hold harmless, indemnify, protect and defend OASIS and Indemnified Parties or any and all liabilities arising therefrom.

Prior to CLIENT merging its retirement plan into the qualified OASIS retirement plan or prior to CLIENT transferring assets from its qualified retirement plan into OASIS's retirement plan, CLIENT understands and agrees that OASIS shall have the right to inspect all retirement plan documents, records, IRS determinations, etc. for compliance with the law.

CLIENT also understands and agrees that if this Agreement is terminated and the CLIENT does not adopt a successor retirement plan and arrange for a transfer of assets from OASIS retirement plan within three (3) months of the termination date, all Assigned Employees covered under OASIS retirement plan will become fully vested in their account balances. Furthermore, CLIENT agrees to reimburse OASIS an administrative fee in the amount of $500 per annum or any part thereof plus $25 per assigned employee per annum or any part thereof for administering this provision.

If CLIENT maintained a retirement plan during the plan year (January 1 though December 31) prior to merging its retirement plan with OASIS's retirement plan, CLIENT agrees to provide OASIS with all required information (including but not limited to Box 1 wages and assigned employee deferrals, employer matches, and contributions, etc.) prior to merging its retirement plan with OASIS's retirement plan so OASIS may conduct discrimination testing on a combined basis for the first plan year.

CLIENT agrees that in the event OASIS's retirement plan as adopted by CLIENT becomes top heavy as defined by the prevailing Internal Revenue Code and/or regulations, CLIENT will be solely responsible for making a contribution to non-key employees to satisfy the top heavy test, or CLIENT participants may be subject to returned deferrals.

In addition, CLIENT further warrants that no covered assigned employee is receiving compensation from CLIENT that is not paid by OASIS. CLIENT understands that any payment made to any assigned employee outside this Agreement may result in OASIS retirement plan being disqualified. Should OASIS retirement plan be disqualified as a result of CLIENT failing to report any compensation to covered Assigned Employees, CLIENT will be solely liable for any damages of any nature arising out of the failure to report such compensation to OASIS.

H. Automatic Termination Conditions. In the event that any one or more of the following conditions occurs, this Agreement will be deemed to have terminated at least twenty four (24) hours immediately before the first of said event(s): (a) any condition of CLIENT which could fit the definition of financial distress under the Worker Adjustment and Retraining Notification Act; (b) the filing by CLIENT of any petition for reorganization or bankruptcy; (c) the closing of any facility or operation where 25% or more of CLIENT'S workforce are Assigned Employees; (d) for non-payment of invoice. OASIS may also terminate this Agreement if, at any time, OASIS in its sole discretion determines that a material adverse change has occurred in the financial condition of CLIENT, or that CLIENT is unable to pay its debts as they become due in the ordinary course of business. This Agreement may also be terminated at any time by OASIS in the event of any Federal, State, or Local legislation, regulatory action or judicial decision which, in the sole discretion of OASIS, adversely affects its interest under this Agreement. Any such termination shall not relieve CLIENT of any obligations set forth herein, including but not limited to its payment obligations to OASIS.

CLIENT agrees it will comply with the Worker Adjustment and Retraining Notification Act and that it will give OASIS at least sixty-two (62) day notice prior to effecting any plant closing or mass lay-off where 25% or more of CLIENT'S workforce are Assigned Employees as defined by law.

I. Client Compliance. CLIENT warrants that, all wages and benefits for all past and present assigned employee(s) are current and that there is no liability for same to which OASIS and Indemnified Parties could succeed. CLIENT expressly agrees to indemnify, hold harmless and defend OASIS and Indemnified Parties from any and all liabilities, known or unknown, including without limitation costs and attorneys' fees, which could arise out of any allegation, assertion or claim that OASIS or Indemnified Parties are a successor employer of CLIENT.

J. Compliance with Federal, State, and Local Laws.

1. CLIENT acknowledges, understands and agrees that, notwithstanding any other provisions of this Agreement, the fees charged by OASIS and remitted by CLIENT are not intended to compensate OASIS for the risk associated with the liabilities which may arise out of the improper management of Assigned Employees or for the violation of various local, state, and federal employment statutes. CLIENT is responsible for complying with all federal, state and local laws, regulations and ordinances including, but not limited to, those relating to employment labor and wage and hour issues, safety and health, environmental issues, hazardous waste, access to CLIENT'S premises, and accommodation of protected individuals under the law, just as if, and to the same extent as if this Agreement did not exist.

2. Premises & Accommodation Liability (ADA). The parties agree that any exposure, risk or liability for said access or accommodation or failure thereof, whether imposed by the Americans with Disabilities Act or some other federal, state or local statute, law or regulation, shall be the sole responsibility of CLIENT.

3. Family and Medical Leave Act (FMLA) Compliance. It shall be CLIENT's sole responsibility to determine the size of its work force, the number of hours of work required to meet the market demand for CLIENT'S service and/or product, assigned employee scheduling, and the suitability of individuals for any specific job duties. Accordingly, for purposes of determining whether and to what extent any individual worker can be allowed to take time off away from work for any purpose, and to what extent if any such time off would require the assignment of a replacement worker, CLIENT shall have the primary responsibility for making such determinations, and OASIS shall have the secondary responsibility for implementing such aspects of said determinations as may be

appropriate under this Agreement. CLIENT shall be solely responsible for all costs to comply with the FMLA, Including without limitation the cost of securing a replacement job position for any worker covered by this agreement, and the cost of any benefit plan coverage associated with FMLA compliance. CLIENT shall pay all costs associated with any person placed In a job vacancy created in compliance with FMLA. CLIENT further agrees that it will at all times comply with the Family and Medical Leave Act ("FMLA") and CLIENT's responsibilities to reinstate employees and in all other manner to comply with the FMLA shall survive termination of this Agreement.

K.  OASIS will notify Assigned Employees of this Agreement at inception and termination of this Agreement. CLIENT shall also immediately upon termination of this Agreement notify Assigned Employees of the termination of this Agreement and inform them that they are no longer covered by OASIS's workers compensation policy.

L.  All indemnification's survive the termination of this Agreement.

M.  CLIENT has the duty to cooperate and that duty to cooperate is material to OASIS's duty to perform.

N.  Legal Counsel. OASIS does not provide legal advice. CLIENT acknowledges its responsibility to seek, as it sees fit, whatever legal counsel or advice it deems appropriate or necessary and that it will in no event consider any service, information or suggestion provided by OASIS as anything constituting legal advice or opinion.

## V.     SERVICE FEES.

A.  Set Up Fees. On or before the commencement date, CLIENT will pay to OASIS an initial enrollment fee for each position shown on Exhibit A attached hereto. A set up fee will also be due when new Assigned Employees are added to CLIENT's payroll (including replacement Assigned Employees for those listed on Exhibit A and any Assigned Employees hired for newly established positions).

B.  The Administrative Fee. The Administrative Fee charged to CLIENT and payable at the end of each pay period will be equal to the rate specified on Exhibit A. Any increase or decrease in the Administrative Fee for statutory increases in employment taxes, shall be effective on the date of such increase or decrease. Workers' compensation and employee health benefit costs will also be adjusted as of the effective dates. A thirty (30) day notification shall be required of OASIS before changes are to be made in OASIS's Administrative Fee (see Exhibit A) charged to CLIENT.

CLIENT expressly agrees and understands that no assigned employee shall become employed by OASIS, covered by OASIS's workers' compensation insurance or any other benefit or term and condition of employment or issued a payroll check, unless the individual has prior to commencing work, completed OASIS's new hire packet employment form (which includes but is not limited to the W-4 & I-9) all of which must be delivered to OASIS before the assigned employee commences employment. OASIS shall not be considered to be an employer of any individual for any CLIENT until that individual completes this form and CLIENT is notified that the individual has been hired by OASIS as an assigned employee. In addition, OASIS shall not be considered to be an employer of any individual (except as may be required by law) for whom payroll information is not supplied during any payroll period. CLIENT assumes full responsibility for workers compensation claims of individuals paid directly by CLIENT, as well as for other parties hired by or working for CLIENT, whether as an employee, independent contractor, or in any other status.

C.  Other Service Fee Components. CLIENT will pay, at the end of each regular or special pay period all additional costs or expenses incurred at the request of CLIENT, including replacement personnel or temporary personnel provided by OASIS, any assigned field supervisor, safety engineering, fidelity bonding, professional liability insurance, overnight mail charges, continuing education, etc.

D.  Payments. All payments to OASIS by CLIENT will be made upon presentation via a bank draft or direct debit to an account of CLIENT. A late payment charge of two (2) percent will be added to all accounts not paid when due. Bank drafts returned unpaid from CLIENT's bank will be subject to the late payment charge plus any additional costs incurred by OASIS. An unpaid balance will also be subject to a periodic charge of one and one-half (1 and 1/2) percent per calendar month until paid. OASIS reserves the right to suspend the services to CLIENT until full payment has been made of any amount past due.

## VI.    GENERAL PROVISIONS.

A.  Entire Agreement. This Agreement constitutes the entire agreement between the parties and supersedes any and all agreements, whether oral or written, between the parties with respect to its subject matter. If an action is brought by either party hereto for breach or default of any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs in addition to any other relief to which the party may be entitled.

B.  Modification. This Agreement may not be altered or amended except by written agreement duly executed by all parties hereto.

C.  Successors. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

D.  Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original, and such counterparts shall together constitute but one and the same agreement, binding upon all the parties hereto, notwithstanding that all the parties are not signatories to the original of the same counterpart.

E.  Headings. The headings and labels of the paragraphs of this Agreement are inserted solely for the convenience of reference, and in no way define, limit, extend or aid in the construction of the scope, extent or intent of this Agreement or of any term or provision hereof.

F.  Severability. Should any term, warranty, covenant, condition or provision of this Agreement be held to be invalid or unenforceable, the balance of this Agreement shall remain in force and shall stand as if the unenforceable part did not exist.

G.  Arbitration and Mediation. All disputes and alleged breaches arising out of or relating to this Agreement shall be resolved by way of mediation and arbitration as set forth herein, and the parties hereto waive their rights to bring an action in State or Federal court to resolve such disputes. If a dispute under this Agreement arises, either party may serve written notice on the other that it desires to have the dispute submitted to mediation in accordance with the procedures of the Federal Mediation & Conciliation Service, pursuant to Chapter 44 & 682, Florida Statutes or as otherwise agreed by the parties to the dispute. Once elected, a mediation conference shall be scheduled within 30 days in the City of Palm Beach Gardens, Florida. If the dispute is not resolved through mediation, the parties shall submit their dispute to binding arbitration within 30 days after impasse is declared by a mediator. The Arbitration shall be conducted by a committee of arbitrators (one appointed by OASIS, one appointed by CLIENT and one appointed by the two arbitrators so appointed), in the City of Palm Beach Gardens, Florida, and pursuant to the terms of the American Arbitration Association and their decision shall be final and binding on both parties. Judgment may be obtained on the arbitration award in any court of competent jurisdiction. Completion of mediation until resolution or impasse is a condition precedent to arbitration.

H.  Choice of Law. The substantive law of the state of Florida shall control the construction of this Agreement.

I.  Waiver. The failure of any party to enforce at any time the provisions of this Agreement shall not be construed as a waiver of any provision or of the right of such party thereafter to enforce each and every provision of this Agreement.

J.  Assignment. CLIENT shall not transfer or assign this Agreement or any part thereof without the prior written consent of OASIS. This Agreement may be assigned by OASIS at its sole discretion.

K.  Default & Termination. In addition to the means of termination specified in §IV(H) above, this Agreement may also be terminated by CLIENT's default, at OASIS's sole discretion. Acts of default by CLIENT shall include:

1.  Failure of CLIENT to pay any monies due under this Agreement.

2.  Failure of CLIENT to comply within the time specified by OASIS with any directive of OASIS when such directive is promulgated or made necessary by (i) a federal, state or local governmental body, department or agency, (ii) an insurance carrier providing coverage to OASIS and/or the Assigned Employees and/or (iii) specific circumstances which currently or potentially affect OASIS, CLIENT or Assigned Employees covered by this Agreement.

3.  Direct payment of taxable wages by CLIENT to Assigned Employees for services contemplated by this Agreement.

Any breach or default of any material term or condition of this Agreement shall, unless the innocent party elects otherwise in writing, cause immediate termination of this Agreement. Notwithstanding same, the innocent party is required to provide immediate written notice of any material breach or default. The effective date of termination shall be deemed to be the date the violation occurs, not when discovered or when notice is received by either party.

L.  Notices. Any notice, request, demand or other communication required or permitted hereunder shall be deemed to be properly given when deposited with the United States Postal Service, postage prepaid, or when deposited with a public telegraph for transmittal, charges prepaid and addressed:

1.  In the case of OASIS send to: Legal Department, Oasis Outsourcing, Inc. 4200 Wackenhut Drive, Suite 100, Palm Beach Gardens, FL 33410 or to such other person or address as OASIS may furnish to CLIENT.

2.  In the case of CLIENT, to the address shown on Exhibit A, or to such other person or address that CLIENT may furnish from time to time to OASIS.

M.  **Time Is Of The Essence.** Time is of the essence in the performance of this Agreement.

N.  **No Third Party Beneficiaries.** The parties acknowledge and agree that this Agreement creates no rights for or in favor of any person or third party not a party to this Agreement, and that no such person may place any reliance hereon.

O.  **Acknowledgments.** CLIENT acknowledges that it has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement including but not limited to any statement made by any marketing agent of OASIS. CLIENT acknowledges that OASIS has made no representations whether OASIS will improve the performance of CLIENT's business.

CLIENT acknowledges that OASIS shall not be liable for any CLIENT loss of business, good will, profits, or other damages.

CLIENT specifically authorizes and acknowledges OASIS will conduct a credit and background reference check on CLIENT and such officers, supervisors, and/or employees of CLIENT as OASIS deems appropriate in compliance with the requirements of law.

This CLIENT acknowledges the Agreement shall be valid and enforceable only upon the signature by an authorized Controlling Person of OASIS.

CLIENT acknowledges that it would be essential to OASIS to have complete knowledge of any government investigation or inquiry or private adversary action which could in any manner impact upon the types of duties contemplated by any Agreement. For example, but not by limitation, an audit by the Bureau of Workers' Compensation could affect the performance of functions under this Agreement. Therefore CLIENT hereby makes complete and full disclosure of any such administrative proceeding (including but not limited to EEOC, NLRB, OSHA and Wage & Hour matters), investigation, lawsuits, or other adversary proceeding, including those which are threatened as well as those not yet asserted, in which CLIENT has been involved during the last five (5) years.

**SIGNATURE**

*CLIENT*

Signature: _____     Date ___7-12-00___

Print Name and Title ___Louise / Lynch___

*OASIS OUTSOURCING INC.*

Signature: _____     Date_____
Daniel S. McHenry, Controlling Person

# ADDENDUM
## TO
## CLIENT SERVICE AGREEMENT

1.     The following language shall modify the mentioned portion of Paragraph G, Special Benefits Administration Agreement, Subparagraph 1, Health Benefits:

> ". . . and a one time charge of $100 per affected assigned employee CLIENT agrees that the sum is fair compensation to OASIS for its expense in extending the coverage to Assigned Employees which were covered under this Agreement."

2.     The following language shall modify the mentioned portion of Paragraph G, Special Benefits Administration Agreement, Subparagraph 3, Retirement Plans:

> "Furthermore, CLIENT agrees to reimburse OASIS an administrative fee in the amount of $25 per assigned employee per annum or any part thereof for administering that provision."

3.     Subparagraph J, Assignment, shall be amended as follows:

> "CLIENT or OASIS shall not transfer or assign this Agreement or any part thereof without the prior written consent of the other."

Dated this _12_ day of July, 2000.


PORT ROYALE TRADING CO.

By: _____

Print: _LOUIS E. LYNCH_


OASIS OUTSOURCING, INC.

By: _____

     Daniel S. McHenry, Controlling Person


S:\WORK\JECKY\ADDENDUM

# Exhibit A

TO CLIENT SERVICE AGREEMENT DATED_____

| | |
|---|---|
| Client Name: | **Port Royale Trading Co., Inc.** |
| Client Address: | **1375 N.W. 89th Ct.** |
| City: | **Miami** State: **FL** Zip: **33172** |
| Phone Number: | **305-477-5551** Fax Number: **305-477-9165** |
| | Payroll Contact: |
| Owner's Name: | *Louise Lynch* |

## STAGE I: SCHEDULING

Client Location: _____

Initial Payroll Cycle:

| | Day of Week | A Weekly Date | B Date | C D |
|---|---|---|---|---|
| Begins | 8-3-00 | | | |
| Ends | 8-8-00 | | | |
| Check Date | 8-11-00 | | | |

Pay Cycle: **Weekly**
Benefits Effective: 9-1
Pre-Orientations: _____
Orientation Time: _____
Orientation Date: _____

## STAGE II: ELECTIONS & DISCLOSURES

Payroll will be transmitted to the OASIS via _____ Fax or _____ remote data

| Yes | No | |
|---|---|---|
| | ✓ | Client agrees to post-accident and pre-employment drug testing. |
| | ✓ | Client agrees to post-accident drug testing only. |
| | ✓ | Client agrees to conduct background checks _____ selected positions _____ all new hires. |
| ✓ | | Client elects the Employee Assistance Program ("EAP") for $2.00 a month per employee. |
| ✓ | | Client will be covered under the Oasis Employment Practice Liability Insurance Program. |
| ✓ | | Client will be covered under Oasis Workers' Compensation policy. |
| | ✓ | Client will be covered under Oasis Medical plans. |
| | ✓ | Have there been any actions by a regulatory agency in the last five years? |
| | ✓ | Has there been any litigation in the last five years? |
| | ✓ | Are there any contingent liabilities not noted above? |
| | | If yes, explain _____ |

Exhibit A

## STAGE III: BILLING RATES BY WORKERS' COMPENSATION CODES

| W/C Code | Description | Oasis Administratic |
|----------|-------------|--------------------|
| 8810 | Clerical | 111.08% |
| 8742 | Out Side Sales | 111.44% |
| 8021 | Fish and Seafood Handler | 118.07% |
| 7380 | Drivers | 119.41% |
| | | |
| | | |
| | | |

**Note:**

1. The total rate shall be reduced by the percentages set forth above once the applicable taxable wage limits on state and federal unemployment have been met.

2. The total rate shall be reduced by the applicable tax rates for FICA and Medicare. And do not include any State or Local

3. Oasis will reimburse client for re-payment of payroll taxes FUTA and SUTA

## STAGE IV:   INITIAL INVESTMENT TERMS UPON START-UP

| | | |
|---|---|---|
| Deposit | | $ - |
| 37  Full time employees @ $35. Ea | | $ 1,295.00 |
| 0 Part time employees @ $15. Ea | | $ - |
| **TOTAL INITIAL INVESTMENT** | | $ 1,295.00 |

**Enrollment fees:**   The client shall pay to Oasis a one-time enrollment fee of $ 35 for full time employees and $15 for part time employee converted to Oasis and for each replacement or additional employee added to Oasis.    *waived AH.*

**Payroll delivery:**   The cost of payroll delivery to the Client's primary location is $12.50 per pay period. There will be an additional charge for delivery to each additional location.

_____  7/21/00          _____
Client                         Date                     Oasis Outsourcing, Inc.

Exhibit A

# 2005 FOR PROFIT CORPORATION ANNUAL REPORT

**FILED**
**Mar 14, 2005**
**Secretary of State**

## DOCUMENT# 313341

**Entity Name:** PORT ROYALE TRADING CO., INC.

| **Current Principal Place of Business:** | **New Principal Place of Business:** |
|---|---|

3407-A NW 72 AVENUE
MIAMI, FL  33122

| **Current Mailing Address:** | **New Mailing Address:** |
|---|---|

3407-A NW 72 AVENUE
MIAMI, FL  33122

**FEI Number:** 59-1208484     **FEI Number Applied For ( )**     **FEI Number Not Applicable ( )**     **Certificate of Status Desired (X)**

| **Name and Address of Current Registered Agent:** | **Name and Address of New Registered Agent:** |
|---|---|

LYNCH, LOUISE
14990-A S.W. 49TH LANE
MIAMI, FL  33185     US

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

        Electronic Signature of Registered Agent                       Date

**Election Campaign Financing Trust Fund Contribution ( ).**

## OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title: | S      ( ) Delete |
| Name: | LYNCH, LOUISE, |
| Address: | 14990-A S.W. 49TH LANE |
| City-St-Zip: | MIAMI, FL |

| | |
|---|---|
| Title: | PT     ( ) Delete |
| Name: | STARR, ROBERT |
| Address: | 3407-A NW 72 AVENUE |
| City-St-Zip: | MIAMI, FL  33122 |

| | |
|---|---|
| Title: | ( ) Delete |
| Name: | |
| Address: | |
| City-St-Zip: | |

## ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title: | ( ) Change  ( ) Addition |
| Name: | |
| Address: | |
| City-St-Zip: | |

| | |
|---|---|
| Title: | ( ) Change  ( ) Addition |
| Name: | |
| Address: | |
| City-St-Zip: | |

| | |
|---|---|
| Title: | VP    ( ) Change  (X) Addition |
| Name: | NICHOLS, RICHARD C |
| Address: | 3407-A NW 72 AVENUE |
| City-St-Zip: | MIAMI, FL  33122 |

I hereby certify that the information supplied with this filing does not qualify for the for the exemption stated in Section 119.07(3)(i), Florida Statutes.  I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  LOUISE LYNCH                           S           03/14/2005

        Electronic Signature of Signing Officer or Director                 Date



# 2004 FOR PROFIT CORPORATION ANNUAL REPORT

**FILED**
**May 04, 2004**
**Secretary of State**

DOCUMENT# 313341

**Entity Name:** PORT ROYALE TRADING CO., INC.

| **Current Principal Place of Business:** | **New Principal Place of Business:** |
|---|---|
| 3407-A NW 72 AVENUE<br>MIAMI, FL 33122 | |

| **Current Mailing Address:** | **New Mailing Address:** |
|---|---|
| 3407-A NW 72 AVENUE<br>MIAMI, FL 33122 | |

**FEI Number: 59-1208484**     FEI Number Applied For ( )     FEI Number Not Applicable ( )     Certificate of Status Desired ( )

| **Name and Address of Current Registered Agent:** | **Name and Address of New Registered Agent:** |
|---|---|
| LYNCH, LOUISE<br>14990-A S.W. 49TH LANE<br>MIAMI, FL 33185 | |

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

               Electronic Signature of Registered Agent                                    Date

**Election Campaign Financing Trust Fund Contribution ( ).**

## OFFICERS AND DIRECTORS:

| | | | ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS: |
|---|---|---|---|
| Title: | S            ( ) Delete | Title: | ( ) Change ( ) Addition |
| Name: | LYNCH, LOUISE, | Name: | |
| Address: | 14990-A S.W. 49TH LANE | Address: | |
| City-St-Zip: | MIAMI, FL | City-St-Zip: | |
| | | | |
| Title: | PT            ( ) Delete | Title: | ( ) Change ( ) Addition |
| Name: | STARR, ROBERT | Name: | |
| Address: | 3407-A NW 72 AVENUE | Address: | |
| City-St-Zip: | MIAMI, FL 33122 | City-St-Zip: | |

I hereby certify that the information supplied with this filing does not qualify for the for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  LOUISE LYNCH                             SECR             05/04/2004

                 Electronic Signature of Signing Officer or Director                      Date

# 2003 UNIFORM BUSINESS REPORT (UBR)

DOCUMENT# 313341

**FILED**
**Feb 04, 2003**
**Secretary of State**

**Entity Name:** PORT ROYALE TRADING CO , INC.

**Current Principal Place of Business:**

3407-A  NW 72 AVENUE
MIAMI, FL  33122

**New Principal Place of Business:**

**Current Mailing Address:**

3407-A NW 72 AVENUE
MIAMI, FL  33122

**New Mailing Address:**

**FEI Number: 59-1208484**      **FEI Number Applied For ( )**      **FEI Number Not Applicable ( )**      **Certificate of Status Desired ( )**

**Name and Address of Current Registered Agent:**

LYNCH, LOUISE
14990-A S.W. 49TH LANE
MIAMI, FL  33185

**Name and Address of New Registered Agent:**

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

          Electronic Signature of Registered Agent                                    Date

**Election Campaign Financing Trust Fund Contribution ( ).**

## OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title: | S          ( ) Delete |
| Name: | LYNCH, LOUISE, |
| Address: | 14990-A S.W. 49TH LANE |
| City-St-Zip: | MIAMI, FL |

| | |
|---|---|
| Title: | PT          ( ) Delete |
| Name: | STARR, ROBERT |
| Address: | 3407-A  NW 72 AVENUE |
| City-St-Zip: | MIAMI, FL  33122 |

## ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:

| | |
|---|---|
| Title: | ( ) Change  ( ) Addition |
| Name: | |
| Address: | |
| City-St-Zip: | |

| | |
|---|---|
| Title: | ( ) Change  ( ) Addition |
| Name: | |
| Address: | |
| City-St-Zip: | |

I hereby certify that the information supplied with this filing does not qualify for the for the exemption stated in Section 119.07(3)(i), Florida Statutes.  I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  LOUISE LYNCH                                    S                    02/04/2003
          Electronic Signature of Signing Officer or Director                              Date

# 2002 UNIFORM BUSINESS REPORT (UBR)

**FILED**
**Apr 25, 2002  8:00 AM**
**Secretary of State**

DOCUMENT# 313341

**Entity Name:** PORT ROYALE TRADING CO , INC.

| **Current Principal Place of Business:** | **New Principal Place of Business:** |
|---|---|
| 3407-A NW 72 AVENUE<br>MIAMI, FL 33122 | |

| **Current Mailing Address:** | **New Mailing Address:** |
|---|---|
| 3407-A NW 72 AVENUE<br>MIAMI, FL 33122 | |

**FEI Number: 59-1208484**    FEI Number Applied For ( )    FEI Number Not Applicable ( )    Certificate of Status Desired ( )

| **Name and Address of Current Registered Agent:** | **Name and Address of New Registered Agent:** |
|---|---|
| LYNCH, LOUISE<br>14990-A S.W. 49TH LANE<br>MIAMI, FL 33185 | |

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____

Electronic Signature of Registered Agent                                Date

**This corporation is eligible to satisfy its Intangible Tax filing requirement and elects to do so (X).**
**Election Campaign Financing Trust Fund Contribution ( ).**

| **OFFICERS AND DIRECTORS:** | **ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS:** |
|---|---|
| Title:        S          ( ) Delete<br>Name:      LYNCH, LOUISE,<br>Address:   14990-A S.W. 49TH LANE<br>City-St-Zip:  MIAMI, FL | Title:                           ( ) Change ( ) Addition<br>Name:<br>Address:<br>City-St-Zip: |
| Title:        PT          ( ) Delete<br>Name:      STARR, ROBERT<br>Address:   3407-A NW 72 AVENUE<br>City-St-Zip:  MIAMI, FL 33122 | Title:                           ( ) Change ( ) Addition<br>Name:<br>Address:<br>City-St-Zip: |

I hereby certify that the information supplied with this filing does not qualify for the for the exemption stated in Section 119.07(3)(i), Florida Statutes.  I further certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with an address, with all other like empowered.

SIGNATURE:  LOUISE LYNCH                                SEC              04/25/2002

Electronic Signature of Signing Officer or Director                                Date

# 2001 UNIFORM BUSINESS REPORT (UBR)

**FILED**

**Apr 26, 2001 08:00 AM**

**Secretary of State**

**DOCUMENT #   313341**

**1. Entity Name**
PORT ROYALE TRADING CO., INC.

| Principal Place of Business | Mailing Address |
|---|---|
| 9380 SUNSET DR. B-180 | 9380 SUNSET DR. B-180 |
| MIAMI                    FL | MIAMI                    FL |
| 33173 | 33173 |

| 2. Principal Place of Business | 3. Mailing Address | |
|---|---|---|
| 3407-A NW 72 AVENUE | 3407-A NW 72 AVENUE | |
| Suite, Apt. #, etc | Suite, Apt. #, etc. | DO NOT WRITE IN THIS SPACE |

| City & State | City & State | 4. FEI Number | Applied For |
|---|---|---|---|
| MIAMI               FL | MIAMI               FL | **59-1208484** | Not Applicable |
| Zip          Country | Zip          Country | 5. Certificate of Status Desired ☐ | **$8.75** Additional Fee Required |
| 33122 | 33122 | | |

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| LYNCH, LOUISE | Name |
| 14990-A S.W. 49TH LANE | Street Address (P.O. Box Number is Not Acceptable) |
| MIAMI                    FL | |
| 33185 | City                              FL          Zip Code |

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE   **LOUISE LYNCH**                                                      **04/26/2001**
Signature, typed or printed name of registered agent and title if applicable.   (NOTE: Registered Agent signature required when reinstating)   DATE

| 9. This corporation is eligible to satisfy its Intangible Tax filing requirement and elects to do so. (See criteria on back) ☒ | FILE NOW!!! FEE IS $150.00. After MAY 1, 2001 Fee will be $550.00. Make Check Payable to Department of State | 10. Election Campaign Financing Trust Fund Contribution. | **$5.00** May Be Added to Fees |
|---|---|---|---|

| 11. OFFICERS AND DIRECTORS | | 12. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 11 | | |
|---|---|---|---|---|
| TITLE  PT | ☐ Delete | TITLE  PT | ☒ Change | ☐ Addition |
| NAME  SHARR    ROBERT | | NAME  STARR    ROBERT | | |
| STREET ADDRESS  9380 SUNSET DR., B180 | | STREET ADDRESS  3407-A  NW 72 AVENUE | | |
| CITY-ST-ZIP  MIAMI                    FL | | CITY-ST-ZIP  MIAMI                    FL   33122 | | |
| TITLE  S | ☐ Delete | TITLE | ☐ Change | ☐ Addition |
| NAME  LYNCH, LOUISE | | NAME | | |
| STREET ADDRESS  14990-A S.W. 49TH LANE | | STREET ADDRESS | | |
| CITY-ST-ZIP  MIAMI                    FL | | CITY-ST-ZIP | | |
| TITLE | ☐ Delete | TITLE | ☐ Change | ☐ Addition |
| NAME | | NAME | | |
| STREET ADDRESS | | STREET ADDRESS | | |
| CITY-ST-ZIP | | CITY-ST-ZIP | | |
| TITLE | ☐ Delete | TITLE | ☐ Change | ☐ Addition |
| NAME | | NAME | | |
| STREET ADDRESS | | STREET ADDRESS | | |
| CITY-ST-ZIP | | CITY-ST-ZIP | | |
| TITLE | ☐ Delete | TITLE | ☐ Change | ☐ Addition |
| NAME | | NAME | | |
| STREET ADDRESS | | STREET ADDRESS | | |
| CITY-ST-ZIP | | CITY-ST-ZIP | | |
| TITLE | ☐ Delete | TITLE | ☐ Change | ☐ Addition |
| NAME | | NAME | | |
| STREET ADDRESS | | STREET ADDRESS | | |
| CITY-ST-ZIP | | CITY-ST-ZIP | | |

CR2E004 (11/00)

**13.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 11 or Block 12 if changed, or on an attachment with an address, with all other like empowered.

**SIGNATURE:**   **Louise Lynch**                                          S          04/26/2001
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR          Date          Daytime Phone #

## DOCUMENT # 313341

**1. Entity Name**

PORT ROYALE TRADING CO., INC.

FILED
**Apr 04, 2000 8:00 am**
Secretary of State
04-04-2000 90008 021 ***150.00

| Principal Place of Business | Mailing Address |
|---|---|
| 9380 SUNSET DR. B-180<br>MIAMI FL 33173 | 9380 SUNSET DR. B-180<br>MIAMI FL 33173-5460 |

**2. Principal Place of Business**

**3. Mailing Address**

Suite, Apt. #, etc.

Suite, Apt. #, etc.

DO NOT WRITE IN THIS SPACE

City & State

City & State

**4. FEI Number**  59-1208484    Applied For / Not Applicable

Zip    Country    Zip    Country

**5. Certificate of Status Desired** ☐    **$8.75** Additional Fee Required

**6. Name and Address of Current Registered Agent**

LYNCH, LOUISE
14990-A S.W. 49TH LANE
MIAMI FL 33185

**7. Name and Address of New Registered Agent**

Name

Street Address (P.O. Box Number is Not Acceptable)

City    FL    Zip Code

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida

SIGNATURE _____

Signature, typed or printed name of registered agent and title if applicable.    (NOTE: Registered Agent signature required when reinstating)    DATE

**9.** This corporation is eligible to satisfy its Intangible Tax filing requirement and elects to do so. (See criteria on back) ☐

**FILE NOW!!! FEE IS $150.00**
After MAY 1, 2000 Fee will be $550.00
Make Check Payable to Department of State

**10.** Election Campaign Financing Trust Fund Contribution. ☐    **$5.00** May Be Added to Fees

**11.**    OFFICERS AND DIRECTORS

**12.**    ADDIT ONS/CHANGES TO OFFICERS AND DIRECTORS IN 11

| | 11 | | 12 | |
|---|---|---|---|---|
| TITLE | S | ☐ Delete | TITLE | ☐ Change ☐ Addition |
| NAME | LYNCH, LOUISE | | NAME | |
| STREET ADDRESS | 14990-A S.W. 49TH LANE | | STREET ADDRESS | |
| CITY-ST-ZIP | MIAMI FL | | CITY-ST-ZIP | |
| TITLE | PT | ☐ Delete | TITLE | ☐ Change ☐ Addition |
| NAME | SHARR, ROBERT | | NAME | |
| STREET ADDRESS | 9380 SUNSET DR., B180 | | STREET ADDRESS | |
| CITY-ST-ZIP | MIAMI FL | | CITY-ST-ZIP | |
| TITLE | | ☐ Delete | TITLE | ☐ Change ☐ Addition |
| NAME | | | NAME | |
| STREET ADDRESS | | | STREET ADDRESS | |
| CITY-ST-ZIP | | | CITY-ST-ZIP | |
| TITLE | | ☐ Delete | TITLE | ☐ Change ☐ Addition |
| NAME | | | NAME | |
| STREET ADDRESS | | | STREET ADDRESS | |
| CITY-ST-ZIP | | | CITY-ST-ZIP | |
| TITLE | | ☐ Delete | TITLE | ☐ Change ☐ Addition |
| NAME | | | NAME | |
| STREET ADDRESS | | | STREET ADDRESS | |
| CITY-ST-ZIP | | | CITY-ST-ZIP | |
| TITLE | | ☐ Delete | TITLE | ☐ Change ☐ Addition |
| NAME | | | NAME | |
| STREET ADDRESS | | | STREET ADDRESS | |
| CITY-ST-ZIP | | | CITY-ST-ZIP | |

CR2E034 (9/99)

**13.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 11 or Block 12 if changed, or on an attachment with an address, with all other like empowered.

SIGNATURE: _Louise Lynch_    Louise Lynch    305-595-4314
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR    Date    Daytime Phone #

**FILE NOW: FILING FEE AFTER MAY 1ST IS $550.00**

| PROFIT CORPORATION ANNUAL REPORT **1999** |  | FLORIDA DEPARTMENT OF STATE **Katherine Harris** Secretary of State DIVISION OF CORPORATIONS |
|---|---|---|

**FILED**
**Feb 02, 1999 8:00am**
**Secretary of State**

02-02-1999 90025 028 ***150.00

**DOCUMENT # 313341**
1. Corporation Name
**PORT ROYALE TRADING CO., INC.**

| Principal Place of Business | Mailing Address |
|---|---|
| 9380 SUNSET DR. B-180 MIAMI FL 33173 | 9380 SUNSET DR. B-180 MIAMI FL 33173 |

DO NOT WRITE IN THIS SPACE

| 2. Principal Place of Business | 2a. Mailing Address |
|---|---|
| 21 | 26 |
| 22 Suite, Apt. #, etc. | 27 Suite, Apt. #, etc. |
| 23 City & State | 28 City & State |
| 24 Zip | 25 Country | 29 Zip | 30 Country |

3. Date Incorporated or Qualifed
**02/03/1967**

| 4. FEI Number **59-1208484** | Applied For Not Applicable |
|---|---|

5. Certifcate of Status Desired ☐  **$8.75** Additional Fee Required

6. Election Campaign Financing Trust Fund Contribution ☐  **$5.00** May Be Added to Fees

8. This corporation owes the current year Intangible Personal Property Tax. ☐ Yes  ☐ No

**9. Name and Address of Current Registered Agent**

LYNCH, LOUISE
14990-A S.W. 49TH LANE
MIAMI FL 33185

**10. Name and Address of New Registered Agent**

| 81 | Name |
|---|---|
| 82 | Street Address (P.O. Box Number is Not Acceptable) |
| 83 | |
| 84 | City | | 85 | FL | Zip Code |

11. Pursuant to the provisions of Sections 607.0502 and 607.1508, Florida Statutes, the above-named corporation submits this statement for the purpose of changing its registered officer or registered agent, or both, in the State of Florida. Such change was authorized by the corporation's board of directors. I hereby accept the appointment as registered agent. I am familiar with, and accept the obligations of, Section 607.0505, Florida Statutes.

SIGNATURE _Louise Lynch_   Louise Lynch   1-13-99
(Signature, typed or printed name of registered agent and title if applicable.)  (NOTE: Registered Agent signature required when reinstating)  DATE

| 12. OFFICERS AND DIRECTORS | | 13. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 12 |
|---|---|---|
| TITLE S | ☐ DELETE | 1.1 TITLE | ☐ Change ☐ Addition |
| NAME LYNCH, LOUISE | | 1.2 NAME | |
| STREET ADDRESS 14990-A S.W. 49TH LANE | | 1.3 STREET ADDRESS | |
| CITY-ST-ZIP MIAMI FL | | 1.4 CITY-ST-ZIP | |
| TITLE PT | ☐ DELETE | 2.1 TITLE | ☐ Change ☐ Addition |
| NAME SHARR, ROBERT | | 2.2 NAME | |
| STREET ADDRESS 9380 SUNSET DR., B180 | | 2.3 STREET ADDRESS | |
| CITY-ST-ZIP MIAMI FL | | 2.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 3.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 3.2 NAME | |
| STREET ADDRESS | | 3.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 3.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 4.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 4.2 NAME | |
| STREET ADDRESS | | 4.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 4.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 5.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 5.2 NAME | |
| STREET ADDRESS | | 5.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 5.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 6.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 6.2 NAME | |
| STREET ADDRESS | | 6.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 6.4 CITY-ST-ZIP | |

CR2E034 (11/98)

14. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this annual report or supplemental annual report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 12 or Block 13 if changed, or on an attachment with an address, with all other like empowered.

SIGNATURE: _Louise Lynch_  Louise Lynch  1-13-99  (305) 595-4314
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR   Date   Daytime Phone #

**FILING FEE AFTER MAY 1ST IS $5█0.00**

FLORIDA DEPARTMENT █ STATE
**Sandra B. Mort█m**
Secretary of Sta█
DIVISION OF CORPOR█IONS

**FILED**
**Mar 16 1998 8:00am**
**Secretary of State**

█313341 **(0)**

█DING CO., INC.

Mailing Address
9380 SUNSET DR. B-180
MIAMI FL 33173

DO NOT WRITE IN THIS SPACE

| | |
|---|---|
| **3.** Date Incorporated or Qualified | 02/03/1967 |

| 2a. Mailing Address | **4.** FEI Number 59-1208484 | Applied For / Not Applicable |
|---|---|---|

| 26 | Suite, Apt #, etc. | 27 | **5.** Certificate of Status Desired ☐ | **$8.75** Additional Fee Required |

Principal █ce of Business

Suite, Apt #, etc.

City & State | City & State 28 | **6.** Election Campaign Financing Trust Fund Contribution ☐ | **$5.00** May Be Added to Fees |

| 4 Zip | 25 Country | 29 Zip | 30 Country | **8.** This corporation owes or has paid the current year Intangible Personal Property Tax due June 30. ☐ Yes ☐ No |

| **9.** Name and Address of Current Registered Agent | **10.** Name and Address of New Registered Agent |
|---|---|
| LYNCH, LOUISE<br>14990-A S.W. 49TH LANE<br>MIAMI FL 33185 | B1 Name<br>B2 Street Address (P.O. Box Number is Not Acceptable)<br>B3<br>B4 City          **FL** B5 Zip Code |

**11.** Pursuant to the provisions of Sections 607.0502 and 607.1508, Florida Statutes, the above-named corporation submits this statement for the purpose of changing its registered officer or registered agent, or both, in the State of Florida. Such change was authorized by the corporation's board of directors. I hereby accept the appointment as registered agent. I am familiar with, and accept the obligations of, Section 607.0505, Florida Statutes.

SIGNATURE

Signature, typed or printed name of registered agent and title if applicable          (NOTE: Registered Agent signature required when retaining)          DATE

| **12.** OFFICERS AND DIRECTORS | | **13.** ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 12 | |
|---|---|---|---|
| TITLE | S ☐ DELETE | 1.1 TITLE | ☐ Change ☐ Addition |
| NAME | LYNCH, LOUISE | 1.2 NAME | |
| STREET ADDRESS | 14990-A S.W. 49TH LANE | 1.3 STREET ADDRESS | |
| CITY-ST-ZIP | MIAMI FL | 1.4 CITY-ST-ZIP | |
| TITLE | PT ☐ DELETE | 2.1 TITLE | ☐ Change ☐ Addition |
| NAME | SHARR, ROBERT | 2.2 NAME | |
| STREET ADDRESS | 9380 SUNSET DR., B180 | 2.3 STREET ADDRESS | |
| CITY-ST-ZIP | MIAMI FL | 2.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 3.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 3.2 NAME | |
| STREET ADDRESS | | 3.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 3.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 4.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 4.2 NAME | |
| STREET ADDRESS | | 4.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 4.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 5.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 5.2 NAME | |
| STREET ADDRESS | | 5.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 5.4 CITY-ST-ZIP | |
| TITLE | ☐ DELETE | 6.1 TITLE | ☐ Change ☐ Addition |
| NAME | | 6.2 NAME | |
| STREET ADDRESS | | 6.3 STREET ADDRESS | |
| CITY-ST-ZIP | | 6.4 CITY-ST-ZIP | |

CR2E034 (10/97)

**14.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this annual report or supplemental annual report is true and accurate and that my signature shall have the same legal effect as if made under oath, that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 12 or Block 13 if changed, or an attachment with an address

SIGNATURE: _Louise Lynch_          3/10/98          305 595-4314
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR          Date          Daytime Phone #          0240201

ocab

**FILE NOW: FILING FEE AFTER MAY 1 IS $550.00**

PROFIT CORPORATION ANNUAL REPORT 1997

FLORIDA DEPARTMENT OF STATE
Sandra B. Mortham
Secretary of State
DIVISION OF CORPORATIONS

**FILED**
**Apr 01 1997 8:00am**
**Secretary of State**

DOCUMENT # **313341**   (0)

1. Corporation Name
**PORT ROYALE TRADING CO., INC.**

Principal Place of Business
9380 SUNSET DR. B-180
MIAMI FL 33173

Mailing Address
9380 SUNSET DR. B-180
MIAMI FL 33173-3276

3. Date Incorporated or Qualified **02/03/1967**   3a. Date of Last Report **01/30/1996**
4. FEI Number **59-1206484**   | Applied For / Not Applicable
5. Certificate of Status Desired ☐   $8.75 Additional Fee Required
6. Election Campaign Financing Trust Fund Contribution ☐   $5.00 May Be Added to Fees
7. This corporation has liability for intangible tax under s. 199.032, Florida Statutes ☐ Yes ☐ No

9. Name and Address of Current Registered Agent
LYNCH, LOUISE
14990-A S.W. 49TH LANE
MIAMI FL 33185

10. Name and Address of New Registered Agent
81 Name
82 Street Address (P.O. Box Number is Not Acceptable)
83
84 City    FL   85 Zip Code

11. Pursuant to the provisions of Sections 607.0502 and 607.1508, Florida Statutes, the above-named corporation submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. Such change was authorized by the corporation's board of directors. I hereby accept the appointment as registered agent. I am familiar with, and accept the obligations of Section 607.0505, Florida Statutes.

SIGNATURE _____   DATE _____

12. OFFICERS AND DIRECTORS

| | | |
|---|---|---|
| TITLE | S | ☐ DELETE |
| NAME | LYNCH, LOUISE | |
| STREET ADDRESS | 14990-A S.W. 49TH LANE | |
| CITY-ST-ZIP | MIAMI FL | |
| TITLE | PT | ☐ DELETE |
| NAME | STARR, ROBERT | |
| STREET ADDRESS | 90 EDGEWATER DR. | |
| CITY-ST-ZIP | CORAL GABLES FL | |

13. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 12

1.1 TITLE ☐ Change ☐ Addition
1.2 NAME
1.3 STREET ADDRESS
1.4 CITY-ST-ZIP

2.1 TITLE PT   ☒ Change ☐ Addition
2.2 NAME STARR, Robert
2.3 STREET ADDRESS 9380 SUNSET DR # B-180
2.4 CITY-ST-ZIP miami, Fl   33173

14. I certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this annual report or supplemental annual report is true and accurate and that my signature shall have the same legal effect as if made under oath, that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes, and that my name appears in Block 12 or Block 13 if changed, or on an attachment with an address.

SIGNATURE: _Louise Lynch_   Louise Lynch   3/28/97   305 595 4314

CRE034 (9/96)

# FILE NOW: FILING FEE AFTER MAY 1 IS $225.00

PROFIT
CORPORATION
ANNUAL REPORT

## 1996

FLORIDA DEPARTMENT OF STATE
Sandra B. Mortham
Secretary of State
DIVISION OF CORPORATIONS

## DOCUMENT # 313341 (0)

1. Corporation Name

**PORT ROYALE TRADING CO., INC.**

| | |
|---|---|
| Principal Place of Business | Mailing Address |
| 9380 SUNSET DR. B-180 MIAMI FL 33173 | 9380 SUNSET DR. B-180 MIAMI FL 33173 |

| 3. Date Incorporated or Qualified | 3a. Date of Last Report |
|---|---|
| 02/03/1967 | 03/13/1995 |

4. FEI Number
**59-1206484**
Applied For
Not Applicable

5. Certificate of Status Desired ☐ — $8.75 Additional Fee Required

6. Election Campaign Financing Trust Fund Contribution — $5.00 May Be Added to Fees

8. This corporation has liability for intangible tax under s. 199.032, Florida Statutes ☒ Yes ☐ No

| 2. Principal Place of Business | 2a. Mailing Address |
|---|---|
| 21 | 26 |
| 22 Suite, Apt. #, etc. | 27 Suite, Apt. #, etc. |
| 23 City & State | 28 City & State |
| 24 Zip | 25 Country | 29 Zip | 30 Country |

## 9. Name and Address of Current Registered Agent

LYNCH, LOUISE
14990-A S.W. 49TH LANE
MIAMI FL 33185

## 10. Name and Address of New Registered Agent

| 81 | Name |
|---|---|
| 82 | Street Address (P.O. Box Number is Not Acceptable) |
| 83 | |
| 84 | City | FL | 85 Zip Code |

11. Pursuant to the provisions of Section 607.0501 and 617.1508, Florida Statutes, the above named corporation submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. Such change was authorized by the corporation's board of directors. I hereby accept the appointment as registered agent. I am familiar with and accept the obligations of Section 617.0305, Florida Statutes.

SIGNATURE _____

## 12. OFFICERS AND DIRECTORS

## 13. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 12

| | 12 (Officers and Directors) | | 13 | |
|---|---|---|---|---|
| TITLE | S | ☐ DELETE | 11 TITLE | ☐ Change ☐ Addition |
| NAME | LYNCH, LOUISE | | 12 NAME | |
| STREET ADDRESS | 14990-A S.W. 49TH LANE | | 13 STREET ADDRESS | |
| CITY-ST-ZIP | MIAMI FL | | 14 CITY-ST-ZIP | |
| TITLE | PT | ☐ DELETE | 21 TITLE | ☐ Change ☐ Addition |
| NAME | STARR, ROBERT | | 22 NAME | |
| STREET ADDRESS | 90 EDGEWATER DR. | | 23 STREET ADDRESS | |
| CITY-ST-ZIP | CORAL GABLES FL | | 24 CITY-ST-ZIP | |
| TITLE | | ☐ DELETE | 31 TITLE | ☐ Change ☐ Addition |
| NAME | | | 32 NAME | |
| STREET ADDRESS | | | 33 STREET ADDRESS | |
| CITY-ST-ZIP | | | 34 CITY-ST-ZIP | |
| TITLE | | ☐ DELETE | 41 TITLE | ☐ Change ☐ Addition |
| NAME | | | 42 NAME | |
| STREET ADDRESS | | | 43 STREET ADDRESS | |
| CITY-ST-ZIP | | | 44 CITY-ST-ZIP | |
| TITLE | | ☐ DELETE | 51 TITLE | ☐ Change ☐ Addition |
| NAME | | | 52 NAME | |
| STREET ADDRESS | | | 53 STREET ADDRESS | |
| CITY-ST-ZIP | | | 54 CITY-ST-ZIP | |
| TITLE | | ☐ DELETE | 61 TITLE | ☐ Change ☐ Addition |
| NAME | | | 62 NAME | |
| STREET ADDRESS | | | 63 STREET ADDRESS | |
| CITY-ST-ZIP | | | 64 CITY-ST-ZIP | |

14. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in line 12 or line 13 if changed, in the space provided with an X.

SIGNATURE: _Louise Lynch_   Louise Lynch   1/25/96   305 595 4314

CR2E034 (12/95)

0195753   CP