IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 04-22640 CIV-JORDAN     2005 NOV 18  PM 4: 00

EUGENIO GARCIA,

      Plaintiff,

v.

PORT ROYAL TRADING CO., INC.,
LOUISE LYNCH, and OASIS
OUTSOURCING, INC.

      Defendants.

_____/

**PLAINTIFF'S STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS'
STATEMENT OF FACTS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S RESPONSES TO
DEFENDANTS MOTIONS FOR SUMMARY JUDGMENT**

      COMES NOW the Plaintiff, by and through undersigned Counsel, and pursuant to Rule 56(b), Fed.R.Civ.P., and Rule 7.5(c) of the Local Rules for the United States District Court for the Southern District of Florida, hereby submit Statement of Facts in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment.

1.     Plaintiff, EUGENIO, speaks a little bit of English. [EUGENIO: 4(23)] Plaintiff, EUGENIO, does not read English. [EUGENIO: 4(25)] Plaintiff, EUGENIO, can only write a few words of English. [EUGENIO: 5(2)] Plaintiff, EUGENIO, highest level of education was the 9th Grade. [EUGENIO: 15(14)]

2.     Plaintiff, EUGENIO, first began working for Admiral Fish Company approximately ten years ago. [EUGENIO: 17(16-18)]     Plaintiff, EUGENIO, was hired by Admiral Fish Company as a Driver/Warehouseman at $7 per hour with a minimum of 45 hours per week. [Defendant's Exhibit 2]  Plaintiff, EUGENIO, states that Defendant, PORT ROYALE, was known as Port Royale and Admiral or Future Admiral when he began working.  [EUGENIO: 17(4-10)]

3.     Richard Nichols, is currently one of the owners of the Defendant, PORT ROYALE, has been employed there since May of 2000, and has been associated with PORT ROYALE since 1988. [Richard Nichols: 3(20-25)-4(1)

4.      Plaintiff, EUGENIO, was always an honest, hardworking, trustworthy, credible employee while he worked for the Defendant, PORT ROYALE. [Richard Nichols: 12(1-10)]

5.      Both Louise Lynch and Richard Nichols run the day-to-day operations of PORT ROYALE. [NICHOLS 20(25)-21(3)]   Louise Lynch is the controller of PORT ROYALE. [NICHOLS 20(20-22)]   Louise Lynch is has been one of the owners of PORT ROYALE for eight to ten years. [LYNCH 3(17-20)

6.      OASIS provided wage and hour consultation to PORT ROYALE in June of 2001. [MCALLISTER AFF. Paragraph #7]

7.      On August 3, 2000, PORT ROYALE and OASIS entered into an enforceable Client Service Agreement. [Agreement Attached to MCALLISTER AFF.] OASIS agreed to cover PORT ROYALE under OASIS medical plans. [Agreement Attached to MCALLISTER AFF. as Exhibit A]

8.      Plaintiff's overtime rate was one-half his regular rate, and as his hours increased, his regular rate and overtime pay decreased. For the paychecks issued from 12/7/01 to 6/21/02, this is how Plaintiff's half-time rate and overtime pay decreased. For the paychecks issued from 12/7/01 to 6/21/02, this is how Plaintiff's half-time rate was calculated. *See id.* In June of 2002, <u>Oasis changed its computer systems</u>. When this change occurred, <u>Oasis' payroll program began calculating Plaintiff's half-time rate by dividing Plaintiff's salary by 40 instead of by all hours worked. As a consequence, his half-time rate was greater than it would have been before the payroll system changed.</u> For the remainder of his employment with Port Royale, this is how his overtime was calculated. [McAllister Aff: ¶ 10]

9.      OASIS assumed responsibility for the payment of wages to the Assigned Employees without regard to payment by PORT ROYALE to OASIS. OASIS assumes full responsibility for the payment of payroll taxes and collection of taxes from payroll on Assigned Employees. OASIS assumes responsibility for the proper administration and payment of workers' compensation premium(s) and the employee benefit program, except in the event that applicable law requires PORT ROYALE to maintain said policies or programs or PORT ROYALE elects to maintain said policies or programs. OASIS assumes responsibility for completion and maintenance of all payroll records, with the exception of the records of actual hours worked which shall be maintained and verified by PORT ROYALE. OASIS may hire or appoint an on-site administrative coordinator to implement terms and conditions of this Agreement. [Agreement Attached to MCALLISTER AFF]

10.     OASIS benefited from and profited on every Driver Personnel, Out Side Sales Person, Fish and Seafood Handler, and Driver for whom it provided Workers Compensation at a rate of 11.08%, 11.44%, 18.07%, and 19.41%, respectively. [Agreement Attached to MCALLISTER AFF as Exhibit A]

11.     PORT ROYALE agrees that it will maintain and provide to OASIS at the end of each pay period records of actual time worked by each assigned employee, verify Assigned Employees' exempt or non-exempt status, and verify that all hours worked by Assigned Employees are accurate and are in accordance with the Fair Labor Standards Act and other laws administered by the U.S. Department of Labor's Wage and Hour Division and any other applicable state and federal law. PORT ROYALE shall verify that such time records are approved, verified and signed by each assigned employee and appropriate supervisor each pay period. These records submitted to OASIS shall become the basis for OASIS to issue all payroll checks. OASIS shall not be responsible for incorrect, improper or fraudulent records of hours worked, or for the improper determination of exempt status. Should PORT ROYALE fail to meet the processing and payment schedule, the delivery of payroll checks by OASIS may be delayed and an out of cycle processing charge may be billed to PORT ROYALE at the option of OASIS. Similarly, any changes to the hours reported to OASIS after the reporting time may be subject to an out of cycle charge at the option of OASIS. (IV B.)

12.     PORT   ROYALE   acknowledges,   understands   and   agrees   that, notwithstanding any other provisions of this Agreement, the fees charged by OASIS for the risk associated with the liabilities which may arise out of the improper management of Assigned Employees or for the violation of various local, state, and federal employment statutes. PORT ROYALE is responsible for complying with all federal, state, and local laws, regulations and ordinances including, but not limited to, those relating to employment labor and wage and hour issues, safety and health, environmental issues, hazardous waste, access to PORT ROYALE'S premises, and accommodation of protected individuals under the law, just as if, and to the same extent as if this Agreement did not exist. (IV JI)

13.     Defendant, OASIS OUTSOURCING, INC.'s, Fixed Salary for Fluctuating Hours Agreement [Defendant's Exhibit 8] was filled out by the office staff of the Defendant, PORT ROYALE. [Richard Nichols: 20(15-19)]

14.     EUGENIO, never saw the Fixed Salary for Fluctuating Hours Agreement [Defendant's Exhibit 8] [EUGENIO: 35(21-25)-36(1-2)]. Plaintiff, EUGENIO, signed the bottom of Defendant, OASIS OUTSOURCING, Fixed Salary for Fluctuating Hours Agreement [Defendant's Exhibit 8] [EUGENIO: 36(4-6) and 36(12-14]

3

15.     Teresita, NICHOLS' assistant, filled out the Fixed Salary for Fluctuating
        Hours Agreement [Defendant's Exhibit 8] [EUGENIO: 36(7-11)]

16.     Teresita told EUGENIO in reference to Defendant's Exhibit 8, "sign this
        paper because this is for the raise that they're going to give you.  With this
        raise and the overtime is going to be great.  The overtime.  The overtime."
        Teresita did not read Defendant's Exhibit 8 to Plaintiff, EUGENIO, but
        told him "they're going to raise your salary plus the overtime."  Teresita
        explained and Plaintiff, EUGENIO understood that his salary would be
        "the same as always, but there was a raise coming."  [EUGENIO: 32(24-
        25)-33(1-7)]

17.     Defendants' Statement of Facts in Support of Their Motions for Summary
        Judgment #14 neglects to include the prior question and answer and omits
        the bolded wording of Plaintiff's testimony.  (EUGENIO: 43(13)-44(4):

        Q:      **Do you see that for these four weeks that are now
                highlighted on your paper that the description of the
                pays says salary and under amount paid it is 350 in all
                four rows?  And do you notice that under hours, the
                second line says you only worked 32.75 hours?**
        A:      **The same amount.**
        Q:      You are still paid- - you are still
                paid the same amount even though you worked under 40
                hours that week?
        A:      Yes, I understand that.  I understand that.
                I understand that.  I understand all of that.
        Q:      And that's different from before **when you
                Looked at page 000289,** when you were only paid for
                the- - where you were only paid for the actual hours
                that you worked?
        A:      Uh-huh.  Yes.  Yes.  **But I don't understand
                it.  This is too much**

18.     Defendants' Statement of Facts in Support of Their Motions for Summary
        Judgment #12 states:  "Nichols also explained to Plaintiff that he was
        'going to get paid a salary of $350 and that the $350 was *'going to get
        paid a salary of $350 and that the $350 was going to cover the straight
        time for all hours worked...'* [Nichols 6(20-23)³"
        Footnote 3 states:  Of the ***Corrected Deposition Transcript.***

        Richard Nichols original deposition testimony on Page 6, Line 14 thru
        Page 8, Line 1, actually states:

_____

³

4

Q:      There is a fluctuating work week agreement
        in front of you premarked at exhibit 8.
*A:*    ***Right.***
Q:      My question is, did you tell him anything in
        Addition to what is written in that agreement when you
        Give it to him?
*A:*    I told him he was ***going to get paid a minimum***
        ***Of $350 and that it was going to be based on a 40 our***
        ***Work week and anything over the 40 hours he would get***
        ***Half-time.***

19.    The Fixed Salary for Fluctuating Hours Agreement actually states at
       Number 2: "My hourly rate will vary from week to week and is computed
       by dividing the number of hours actually worked in a workweek by the
       agreed upon weekly salary."
       McAllister's Affidavit states: "Plaintiff's regular rate under the FWW was
       initially determined by dividing his salary by the total number of hours he
       worked each week. Para. #9

20.    EUGENIO'S deposition states at Page 60(14-25):

       Q:      Were you complaining or did you quit?
       A:      I complained.  And Martinez and I had an
               Argument.  And I say, well, take the key.
       Q:      So the argument had to do with the
               Delivery?
       A:      Yes.  Part of it.
       Q:      What was the other part?
       A:      That I was working many hours, too many
               Hours.  I am a man who has both legs are sick.  And
               Nobody- - and nobody was better than me at doing my job
               And they were abusing me.  I consider it- - I consider
               It that it was abuse.

21.    The Plaintiff, EUGENIO, testified on Page 62, Line 18-25 thru Page 63,
       Line 1-24:

       Q:      So you understood then that they were
               Paying ycu the 350 plus half time for your overtime
               Hours?
       A:      Everybody take---
               Mr. Campos: Form.
       A:      The Witness: Let me explain.  Let me
               Explain.  I want to be clear.  This girl---
       Q:      Teresita?
       A:      Teresita told me, Tito.  She was telling me

5

> You must be very happy now you are going to earn this
> Much, plus overtime. Plus the overtime. She didn't
>
> Q:   And after you had the conversation with
>      Her and received your first pay check, did you see that
>      The pay check was different from what you understood?
> A:   Yes.
> Q:   And did you talk about that with anyone?
> A:   No. No way.
> Q:   So after your checks kept coming showing
>      The 350 plus the half time---
>      Mr. Campos: Form.
> A:   The Witness: Here.
> Q:   --did you realize that was how Port Royale
>      Was paying you?
> A:   That misery. That moment
>      When I saw the first time, no. You don't have a
>      Choice. But I didn't have a choice because I
>      Have to work to live. And the same thing is
>      Happening to everybody that's working there.

22.   Louise Lynch has been one of the owners of PORT ROYALE for eight to
      ten years. [LYNCH 3(17-20)]  Louise Lynch has had an office at PORT
      ROYALE for 21 years. [LYNCH 4 (21-24)]

23.   According to Defendant's Counsel, NICHOLS is the Corporate
      Representative of PORT ROYALE. [LYNCH 12(5-12)]  NICHOLS has
      only been an officer of Director of PORT ROYALE since March 14,
      2005. [2005 For Profit Annual Report]  LYNCH has been a corporate
      officer or director since at least January 26, 1996. [1996 For Profit Annual
      Report]

24.   Louise Lynch is responsible for the finances of PORT ROYALE and is a
      signator on the PORT ROYALE bank account. [LYNCH 5(5-22)  Louise
      Lynch is responsible for making sure the Plaintiff gets paid. [LYNCH
      7(13)-8(8)] [LYNCH 14(10-13)]

25.   LYNCH is ultimately responsible for making sure that the employees get
      paid. [LYNCH 8(5-8) and 14(10-13)]

26.   Louise Lynch contracted with OASIS on behalf of PORT ROYALE.
      [Client Service Agreement]

Respectfully Submitted by:

J.H. Zidell, Esquire
J.H. Zidell, P.A.
City National Bank Building
300—71st Street, Suite #605
Miami Beach, FL, 33141
J.H. Zidell, Esq.
FL BAR#: 0010121

_Terence L. Conner_ For:
J.H. Zidell, P.A.

## CERTIFICATE OF SERVICE

John M. Hament, Esquire/Jennifer Fowler-Hermes, Esquire
Kunker, Miller, and Hament, P.A.
235 North Orange Avenue, Suite 200
Sarasota, FL 34236

I hereby certify that a true and correct copy of the foregoing was sent by mail and facsimile to the above named addressee(s) on this _18_ day of November, 2005.

J.H. Zidell, Esq.
J.H. Zidell, P.A.
F.B.N. 0010121
Attorneys for the Plaintiffs
300 71st Street, Suite #605
Miami Beach, Florida 33141
Ph. (305)-865-6766

_Terence L. Conner_ For:
J.H. Zidell, Esquire